**FAEGRE DRINKER BIDDLE & REATH, LLP**
Jeffrey S. Jacobson
Andrew B. Joseph
Kristen N. Roshto
600 Campus Drive
Florham Park, New Jersey 07932
(973) 549-7000
(973) 360-9831 (fax)
Jeffrey.Jacobson@faegredrinker.com
Andrew.Joseph@faegredrinker.com
Kristen.Roshto@faegredrinker.com
*Attorneys for Rutgers, The State University of New Jersey, et al.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE, INC., PETER CORDI, RAELYNNE MILLER, KAYLA MATEO, ADRIANA PINTO, JAKE BOTHE, AND DOES 1-13,<br><br>Plaintiffs,<br><br>v.<br><br>RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY, BOARD OF GOVERNORS, RUTGERS SCHOOL OF BIOMEDICAL AND HEALTH SCIENCES, CHANCELLOR BRIAN L. STROM, PRESIDENT JONATHAN HOLLOWAY, in their official capacities,<br><br>Defendants. | Civil Action No. 3:21-cv-15333-ZNQ-TJB<br><br>Civil Action<br><br>(Document Filed Electronically) |

**MEMORANDUM OF RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY,
IN OPPOSITION TO PLAINTIFF ADRIANA PINTO'S
<u>MOTION FOR INJUNCTIVE RELIEF</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..........................................................................1

STATEMENT OF FACTS ...............................................................................7

ARGUMENT....................................................................................................11

    I.    Ms. Pinto Cannot Demonstrate a Likelihood of
        Success on the Merits.............................................................12

        A.    Supreme Court Case Law Flatly Precludes
              Ms. Pinto's Claims..............................................12

        B.    Ms. Pinto's Attempts to Distinguish *Jacobson* Fail. ...............15

        C.    New Jersey State Decisions Preclude
              Ms. Pinto's Claims, Too. ....................................17

        D.    Ms. Pinto's Reliance On Non-Vaccination
              Cases Is Misplaced...............................................19

        E.    If Ms. Pinto Were To Assert an "As Applied" Challenge,
              Rather Than A Facial Challenge, That, Too, Should Fail. ......22

    II.    Ms. Pinto Cannot Establish That She Will Suffer
        Irreparable Harm....................................................................24

        A.    Plaintiff Sat on Her Hands. ....................................25

    III.    The Balance of Harms and the Public Interest Favor
        Vaccinating as Many People as Possible to Work Towards
        Eradicating COVID-19. ...................................................27

CONCLUSION ................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,
    576 U.S. 787 (2015) ........................................................................................27

*Board of Education of Mountain Lakes v. Maas*,
    56 N.J. Super. 245 (App. Div. 1959)...............................................................18

*Calvary Chapel Dayton Valley v. Sisolak*,
    140 S. Ct. 2603 (2020) ...................................................................................14

*Cassell v. Snyders*,
    990 F.3d 539 (7th Cir. 2021) ....................................................................28, 29

*Chaves v. Int'l Boxing Fed'n*,
    No. 16-1374, 2016 WL 1118246 (D.N.J. Mar. 22, 2016) ...............................26

*Collins v. City of Harker Heights*,
    503 U.S. 115 (1992) ........................................................................................21

*Matter of Conroy*,
    98 N.J. 321 (1985)....................................................................................17, 18

*Cruzan v. Director, Missouri Department of Health*,
    497 U.S. 261 (1990) ..................................................................................19, 20

*Doe v. Zucker*,
    No. 1:20-cv-840, 2021 WL 619465 (N.D.N.Y. Feb. 17, 2021)........................15

*Doris Behr 2012 Irrevocable Tr. v. Johnson & Johnson*,
    No. 19-8828, 2019 WL 1519026 (D.N.J. Apr. 8, 2019) ..................................26

*EMSL Analytical, Inc. v. Testamerica Analytical Testing Corp.*,
    No. Civ. 05-5259, 2006 WL 892718 (D.N.J. Apr. 4, 2006)...........................25

*Gonzales v. Carhart*,
    550 U.S. 124 (2007) ........................................................................................27

*Harris v. Univ. of Mass.*,
    No. 21-cv-11244-DJC, 2021 WL 3848012 (D. Mass. Aug. 27, 2021).........*passim*

*Hopkins v. DiCristi*,
    No. 13-5490, 2014 WL 4681044 (D.N.J. Sept. 22, 2014)...............................12

*Ill. Republican Party v. Pritzker*,
　973 F.3d 760 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1754 (2021) ....................................14

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
　882 F.2d 797 (3d Cir. 1989) ............................................................................12

*Jacobson v. Massachusetts*,
　197 U.S. 11 (1905) ........................................................................................*passim*

*Klaassen v. Trs. of Ind. Univ.*,
　7 F.4th 592 (7th Cir. 2021) ............................................................................*passim*

*Klaassen v. Trs. of Ind. Univ.*,
　No. 1:21-CV-238, 2021 WL 3073926 (N.D. Ind. July 18, 2021)...................*passim*

*Lanin v. Borough of Tenafly*,
　No. 12-3399, 2013 WL 936363 (3d Cir. Mar. 12, 2013) .....................................25

*Levine v. BlockFi Inc.*,
　No. 21-11934, 2021 WL 3508831 (D.N.J. Aug. 9, 2021) ....................................26

*New State Ice Co. v. Liebmann*,
　285 U.S. 262 (1932) (Brandeis, J., dissenting) ........................................................27

*Norris v. Stanley*,
　No. 1:21-cv-756, 2021 WL 3891615 (W.D. Mich. Aug. 31, 2021) ......................15

*Norwegian Cruise Lines Holdings, Ltd. v. Rivkees*,
　No. 21-22492-CIV-WILLIAMS, 2021 WL 3471585 (S.D. Fla. Aug. 8, 2021)....................15

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm.*
　*Co.*,
　290 F.3d 578 (3d Cir. 2002) ............................................................................11

*Oburn v. Shapp*,
　521 F.2d 142 (3d Cir. 1975) ............................................................................25

*Rogers v. Corbett*,
　468 F.3d 188 (3d Cir. 2006) ............................................................................12

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
　141 S. Ct. 63 (2020) (per curiam) ..........................................................5, 14, 28

*Ryan v. Temple Univ.*,
　No. 5:20-cv-2164-JMG, 2021 WL 1581563 (E.D. Pa. Apr. 22, 2021)........................7

*Sadlock v. Carlstadt Board of Education*,
　137 N.J.L. 85 (1948) ..................................................................................18, 19

*South Bay United Pentecostal Church v. Newsom,*
   140 S. Ct. 1613 (2020) .......................................................................... 14

*United States v. Lopez,*
   514 U.S. 549 (1995) ............................................................................. 27

*W.D. v. Rockland County,*
   19 Civ. 2066 (JCM), 2021 WL 707065 (S.D.N.Y. Feb. 22, 2021)...................... 15

*Warner Lambert Co. v. McCrory's Corp.,*
   718 F. Supp. 389 (D.N.J. 1989) ................................................................ 26

*Washington v. Glucksberg,*
   521 U.S. 702 (1997) ........................................................................ 20, 21

*Washington v. Harper,*
   494 U.S. 210 (1990) ............................................................................. 20

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ................................................................................. 28

*Zucht v. King,*
   260 U.S. 174 (1922) ............................................................................... 5

**STATUTES, RULES & REGULATIONS**

Act of Nov. 16, 1988, L. 1988, c. 158, § 1 ....................................................... 16

Higher Education Restructuring Act of 1994, L. 1994, c. 48, § 81 ........................... 16

N.J.A.C. § 8:57-6.1 ................................................................................ 15, 16

N.J.A.C. §§ 8:57-6.5 to 6.8.......................................................................... 2

N.J.A.C. § 8:57-6.16 .................................................................................. 22

N.J.A.C. § 8.57-6.4 .................................................................................... 2

N.J.S.A. § 18A:61D-1 ..................................................................2, 13, 15, 16, 22

## PRELIMINARY STATEMENT

New Jersey law has long required all higher education students, including students at Rutgers, the State University of New Jersey ("Rutgers"), to be vaccinated against certain diseases and to provide proof of vaccination as a condition of continued enrollment.  Plaintiff/Movant Adriana Pinto's request for an injunction fails to address this statute, and she effectively asks the Court to create a new, extra-statutory exemption to the legal requirement that all students must be vaccinated. Ms. Pinto does not advance any reasonable legal theory that supports her claim. Instead, she argues that Rutgers' enforcement of its state-mandated vaccination policy is unfair to her and that Rutgers must modify it to accommodate her individual intention to avoid coming to campus.  The Court should deny her request.  Although Ms. Pinto may *want* Rutgers to exempt students from immunization requirements simply because the class(es) they have chosen currently are meeting remotely, she has no legal *right* to such an exemption.

To the extent Ms. Pinto is asserting a facial constitutional challenge to the longstanding requirement that students must show proof of vaccinations, now including a COVID-19 vaccination, to matriculate for the Fall 2021 semester, that challenge has no likelihood of success.  As Ms. Pinto's Complaint acknowledges, the United States Supreme Court, in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), rejected a constitutional challenge to a state requirement for every resident to take a

smallpox vaccine.  *Jacobson* remains good law.  In recently denying an injunction request very similar to Ms. Pinto's, the United States Court of Appeals for the Seventh Circuit said that upholding a *university's* vaccine mandate is "easier than *Jacobson*" because (1) the university's mandate "has exceptions for persons who declare vaccination incompatible with their religious beliefs and persons for whom vaccination is medically contraindicated," and (2) "[p]eople who do not want to be vaccinated may go elsewhere," to a school that is not requiring COVID-19 vaccines. *Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021).  Ms. Pinto's case, in turn, is even easier than *Klaassen* because Rutgers added COVID-19 to its required vaccinations pursuant to express statutory authority.

For at least 33 years, since the enactment of N.J.S.A. § 18A:61D-1, New Jersey law has **obligated** Rutgers and all other institutions of higher education in the state to **require** every student to be vaccinated against certain diseases and to provide proof of vaccination as a condition of admission or continued enrollment.  A series of New Jersey Department of Health ("NJDOH") regulations, N.J.A.C. §§ 8:57-6.5 to 6.8, mandate Rutgers to require measles, mumps, rubella, and other vaccinations. Ms. Pinto, like all 70,000 of her fellow Rutgers students, has complied with that statutory requirement each semester she has attended Rutgers.  A different regulation, N.J.A.C. § 8.57-6.4, gives each institution "authority…to establish additional requirements for student immunizations and documentation that such

institution shall determine appropriate and which is recommended by" the federal Advisory Committee on Immunization Practices ("ACIP").  The three COVID-19 immunizations available in the United States—those manufactured by Pfizer-BioNtech, Moderna, and Johnson & Johnson/Janssen—are all ACIP-recommended. New Jersey law thus gave Rutgers the express authority to add a COVID-19 vaccine to those which students, unless exempt for religious or medical reasons, must provide proof of having taken as a condition of admission or continued enrollment.

Nearly six months ago, on March 25, 2021, Rutgers exercised that lawful authority.  It advised all students, except those enrolled in fully-online degree programs, that they would have to submit proof of an approved COVID-19 immunization (as well as all other required vaccinations) to matriculate for the Fall 2021 semester.  Although some professors are still teaching remotely, at least for now, Rutgers told all of its 70,000 non-online degree students—in other words, all fully matriculated students who receive Rutgers student identification and have access to campus facilities—that selecting putatively remote classes *would not* excuse them from their responsibility to submit proof of all required immunizations.

By the time Ms. Pinto enrolled for the Fall 2021 semester and selected a class that currently is meeting remotely, Rutgers already had told her she would not be able to take that class without providing proof of all required immunizations.  State law allows students to obtain a religious exemption, but Ms. Pinto admits she has no

religious objection to vaccines.  State law also allows students to obtain a medical exemption if a physician states that a vaccine is contraindicated for them, but Ms. Pinto has not sought a medical exemption.

The Supreme Court's ruling in *Jacobson*, and recent precedent applying and reinforcing *Jacobson*, demonstrate that Ms. Pinto has no likelihood of success in a facial challenge to a university's vaccine mandate.  "[V]accination requirements, like other public-health measures, have been common in this nation." *Klaassen*, 7 F.4th at 593.  "Health exams and vaccinations against other diseases (measles, mumps, rubella, diphtheria, tetanus, pertussis, varicella, meningitis, influenza, and more) are common requirements of higher education." *Id.*  "Given *Jacobson*, … which holds that a state may require all members of the public to be vaccinated against smallpox, there can't be a constitutional problem with [mandating] vaccination against [COVID-19]." *Id.*  "If conditions of higher education may include surrendering property [(*i.e.*, tuition and fees)] and following instructions about what to read and write, it is hard to see a greater problem with medical [requirements] that help all students remain safe when learning." *Id.* at 594.

"[T]he Supreme Court has 'settled that it is within the police power of a state to provide for compulsory vaccination,' which the state may delegate to local officials and others 'vested with broad discretion in matters affecting the application and enforcement of the law.'" *Harris v. Univ. of Mass.*, No. 21-cv-11244-DJC, 2021

4

WL 3848012, at *6 (D. Mass. Aug. 27, 2021), *quoting Zucht v. King*, 260 U.S. 174, 176 (1922) (brackets omitted).   In *Harris*, as in *Klaassen*, the court rejected a student's challenge to a university's COVID-19 vaccine mandate. "Curbing the spread of COVID-19 is 'unquestionably a compelling interest.'" *Id.*, *quoting Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam).   The *Harris* court both denied injunctive relief and dismissed the students' case.

Rutgers imposed the same lawful requirement on Ms. Pinto and all of her fellow students as the universities in *Klaassen* and *Harris*.   Ms. Pinto and all of her fellow students previously followed Rutgers' vaccination requirements.   Ms. Pinto simply decided she did not want to satisfy the immunization requirement this semester and, as a result, she is not a student in good standing at Rutgers.   She is not entitled to access to Rutgers resources, including its computer network.

In a separate attempt to spare herself from the immunization requirement even if the mandate itself is lawful (which it is), Ms. Pinto tries to procure for herself an extra-statutory exemption from the immunization requirement.   She highlights that she has (1) elected to enroll in only a single class which the professor currently is teaching remotely rather than in a Rutgers classroom; and (2) self-attested that she will not come to campus.   Ms. Pinto, however, is ***not*** enrolled in a fully online degree program, students in which are neither expected to visit the campus nor granted access to restricted areas of the campus.   Nor is the class Ms. Pinto selected even

offered in any Rutgers fully online degree program.  She is in possession of a Rutgers student identification that allows her access to campus facilities, and Rutgers has no means to police promises by Ms. Pinto or anyone else to avoid the campus.  "A university will have trouble operating when each student fears that everyone else may be spreading disease." *Klaassen*, 7 F.4th at 594.  The Court should not order Rutgers to create and manage a new class of students based on self-attestations.

For all these reasons, Ms. Pinto has no likelihood of success on her substantive claims and therefore cannot meet the first and most important requirement for obtaining injunctive relief.  Indeed, Rutgers will shortly seek dismissal of her lawsuit for failure to state a claim upon which relief may be granted.  If the Court elects to review the other injunction factors, the balance of harms also tilts decidedly away from Ms. Pinto's desire to create an extra-statutory exemption for herself and toward her fellow students' interest in maximizing the safety of the university campus, as held in *Klaassen* and *Harris*.  Further, to the extent Ms. Pinto portrays her situation as "emergent," it is only an emergency of her own making.  She knew about the mandate five months before she sought injunctive relief.  Rutgers offered the same class Ms. Pinto wishes to take now during its summer 2021 session, when she would not have been required to provide proof of a COVID-19 vaccination.  And Ms. Pinto's counsel ignored for a month Rutgers' July 29 offer to discuss her situation.

As to the final factor for injunctive relief, public interests weigh heavily against the issuance of an injunction. To support her position, Ms. Pinto relies on unsubstantiated claims promoted by the anti-vaccination group, Children's Health Defense, Inc. ("CHD"), which appears as the first plaintiff listed in the Complaint. Ms. Pinto stresses that two of the three ACIP-approved vaccines have only emergency use authorization ("EUA") from the Food and Drug Administration ("FDA"), but she ignores that the United States Department of Justice issued an opinion on July 6, 2021, that the vaccines' EUA status "does not prohibit entities from imposing [COVID-19] vaccination requirements."[1] Ms. Pinto's motion also ignores that the FDA granted *full* approval to the Pfizer vaccine on August 23, before she sought injunctive relief. That means she could have satisfied her vaccination requirement before classes began by taking a *fully approved* immunization.

Ms. Pinto's motion does not satisfy any of the requirements for interim injunctive relief. The Court should deny it.

### STATEMENT OF FACTS

"[A]s with essentially every other aspect [of] our lives over the past year, the college experience has not been immune from the depredation of the COVID-19 pandemic." *Ryan v. Temple Univ.*, No. 5:20-cv-2164-JMG, 2021 WL 1581563, at

---

[1] Whether Section 564 of the Food, Drug, and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an Emergency Use Authorization, 45 Op. O.L.C. __, 2 (July 6, 2021), https://www.justice.gov/olc/file/1415446/download.

*1 (E.D. Pa. Apr. 22, 2021).  On March 25, 2021, with the expectation that COVID-19 immunizations would shortly become available to all adults in the United States, with or without comorbidities, Rutgers announced that it would add the COVID-19 vaccination to the list of required immunizations for the Fall 2021 semester.  *Our Path Forward – COVID-19 Vaccination and the Fall Term*, Office of the President (Mar. 25, 2021), https://www.rutgers.edu/president/our-path-forward.[2]

By announcing its decision to mandate the COVID-19 vaccine well in advance of the mandate's effective date, Rutgers gave students plenty of time to prepare or consider whether any opposition to vaccination warranted a decision to pursue their education at another institution.  In exempting from vaccine mandates students in "fully-online programs," Rutgers expressly limited that exception to programs "typically defined as having no access to on-campus facilities."  *Id.*

Two months after Rutgers announced this Fall 2021 requirement, Ms. Pinto and other Rutgers undergraduates completed the Spring 2021 semester.  Ms. Pinto

---

[2]  Ms. Pinto's Complaint alleges that in January 2021, Rutgers "announced that it would not require COVID-19 vaccines."  (Compl. ¶ 169.)  She claims that Vicente Gracias, a Rutgers official, "assured viewers [in a video] that Rutgers would not mandate COVID-19 vaccines."  (*Id.* ¶ 170.)  That is false.  The video is available at https://vimeo.com/502384549/10286f6cb1?utm_campaign=5370367&utm_source=affiliate&utm_channel=affiliate&cjevent=ea9051b9045311ec80c547850a82b838&clickid=ea9051b9045311ec80c547850a82b838.  At the 7:30 mark of the video, Dr. Gracias speculated that Rutgers might not mandate the vaccine.  He made no promise that Rutgers could not or would not exercise its statutory authority to add a COVID-19 vaccination to the list of vaccinations that non-exempt students already had to take as a condition of admission to or continued enrollment at Rutgers.

seems to be under the mistaken impression that, following her Spring 2021 work, she needs to retake just one class in order to receive her undergraduate degree and to satisfy the requirements of a major in Psychology.  (*See* Declaration of Plaintiff Adriana Pinto ("Pinto Decl.") ¶ 7.)  In fact, as explained below, Ms. Pinto is *two* classes short of her graduation requirements.  (*See* Declaration of Susan Lawrence ("Lawrence Decl.") ¶¶ 3-4.)  As for the single class Ms. Pinto registered to retake for Fall 2021, Rutgers offered it during the summer 2021 session, when she would not have been subject to the COVID-19 vaccine mandate, and at one point Ms. Pinto apparently intended to take the class over the summer.  (*See id.* ¶¶ 6-7.)  Instead, Ms. Pinto waited to sign up to take the class in the fall, knowing she would have to meet the Fall 2021 immunization requirements.  (*See id.* ¶ 7.)

Ms. Pinto contends she did not realize the mandate would apply to her if she selected a section of a class that the professor indicated would be taught remotely.  (*See* Pinto Decl. ¶ 8.)  As noted above, however, Rutgers addressed this subject clearly in its March 25 announcement.  It also did so again, repeatedly, in subsequent communications to students.  A July 20, 2021 email to all students, for example, with the subject line "Reminder for Students re COVID-19 Vaccination Requirement," read as follows:

> Additionally, there has been some confusion over the exemption policy for students in online degree programs. That exemption applies only to fully online degree programs. These are programs that only offer online courses and did so

> pre-pandemic.  The vaccine requirement applies to all undergraduate students and to all graduate students in programs that traditionally offer in-person courses regardless of the mix of online and in-person courses for which they register for the fall semester.

(Ex. A to Declaration of Kristen Roshto ("Roshto Decl.").)

On Friday, July 23, 2021, Ms. Pinto's counsel sent a letter to the general counsel of Rutgers.  (*See* Roshto Decl. Ex. B.)  Counsel said he was sending the letter "[o]n behalf of my two nieces and about a dozen other students who are enrolled at Rutgers," none of whom he named.  (*Id.*)  His letter acknowledged Rutgers' communications that students who are taking remote classes, but who are not enrolled in "fully on-line degree granting programs," are subject to all vaccination requirements, but he contended that his unnamed niece had a "mistaken belief" that she could avoid the requirement by "select[ing] a fully remote schedule." (*Id.*)

Rutgers acknowledged this letter less than four hours after counsel sent it. Deputy General Counsel Stephen Nolan emailed Ms. Pinto's counsel and said "[w]e anticipate being able to get back to you sometime next week."  (Roshto Decl. Ex. C.)  Ms. Pinto's counsel replied "[t]hank you."  (*Id.*)  On July 29, as promised, Mr. Nolan emailed counsel again and suggested a telephone conversation to discuss the still-unnamed clients' concerns.  (*See id.*)  But Ms. Pinto's counsel did not respond.

On August 24, 2021—after he had sued Rutgers on behalf of CHD and its fellow plaintiffs—Ms. Pinto's counsel sent the following note to Mr. Nolan:

> I am just seeing now for the first time that you emailed me below. I apologize that I missed this communication but my inbox is completely overloaded these days, as you can imagine. In any event, it is no excuse, I hope you will accept my apology and if you are still willing to engage in a conversation, I am happy to schedule a call with you that is mutually convenient. [*Id.*]

The premise of Ms. Pinto's motion for emergency relief is that if she cannot retake Quantitative Methods in Psychology during the Fall 2021 semester, she cannot graduate at the end of the semester. (*See* Pinto Decl. ¶ 9.) That class, however, is not Ms. Pinto's only remaining requirement. Even once Ms. Pinto retakes Quantitative Methods, she will not have accumulated a sufficient number of academic credits to graduate with a major in Psychology. (*See* Lawrence Decl. ¶¶ 5, 8.) Ms. Pinto also must complete at least one more three-credit Psychology class at the "400" level. (*Id.* ¶¶ 4-5, 8.) Ms. Pinto did not register for such a class for the Fall 2021 semester and it is too late for her to do so now. (*Id.* ¶ 9.) Accordingly, she cannot complete her degree requirements this semester under any circumstances.

## ARGUMENT

"[A]n injunction is 'an extraordinary remedy, which should be granted only in limited circumstances.'" *Novartis Consumer Health, Inc. v. Johnson & Johnson-*

*Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002), *quoting Instant Air*

*Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989).

> The test for preliminary relief is a familiar one.  A party seeking a preliminary injunction must show that (1) it has a likelihood of success on the merits, (2) it will suffer irreparable harm if the injunction is denied, (3) granting preliminary relief will not result in even greater harm to the nonmoving party, and (4) the public interest favors such relief.

*Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006) (citation omitted).  The test for

a temporary restraining order is identical.  *See Hopkins v. DiCristi*, No. 13-5490,

2014 WL 4681044, at *1 (D.N.J. Sept. 22, 2014).[3]

## I.   Ms. Pinto Cannot Demonstrate a Likelihood of Success on the Merits.

### A.   *Supreme Court Case Law Flatly Precludes Ms. Pinto's Claims.*

The Supreme Court, in *Jacobson*, upheld against a constitutional challenge a

law imposing a fine on any adult who did not consent to be vaccinated against

smallpox.  *See Jacobson*, 197 U.S. at 12.  The Supreme Court concluded that it was

not for judges "to determine which of two modes was likely to be the most effective

for the protection of the public against disease."  *Id.* at 30.  So long as the law bears

a "real or substantial relation" to protecting public health and is not "beyond all

---

[3]  Ms. Pinto styled her motion as seeking a temporary restraining order, but given other developments in the case since Ms. Pinto filed her motion, and the amount of time that has passed, the Court may wish to convert the motion to one seeking a preliminary injunction.  Either way, the controlling legal standard is the same.

question, a plain, palpable invasion of rights secured by the fundamental law," courts must uphold the laws enacted by the political branches. *Id.* at 31. That is because the State may impose requirements "which, according to the common belief of the people, are adapted to prevent the spread of contagious diseases." *Id.* at 35. The Supreme Court presciently predicted today's debate, too: "The fact that the belief [in the efficacy of the method chosen] is not universal is not controlling, for there is scarcely any belief that is accepted by everyone." *Id.*

As the Seventh Circuit held in *Klaassen*, if Massachusetts can impose a no-exception vaccine mandate for all citizens, it is hard to see a basis for university students to assert a constitutional challenge to their school's vaccine mandate. *See Klaassen*, 7 F.4th at 593. A university's mandate applies only to people who have chosen that school, and both Rutgers' mandate and Indiana University's mandate at issue in *Klaassen* allow for both religious and medical exemptions. *See id.* Rutgers' decision, moreover, is even less susceptible to constitutional scrutiny than the one considered in *Klaassen* because (although Ms. Pinto's Complaint ignores N.J.S.A. § 18A:61D-1 and its implementing regulations) Rutgers had express statutory authority to add COVID-19 vaccines to its required immunization list, and cited those legal provisions when doing so. Rutgers' citation to its legal authority in its policy document makes the omission of this legal authority from CHD's and Ms. Pinto's Complaint all the more remarkable.

Ms. Pinto's Complaint (at ¶ 9) does acknowledge *Jacobson*, but she contends that a "new landscape" means courts "must modify or overrule this precedent." (*See also id.* ¶ 214 (contending that *Jacobson* "is open to legitimate question").)  The Supreme Court has addressed *Jacobson* on several occasions during the COVID-19 pandemic, however, each time leaving *Jacobson*'s core principle of deference to vaccine mandates undisturbed.  *See Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring) ("Although *Jacobson* pre-dated the modern tiers of scrutiny, this Court essentially applied rational basis review . . . ."); *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1754 (2021) ("The district court appropriately looked to *Jacobson* for guidance, and so do we").  None of the Justices, even in dissent, has taken issue with *Jacobson*'s holding that a government may require immunizations or authorize its instrumentalities to do so.  *See, e.g.*, *Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603, 2608 (2020) (Alito, J., dissenting from denial of application for injunctive relief in case addressing limits on in-person religious gatherings); *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring in denial of application for injunctive relief in case addressing limits on all public gatherings).  Ms. Pinto therefore cannot put forward any reasonable argument that the Supreme Court has cast doubt on *Jacobson*'s continuing validity.

Unsurprisingly, given the clear and controlling authority of *Jacobson*, the handful of people attempting to challenge educational vaccine mandates have batted zero.  In addition to the decisions in *Klaassen* and *Harris*—the latter of which also yielded an order dismissing the underlying lawsuit—challenges like Ms. Pinto's failed in *Norris v. Stanley*, No. 1:21-cv-756, 2021 WL 3891615 (W.D. Mich. Aug. 31, 2021); *W.D. v. Rockland County*, 19 Civ. 2066 (JCM), 2021 WL 707065 (S.D.N.Y. Feb. 22, 2021) (parents have no constitutional right to send unvaccinated child to school); and *Doe v. Zucker*, No. 1:20-cv-840 (BKS/CFH), 2021 WL 619465 (N.D.N.Y. Feb. 17, 2021) (rejecting challenge that school district imposed too-burdensome requirements to obtain medical exemption to vaccine mandate).  *Cf. Norwegian Cruise Lines Holdings, Ltd. v. Rivkees*, No. 21-22492-CIV-WILLIAMS, 2021 WL 3471585, at *14 (S.D. Fla. Aug. 8, 2021) (stating that "courts have suggested that the unvaccinated population is not a protected class that enjoys a fundamental Constitutional right to remain unvaccinated," citing *Jacobson* and the lower court decision in *Klaassen*, No. 1:21-CV-238, 2021 WL 3073926 (N.D. Ind. July 18, 2021)).  Ms. Pinto's challenge should meet the same fate.

### B.    *Ms. Pinto's Attempts to Distinguish Jacobson Fail.*

Only by pretending that Rutgers had no statutory and regulatory basis for adding a COVID-19 vaccination requirement, rather than acknowledging N.J.S.A.

§ 18A:61D-1 (which has been on the books since 1989)[4] and N.J.A.C. § 8:57-6.1, could Ms. Pinto contend, falsely, that Rutgers acted without statutory authority, so *Jacobson* should not apply.  (*See* Compl. ¶¶ 73, 78, 186, 250-51.)  This argument has its facts wrong, obviously, but also misapprehends the law.  Indiana University does not have the same kind of specific authority possessed by Rutgers, but the plaintiffs' challenge in *Klaassen* failed anyway because the university was a state instrumentality and "states and their authorized arms have historically adopted vaccination mandates."  *Klaassen*, 2021 WL 3073926, at *19.  As the Seventh Circuit explained when hearing the plaintiffs' appeal in *Klaassen*:

> We assume with plaintiffs that they have a right in bodily integrity.  They also have a right to hold property.  Yet they or their parents must surrender property to attend Indiana University.  Undergraduates must part with at least $11,000 a year (in-state tuition), even though Indiana could not summarily confiscate that sum from all residents of college age.
>
> Other conditions of enrollment are normal and proper.  The First Amendment means that a state cannot tell anyone what to read or write, but a state university may demand that students read things they prefer not to read and write things they prefer not to write. . . .
>
> If conditions of higher education may include surrendering property and following instructions about what to read and

---

[4]  The original statute mandated university vaccine requirements "in accordance with regulations promulgated by the State Board of Higher Education."  *See* Act of Nov. 16, 1988, L. 1988, c. 158, § 1.  The statute was amended in 1994 to mandate those conditions "in accordance with regulations promulgated by the Department of Health."  *See* Higher Education Restructuring Act of 1994, L. 1994, c. 48, § 81.

write, it is hard to see a greater problem with medical conditions that help all students remain safe when learning.

*Klaassen*, 7 F.4th at 593-94 (citations omitted); *see also Harris*, 2021 WL 3848012, at *6 (University of Massachusetts's COVID-19 vaccine mandate "poses even fewer constitutional concerns than in *Jacobson*, . . . as students may seek exemptions, opt to take online classes or defer their enrollment for the semester.").

### C.   *New Jersey State Decisions Preclude Ms. Pinto's Claims, Too.*

Ms. Pinto's challenge under Article 1 of the New Jersey State Constitution fares no better.  (*See generally* Compl., Second Claim for Relief.)  The New Jersey Supreme Court has recognized that "a competent adult person generally has the right to decline to have any medical treatment initiated or continued."  *Matter of Conroy*, 98 N.J. 321, 347 (1985).  But our Supreme Court also stated in *Conroy* that "[w]hether based on common-law doctrines or on constitutional theory, the right to decline life-sustaining medical treatment is not absolute" and "may yield to countervailing societal interests in sustaining the person's life."  *Id.* at 348.  Some decisions, including vaccination against a virus that has become pandemic, affect others beyond the decision-maker.  That is why one of the countervailing societal interests that can override a person's individual medical decisions is the need to "protect[] innocent third parties."  *Id.* at 353.  Specifically, "[w]hen the patient's exercise of his free choice could adversely and directly affect the health, safety, or

17

security of others, the patient's right of self-determination must frequently give way." *Id.* (collecting cases, including *Jacobson*).

Just as *Jacobson* upheld a state vaccination mandate against a federal constitutional challenge, the New Jersey Supreme Court upheld a public school vaccination mandate against both a federal and New Jersey State Constitution-based challenge. In *Sadlock v. Carlstadt Board of Education*, 137 N.J.L. 85, 86-87 (1948), our Supreme Court turned aside challenges based on religious liberty and equal protection. "The principle is too well established to require citation that the so-called constitutional liberties are not absolute, but are relative only. They must be considered in the light of the general public welfare. To hold otherwise would be to place the individual above the law." *Id.* at 91. The Court also observed "that the question of the desirability or efficacy of compulsory vaccination…and whether it is wise or unwise is strictly a legislative and not a judicial question." *Id.* at 87.

Similarly, in *Board of Education of Mountain Lakes v. Maas*, 56 N.J. Super. 245, 267 (App. Div. 1959), the Appellate Division rejected the argument that because smallpox and diphtheria had not been seen in New Jersey for a decade, immunization should no longer be required. "The absence of an existing emergency does not warrant a denial to the regulative agency of the exercise of preventive means. [Officials] need not await an epidemic, or even a single sickness or death,

before [they] decide[] upon action to protect the public.  To hold otherwise would be to destroy prevention as a means of combatting the spread of disease." *Id.*[5]

### D.    Ms. Pinto's Reliance On Non-Vaccination Cases Is Misplaced.

Ms. Pinto's motion fails to acknowledge the holdings of *Jacobson*, *Sadlock*, and their progeny that the constitutional right to refuse medical treatment is not absolute and must yield to the public interest of defeating a deadly viral pathogen through vaccination.  Ms. Pinto, like the failed injunction-seekers in *Klaassen* and *Harris*, cites cases dealing with other kinds of medical treatment, not vaccines.  Even in those very cases, however, the Supreme Court cited and reaffirmed *Jacobson*.

Ms. Pinto relies on *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261, 265-66 (1990), which addressed whether parents could terminate life-sustaining medical treatment to their daughter, who had fallen into "a persistent vegetative state."  The Supreme Court assumed that there exists "a constitutionally protected right to refuse lifesaving hydration and nutrition," but balanced that interest against the government's interest in the "preservation of human life," which

---

[5]  Ms. Pinto's motion echoes the baseless allegation in her Complaint that because Rutgers is involved in medical research, and participated in trials of COVID-19 vaccines, Rutgers stands to benefit financially from requiring students to take the vaccine.  (Pl.'s Br. at 10 n.3; Compl. ¶ 215.)  Plaintiffs cite nothing to support this gratuitously insulting charge, and even were it somehow true—which, of course, it is not—this would not alter the conclusion that New Jersey possesses a rational basis to permit Rutgers and other institutions of higher education to mandate any ACIP-recommended vaccines.

it sought to achieve by imposing upon the parents a clear and convincing standard of proof. *Id.* at 279-82. *Cruzan*, therefore, did not recognize an absolute right to refuse medical treatment, and certainly did not recognize such a right when the health and safety of the community at large are involved. In fact, *Cruzan* cited *Jacobson* approvingly as a case where the Court sided with "the State's interest in preventing disease." *Id.* at 278.

Equally flawed is Ms. Pinto's reliance on *Washington v. Harper*, 494 U.S. 210 (1990). *Harper* considered a prisoner's liberty interest in avoiding the forced administration of antipsychotic drugs. *Id.* at 213. The Supreme Court had "no doubt" that the prisoner had such a liberty interest, but held that it had to be balanced against "the [s]tate's interest in prison safety and security," and authorized the forced medication. *Id.* at 221-27. The Court did not consider issues other than prisoners' rights and did not mention *Jacobson* or immunization requirements.[6]

The failed movants in *Klaassen* and *Harris* also cited *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997), a physician-assisted suicide case. The

---

[6] As held by the district court in *Klaassen*, 2021 WL 3073926, at *23, "[t]he Supreme Court has assumed (using its word) and strongly suggested that individuals have a constitutional right to refuse unwanted medical treatment," but also that "this liberty interest has remained confined either by duly enacted and constitutional state laws or the state's legitimate interest that it had rationally pursued in regulation." *Id.* *Klaassen* recognized that neither *Cruzan* nor *Harper* established a fundamental right to refuse a mandated vaccine, and in no event applied anything more than rational basis scrutiny. *Id.*

Supreme Court recognized that in *Glucksberg* that the Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests."  But the Supreme Court was "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended," and courts avoid transforming "the liberty protected by the Due Process Clause . . . into the policy preferences of the Members of [the Supreme] Court."  *Id.*, *quoting Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).  Accordingly, "heightened protection" of substantive due process applies only to "concrete examples involving fundamental rights found to be deeply rooted in our legal tradition."  *Id.* at 720, 722. Government actions implicating rights not meeting that threshold merely require "a reasonable relation to a legitimate state interest to justify the action"—in other words, rational basis review.  *See id.* at 722.  Justice Stevens referenced *Jacobson* in his concurring opinion, noting that "[i]n most cases, the individual's constitutionally protected interest in his or her own physical autonomy, including the right to refuse unwanted medical treatment, will give way to the State's interest in preserving human life."  *Id.* at 742 (Stevens, J., concurring).

Individually and collectively, these cases preclude Ms. Pinto from mounting a successful facial challenge to immunization requirements.

**E.    If Ms. Pinto Were To Assert an "As Applied" Challenge, Rather Than A Facial Challenge, That, Too, Should Fail.**

Just as Ms. Pinto cannot succeed in a challenge against the mandate as a whole, she cannot succeed in a challenge against the mandate as applied to her specifically.  Although Ms. Pinto asserts that she has "struggled with [her] health," (Pinto Decl. ¶ 4), she does not elaborate and concedes that she has not applied for a medical exemption, (*id.* ¶ 6).  Ms. Pinto alternatively argues that she may have "natural immunity" to COVID-19.  (*Id.* ¶ 3.)  No laboratory test currently exists, however, that would satisfy NJDOH requirements for submission of evidence of immunity in lieu of vaccination.

State law does contemplate that, in some instances, students may submit evidence of immunity in lieu of vaccination, but only in accordance with NJDOH regulations.  *See* N.J.S.A. § 18A:61D-1.  Those regulations specify "laboratory evidence of immunity," N.J.A.C. § 8:57-6.16, and "[t]he tests used to document immunity must be approved by the [FDA] for this purpose,"  NJDOH, *Questions and Answers on Immunization Regulations Pertaining to Children Attending School/Higher Education: Frequently Asked Questions* 34 (Aug. 2020 Update), available at https://nj.gov/health/cd/documents/imm_requirements/vaccine_qa.pdf. The FDA has issued EUA approval for a COVID-19 serology test.  *See* FDA, *Coronavirus (COVID-19) Update: FDA Authorizes First Point-of-Care Antibody Test for COVID-19* (Sept. 23, 2020), available at https://www.fda.gov/news-

events/press-announcements/coronavirus-covid-19-update-fda-authorizes-first-point-care-antibody-test-covid-19.  The FDA has made clear, however, that although this test can play a role "in identifying individuals who may have been exposed" to COVID-19, these "antibody tests should not be used at this time to determine immunity or protection against COVID-19."  FDA, *FDA in Brief: FDA Advises Against Use of SARS-CoV-2 Antibody Test Results to Evaluate Immunity or Protection from COVID-19, Including After Vaccination* (May 19, 2021), available at   https://www.fda.gov/news-events/press-announcements/fda-brief-fda-advises-against-use-sars-cov-2-antibody-test-results-evaluate-immunity-or-protection.  That means there currently is no FDA-approved serology test authorized to determine immunity to COVID-19.  As a result, there is no laboratory test authorized by NJDOH for that purpose and thus no means to establish immunity from COVID-19 as an alternative to providing proof of vaccination.

Ms. Pinto argues, in the alternative, that because she selected a class that is meeting remotely, and self-attested that she will not avail herself of the privileges of campus facilities, the Court should compel Rutgers to grant her an exception from the vaccination requirement.  (*See* Pl.'s Br. at 8.)  Rutgers did exempt students who are enrolled in *fully-online* degree granting programs who do not receive student identification, are not expected to come to the Rutgers campus, and could not enter restricted areas of the campus if they chose to come.  (*See* Roshto Decl. Ex. A.)  Ms.

23

Pinto, however, is not enrolled in such a program, and Rutgers does not offer a fully online undergraduate program in Psychology.  (*See* Lawrence Decl. ¶ 10.)

Ms. Pinto's motion effectively asks the Court to require Rutgers to create, oversee, and manage a new class of students: those who are fully matriculated and have all the privileges of Rutgers in-person students, but who have selected classes that currently are meeting remotely and who have self-attested that they will not visit the campus.  Even if Rutgers had a means to police those promises, which it does not, those students' educational needs may *require* them to visit the campus.  Their professors may return to classroom learning or require students to perform work that can only be done on campus or in concert with fellow students.  Just as likely, those students will need to consult other faculty members or administrators.  These are only a few of the reasons why a student in Rutgers' in-person division, who has chosen a remote class, should not be able to avoid the vaccine mandate through a self-attestation and election of (currently) remote classes.

## II.   Ms. Pinto Cannot Establish That She Will Suffer Irreparable Harm.

The Court's analysis of Ms. Pinto's motion should end with a conclusion that she has no likelihood of success on the merits, but if the Court moves on to consider whether Ms. Pinto has established she will suffer irreparable harm absent an injunction, the Court should find that Ms. Pinto has not satisfied this factor, either.

*See Oburn v. Shapp*, 521 F.2d 142, 150 (3d Cir. 1975) ("A party moving for preliminary injunctive relief must carry the burden of showing irreparable injury.").

### A.   *Plaintiff Sat on Her Hands.*

Ms. Pinto knew on March 25 that she could not take classes in Fall 2021 without complying with vaccination requirements. *See Our Path Forward – COVID-19 Vaccination and the Fall Term*, Office of the President (Mar. 25, 2021), available at https://www.rutgers.edu/president/our-path-forward. Even if, at some point, she could have hypothesized an ability to evade the mandate by selecting a class with initially remote instruction, she knew no later than July 23 (the date of her lawyer's letter) that the mandate had no such exception. (*See* Roshto Decl. Ex. B.) Ms. Pinto's counsel let sit for a month Rutgers' offer to discuss Ms. Pinto's situation, (Roshto Decl. Ex. C), and Ms. Pinto waited until August 30, two days before classes began, to seek injunctive relief. Ms. Pinto then elected to prioritize her unsuccessful judicial recusal motion over having her request for injunctive relief considered.

The law is clear that if "a Plaintiff delays in seeking preliminary injunctive relief, such delay is evidence that speedy relief is not needed." *EMSL Analytical, Inc. v. Testamerica Analytical Testing Corp.*, No. Civ. 05-5259, 2006 WL 892718, at *12 (D.N.J. Apr. 4, 2006); *see also Lanin v. Borough of Tenafly*, No. 12-3399, 2013 WL 936363, at *3 (3d Cir. Mar. 12, 2013) ("Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to

protect the plaintiffs' rights. . . . Delay in seeking enforcement of those rights . . . tends to indicate at least a reduced need for such drastic, speedy action.") (internal citations omitted).  A plaintiff's undue delay in seeking injunctive relief suffices on its own to defeat a claim of irreparable injury.  *See EMSL*, 2006 WL 892718, at *13; *see also Warner Lambert Co. v. McCrory's Corp.*, 718 F. Supp. 389, 393-95 (D.N.J. 1989).  Here, not only did Ms. Pinto wait five months after Rutgers announced the mandate to sue—during which time she could have completed the class she wishes to take without new vaccination requirements (*see* Lawrence Decl. ¶ 6)—but she waited weeks after suing to file a motion for injunctive relief.  *See Levine v. BlockFi Inc.*, No. 21-11934, 2021 WL 3508831, at *2 (D.N.J. Aug. 9, 2021) (denying injunctive relief in part because plaintiff delayed seeking injunction after filing lawsuit); *Doris Behr 2012 Irrevocable Tr. v. Johnson & Johnson*, No. 19-8828, 2019 WL 1519026, at *4 (D.N.J. Apr. 8, 2019) (same).  The Court should not credit a claim of emergency when it is Ms. Pinto who created that self-proclaimed "emergency."  *See Chaves v. Int'l Boxing Fed'n*, No. 16-1374, 2016 WL 1118246, at *2 (D.N.J. Mar. 22, 2016) ("Based purely on a cursory review of the documents presently before the Court, the nature and extent of irreparable harm is not clear, given that Plaintiffs waited until the last minute to file this application.").

Nor can Ms. Pinto claim that an injunction would allow her to complete her graduation requirements this semester.  Even if Ms. Pinto could make up the time

she already has missed and successfully complete the single Quantitative Methods in Psychology class for which she registered this semester, she cannot graduate with a major in Psychology unless she also completes at least a three-credit Psychology class at the 400 level.  (Lawrence Decl. ¶¶ 4, 8.)  The add/drop period for Fall 2021 classes has expired, so it is too late now for Ms. Pinto to add such a class.  (*See id.* ¶ 9.)  Because Ms. Pinto must return to Rutgers in a future semester to complete her degree requirements in any event, this too undermines her assertion of "emergency."

### III.   The Balance of Harms and the Public Interest Favor Vaccinating as Many People as Possible to Work Towards Eradicating COVID-19.

The Court also would serve the public interest by leaving the role of policymaking to states and state institutions.  The Supreme Court has "recognized the role of the States as laboratories for devising solutions to difficult legal problems."  *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 817 (2015) (citation omitted); *see also United States v. Lopez*, 514 U.S. 549, 581 (1995) (Kennedy, J., concurring) ("States may perform their role as laboratories for experimentation to devise various solutions where the best solution is far from clear."); *New State Ice Co. v. Liebmann*, 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting) ("It is one of the happy incidents of the federal system that a single courageous state may, if its citizens choose, serve as a laboratory; and try novel social and economic experiments without risk to the rest of the country.").  "Enabling . . . this state university to work through these problems reasonably fosters public

health and safety in areas of scientific uncertainty." *Klaassen*, 2021 WL 3073926, at *43, *citing Gonzales v. Carhart*, 550 U.S. 124, 163 (2007); *see also Gonzales*, 550 U.S. at 163  (noting that the law gives "wide discretion to pass legislation in areas where there is medical and scientific uncertainty," *citing Jacobson*, 197 U.S. at 30-31); *Cassell v. Snyders*, 990 F.3d 539, 549 (7th Cir. 2021) ("[S]cientific uncertainty surrounding the pandemic further cautions against enjoining state coronavirus responses unless absolutely necessary."); *Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 68 ("Members of this Court are not public health experts.").

Ms. Pinto also is unable to show that an injunction is in the public interest. The Court must consider the effects of enjoining the vaccine policy on the safety and health of others.  *See, e.g.*, *Cassell*, 990 F.3d at 550 ("Where appropriate, this balancing process should also encompass any effects that granting or denying the preliminary injunction would have on nonparties . . . ." (citation omitted); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction" (citation omitted).  The public interest here favors protecting as many people as possible from contracting a serious case of a potentially deadly illness.  A person refusing to be immunized is not "the only one[] harmed"; such refusal "could 'sicken and even kill many others who did not consent to that trade-off.'" *Klaassen*, 2021 WL 3073926, at *43 (citation omitted) (balance of harms weighed in favor of

denying relief because students "'are not asking to be allowed to make a self-contained choice to risk only their own health' in making this decision—their decision necessarily bears on the health of other students, faculty, and staff," *quoting Cassell*, 990 F.3d at 550).

## CONCLUSION

The law on this subject is settled.  New Jersey does not violate the State or Federal Constitutions by authorizing institutions of higher education to require any ACIP-approved vaccine as a condition of enrollment, and Rutgers did not violate New Jersey law when it decided to require a COVID-19 vaccine as a condition of Fall 2021 enrollment or imposed that mandate on Ms. Pinto, like all of her fellow students.  For the reasons stated above, the Court should deny Ms. Pinto's motion for injunctive relief.

Dated: September 14, 2021          Respectfully submitted,

*/s/ Jeffrey S. Jacobson*

Jeffrey S. Jacobson
Andrew B. Joseph
Kristen N. Roshto
**FAEGRE DRINKER BIDDLE & REATH, LLP**
600 Campus Drive
Florham Park, New Jersey 07932
(973) 549-7000
(973) 360-9831 (fax)
Jeffrey.Jacobson@faegredrinker.com
Andrew.Joseph@faegredrinker.com
Kristen.Roshto@faegredrinker.com
