Julio C. Gomez, Esq.
GOMEZ LLC ATTORNEY AT LAW
1451 Cooper Road
Scotch Plains, NJ 07076
Tel 908.789.1080
Fax 908.789.1081
*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE, INC., PETER CORDI, RAELYNNE MILLER, KAYLA MATEO, ADRIANA PINTO, JAKE BOTHE, AND DOES 1-13,<br><br>*Plaintiffs*,<br><br>-against-<br><br>RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY, BOARD OF GOVERNORS, RUTGERS SCHOOL OF BIOMEDICAL AND HEALTH SCIENCES, CHANCELLOR BRIAN L. STROM, PRESIDENT JONATHAN HOLLOWAY, in their official capacities.<br><br>*Defendants* | Case No. 3:21-cv-15333 (ZNQ-TJB) |

**REPLY MEMORANDUM OF PLAINTIFFS
ADRIANA PINTO AND CHILDREN'S HEALTH DEFENSE
FOR INJUNCTIVE RELIEF.**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…...…………………………………………………..ii

PRELIMINARY STATEMENT …………………………………………………..1

STATEMENT OF FACTS ……………………………………...….……………2

ARGUMENT   ………………………………………………………………………..5

*Irreparable Harm* ………………………………………………………………5

*Likelihood of Success on the Merits* …………………………………………….5

CONCLUSION ………………………………………………………………..15

# TABLE OF AUTHORITIES

## Cases

*Abdullahi v. Pfizer, Inc.*,
562 F.3d 163, 184 (2d Cir. 2009) ……………………………………………………_

*Ankele v. Hambrick,*
286 F. Supp. 2d 485, 496 (E.D. Pa. 2003),
*aff'd,* 136 F. App'x 551 (3d Cir. 2005) ……………………………………………….5

*Hollister v. U.S. Postal Serv.*,
142 F. App'x 576, 577 (3d Cir. 2005) ………………………………………………….5

*Jacobson v. Massachusetts*,
197 U.S. 11 (1905) …………………………………………………………….*passim*

*Klassen v. Trs. of Ind. Univ.*,
7 F.4th 592 (7th Cir. 2021) …………………………………………………………..6

*Pers v. Teamsters Local Union 863*,
No. 12-2293, 2013 WL 5676802 (D.N.J. Oct. 17, 2013) ………………………….5

## Statutes

21 U.S.C. § 360bbb-3 ………………………………………………………………….13

N.J.S.A. 26:1A-7 ……………………………………………………………………….9

N.J.S.A. 26:4-2 …………………………………………………………………………9

N.J.S.A. 26:13-36 ………………………………………………………………………9

N.J.S.A. 18A:61D-1 ……………………………………………………………………9

N.J.S.A. 18A:61D-8 …………………………………………………………………...12

N.J.S.A. 18A:62-15.1 ………………………………………………………………..11

## Regulations

N.J.A.C. 8:57-6.4(c) ....………………………………………………………*passim*

## Administrative History

21 N.J.R. 3605 (1989) …………………………………………………………………10

22 N.J.R. 1137-1140 (1990) …………………………………………………………...10

27 N.J. Reg. 3631(a) (1995) …………………………………………………………...10

27 N.J. Reg. 4701(a) (1995) …………………………………………………………...10

33 N.J. Reg. 2752(a) (2001) …………………………………………………………...10

34 N.J. Reg. 3023(a) (2002) …………………………………………………………...10

36 N.J. Reg. 3335(a) (2004) …………………………………………………………...10

37 N.J. Reg. 3037(b) (2005) …………………………………………………………...10

40 N.J. Reg. 1962(a) (2008) …………………………………………………………...10

41 N.J. Reg. 1419(a) (2009) …………………………………………………………...10

## PRELIMINARY STATEMENT

Despite 29 pages of briefing and dozens of legal authorities Rutgers' opposition fails to explain how any legitimate state interest it possesses is <u>rationally related</u> to mandate a COVID-19 vaccine upon a student who is taking only a remote class and will have no physical presence on campus.[1]  *Assuming arguendo* that Rutgers' conduct is subject to rational basis review – which Plaintiffs do not concede – Rutgers' decision to mandate COVID-19 vaccination upon Ms. Pinto, a remote student, bears no rational relationship to preventing infection and transmission of SARS-CoV-2, and it is arbitrary and capricious because it contradicts the express terms of its own Policy.

If the legitimate state interests that Rutgers intends to achieve are health and safety generally, and specifically, limiting the number of infections and transmission of COVID-19, then Rutgers cannot possibly further those interests by targeting a student who will not be on campus.  Under *Jacobson v. Massachusetts,* such a mandate "has no real or substantial relation to those objects," 197 U.S. 11, 31 (1905), because Ms. Pinto cannot infect or transmit the virus remotely.

---

[1] Ms. Pinto filed a second declaration that she will have no physical presence on campus (Dkt. 15).  She now submits a third declaration explaining that she cannot surrender her Rutgers ID because it is routinely used for identification during remote class examinations.  Third Declaration of Adriana Pinto, ¶ 11. She also explains why she erroneously believed that she only needed one class to graduate, when in fact she needs two.  *Id.* ¶¶ 3-9 and Ex. A. She plans to take the second course remotely in the Spring 2022 semester and apologizes to the Court for her mistaken belief.  *Id.* at ¶¶ 10-11.

Unvaccinated students (with medical and religious exemptions) are on-campus attending classes indoors with unvaccinated professors, among unvaccinated employees, and Rutgers does not require the public to be vaccinated to gain entry into its buildings (e.g. athletic events).[2]  Therefore, a mandate directed at Ms. Pinto is "beyond all question, a plain, and palpable invasion of her rights" and it is this Court's duty "to so adjudge and give effect to the Constitution."  *Id.*

Notably, Rutgers' opposition presented no sworn declaration, no policy, no directive, nothing to support the speculation on page 24 of its brief that Ms. Pinto may need to appear on campus or that professors may suddenly stop teaching remotely.[3]  On the other hand, Ms. Pinto declared under penalty of perjury that she will not set foot on campus.  All she wants is to finish her degree.

## STATEMENT OF FACTS

In January 2021, Rutgers told the public and the student body that the COVID-19 vaccine "is not mandatory" for the Rutgers community.[4]  Two months

---

[2]  *See* https://scarletknights.com/sports/2021/8/30/rutgers-athletics-covid-19-in-venue-protocols.aspx .

[3] It is also irrational for Rutgers to mandate vaccines that are not been proven to prevent infection or transmission: according to FDA's briefing documents for all EUA authorized vaccines there is limited data to assess the effect of the vaccines in preventing asymptomatic infection or to assess the effect of the vaccines against transmission of SARS-CoV-2 from individuals who are infected despite vaccination.  *See* Verified Complaint, p. 1 (citing FDA Briefing documents for each vaccine).

[4] In its opposition, Rutgers submitted a link to a Rutgers produced video where Ms. Sherri-Ann P. Butterfield, Executive Vice Chancellor of Rutgers University

later Rutgers reversed. Rutgers' opposition offers absolutely no explanation for this reversal.

It is indisputable that Rutgers' Policy says "a student whose entire course of study is. . . fully remote" is exempt.[5] Rutgers contends this exemption only applies to fully-online degree programs, *see* Opp. Brf. at 8, but that contention is at odds with the plain text of its Policy.[6] Thus, Ms. Pinto is not asking Rutgers to create a new, extrajudicial statutory exemption for her; she is asking that Rutgers honor the express terms of its own Policy.

Rutgers claims Ms. Pinto "sat" on her rights. Opp. Brf. pp. 25-27. She did not. She relied on a reasonable interpretation of the Policy. Rutgers argues Ms. Pinto was told the Policy only applied to fully on-line degree programs. For this reason, undersigned counsel wrote to Rutgers to explain that the communications

---

Newark, asks Vicente Gracias, Vice Chancellor of Rutgers Biomedical and Health Sciences, the following questions and he responds [at the 7:30 minute mark]:
> Q. I want to move to think about the vaccines in relation also to the individuals at Rutgers University and the Rutgers community. Will they be required to receive the vaccine? Is it optional? Will it be optional?
> A. Well, it is America and Rutgers is part of America. So, the vaccine at this point is not mandatory across the United States or here in New Jersey and Rutgers certainly with our stance of human liberties and our history of protecting that, the vaccine is not mandatory.[4]

*See* Opp. Brf. at 8 n.2 (claiming Dr. Gracias "speculated"). He did not.
[5] *See* Ex. A to Declaration of Counsel, Julio Gomez (Dkt. No. 10-3).
[6] *See* https://policies.rutgers.edu/.

3

of its officials were misstating the Policy.[7]  Rutgers claims Plaintiffs' counsel ignored a request to speak in response to this letter, but he did not: the moment counsel discovered an email proposing a call he responded affirmatively.[8] Rutgers conveniently omits from its exhibit the two final emails in that exchange where Plaintiffs' counsel proposed a date and time for a call – Rutgers never confirmed the call (and never responded to the substance of the letter).[9]

According to the misleading university communications that were the subject of counsel's July 23, 2021 Letter, and contrary to the Policy, students were being required to comply by August 1, 2021, and threatened with loss of access to Rutgers' login computer applications.[10]  But Ms. Pinto did not lose access on August 1, 2021, and Rutgers allowed her to register for her online course on or about August 3, 2021.  According to the Policy, students were supposed to submit evidence of vaccination "at least 2 weeks prior to coming onto campus for any reason" or no later than August 18 (since the fall semester started September 1). However, August 18 came and went and Rutgers took no action against Ms. Pinto, which confirmed Ms. Pinto's reasonable belief that she was allowed to register for a fully remote class scheduled to begin September 1.

---

[7] *See* Ex. B to the Declaration of Kristen N. Roshto ("Roshto Decl.") filed with Rutgers' Opposition (Dkt. 20-1).
[8] *See* Ex. C to Roshto Decl. (email dated August 24, 2021) ("I am happy to schedule a call with you.") (Dkt. 20-1).
[9] *See* Ex. A to Second Gomez Decl. and ¶ 3, filed contemporaneously herewith.
[10] *See* Ex. B to Roshto Decl. (enclosures to July 23, 2021 letter) (Dkt. 20-1).

4

It came as a complete surprise when Rutgers blocked Ms. Pinto from all access to her accounts on August 26. She had no access to check emails, to any schedule of classes, to any degree or credits tracking module, nothing. At that point, Ms. Pinto had standing to apply for an injunction – not before.

## REPLY ARGUMENT

*Irreparable Harm* - Rutgers does not contest that Ms. Pinto's exercise of her right to informed consent and to refuse unwanted medical treatment under the Due Process Clause is "chilled" by Rutgers' vaccine mandate and constitutes irreparable harm *per se*. Moving Brf. 9-10. Any contest of that position is now waived.[11] Therefore Ms. Pinto suffers irreparable harm. Since Rutgers let her register for her on-line class without uploading vaccination documentation, took no action against her by the Policy's August 18 deadline, waited until August 26 to block her, and she filed August 30, she did not delay in seeking injunctive relief.

*Likelihood of Success on the Merits* - Ms. Pinto argued in her moving brief that she is likely to succeed on the merits because she possesses constitutionally guaranteed rights to informed consent and to refuse unwanted medical treatment

---

[11] *Cf. Hollister v. U.S. Postal Serv.*, 142 F. App'x 576, 577 (3d Cir. 2005) (noting that a party's failure to oppose an argument raised in a motion to dismiss constitutes waiver); *Ankele v. Hambrick,* 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003), *aff'd,* 136 F. App'x 551 (3d Cir. 2005) ("Plaintiff makes no response to this argument and thus has waived his opportunity to contest it"); *Pers v. Teamsters Local Union 863*, No. 12-2293, 2013 WL 5676802, at *2 (D.N.J. Oct. 17, 2013) ("Failure to raise legal arguments in opposition to a motion to dismiss results in waiver").

under the Due Process Clause and Rutgers' mandate does not meet the requirements of *Jacobson v. Massachusetts*. Moving Brf. at 6-8. Rutgers argues that she cannot succeed on the merits because *Jacobson* and its progeny during the COVID pandemic, hold that a state can mandate vaccination against the liberty interest in the Due Process Clause. However, remarkably, Rutgers ignores the facts and specific holdings of *Jacobson* in its opposition and misses the point.[12]

Plaintiffs are not arguing that the right to informed consent or to refuse unwanted medical treatment under the Due Process Clause. Or, that state legislatures cannot mandate compulsory vaccination *per se*. Rather, Ms. Pinto contends that in this instance compulsory vaccination mandates must meet the specific requirements of *Jacobson* in order to pass constitutional muster.

First, *Jacobson* does not hold that any public entity, at any time, can mandate any vaccine it deems appropriate as Rutgers seems to argue. *Jacobson* upheld a Massachusetts statute delegating to local boards of health the authority to mandate vaccines (and the Cambridge board of health's regulation mandating smallpox vaccination). 197 U.S. at 12 (concerning "reasonable regulations established directly by legislative enactment as will protect the public health and public safety"). *Jacobson* upheld that statute and regulation because it found them

---

[12] Rutgers focuses primarily on *Klassen v. Trs. of Ind. Univ.*, 7 F.4th 592 (7th Cir. 2021) which is neither binding precedent, nor persuasive, because the preliminary injunction under review sought to enjoin the entire COVID vaccine mandate, not simply a mandate on a remote only student.

6

reasonable, necessary for public health, and proportional to the need. 197 U.S. at 27-33. Such statutes must be read in a way that avoids harm and is fair. *Id.* at 38-39. Rutgers' opposition ignores these requirements, offering no explanation why its mandate upon a fully remote student – as opposed to all other students – is reasonable or necessary (since Ms. Pinto is not on campus and cannot transmit the virus), or proportional (since unvaccinated professors and students are permitted teach and attend classes indoors every day). *See id.* at 27 ("no rule prescribed by a State, nor any regulation adopted by a local government agency acting under the sanction of state legislation, shall contravene the Constitution of the United States or infringe any right granted or secured by that instrument."). None of the cases cited by Rutgers uphold a vaccine mandate upon a person who is distanced from everyone else the mandate is supposed to protect. None of the plaintiffs in *Klassen* were in Ms. Pinto's particular situation. Rutgers cites several cases, recently decided, for the proposition that *Jacobson* commands denial of this preliminary injunction but none concern a mandate on a remote student. Opp. Brf. 12-15 (citing *Zucht v. King,* 260 U.S. 174 (1922); *Sadlock v. Board of Educ.*, 137 N.J.L. 85 (1948); *Ill. Republican Party v. Pritzker*, 973 F.3d 760 (7th Cir. 2020)*, cert. denied,* 141 S. Ct. 1754 (2021); *Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603 (2020); *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020); *Norris v. Stanley*, 21-cv-756, 2021 WL 3891615 (W.D. Mich. Aug.

31, 2021); *W.D. v. Rockland County*, 19 Civ. 2066, 2021 WL 7070065 (S.D.N.Y. Feb 22, 2021); *Doe v. Zucker,* 20-cv-840, 2021 WL 619465 (N.D.N.Y. Feb 17, 2021); *see also Harris v. Univ. of Mass.*, 21-cv-11244, 2021 WL 3848012 at *4 (D. Mass. Aug. 27, 2021) (inapplicable because the UMass COVID mandate applied to students physically present and permitted students to switch to online courses).

Indeed, *Jacobson* commands that a vaccination regulation must have a "real and substantial relation."  Since a person sitting at home on a computer, miles away from campus, is not a threat to other students, it is extreme to keep Ms. Pinto from completing her course work at Rutgers based upon the implausible threat of infecting other students.  Keeping her from completing her degree requirements and ultimately graduating for this reason is unreasonable.  Rutgers' policy unreasonably harms Ms. Pinto and could easily be avoided by allowing her to complete her degree from home.  Rutgers' policy is discriminatory since unvaccinated professors, staff, students and members of the public are permitted on campus routinely.  Rutgers does not address any of these factors in its opposition.

Additionally, *Jacobson* stands for the proposition that a state legislature makes the determination that vaccination is necessary and can delegate that authority to a board of health.  197 U.S. at 27 ("appropriate for the legislature to refer that question… to a Board of Health").  That has occurred in New Jersey, but

8

not with respect to Rutgers (or any other college or university). And none of the government actors who are truly empowered to mandate compulsory vaccination in New Jersey have manded COVID-19 vaccines for college attendance.

New Jersey's Department of Health has the power to mandate vaccines: acting through New Jersey's Public Health Council, the Department of Health can mandate vaccines *but only* if it publishes the proposed regulation, holds a public hearing and gives the public the opportunity to comment. *See* N.J.S.A. 26:1A-7 (power to establish State Sanitary Code, including immunization against disease); *see also* N.J.S.A. 26:4-2 (general powers). The Commissioner of Health can mandate vaccines unilaterally, *but only* during a public health emergency. *See* N.J.S.A. 26:13-14. Most recently, the Governor can mandate vaccines unilaterally as a result of recent powers temporarily vested in him by the state legislature, but again, in this instance, *but only* until January 11, 2022. *See* N.J.S.A. 26:13-36

Relying on N.J.S.A. 18A:61D-1 and N.J.A.C. 8:57-6.4(c), Rutgers claims it can mandate any vaccine, at any time (public emergency or not), without publication, without a public hearing or public comment, if it deems it appropriate and if the ACIP recommends it. According to Rutgers this statute and this regulation is the legal authority to mandate vaccines on the student body. Plaintiffs did not cite these provisions in their moving brief or their complaint because they do not give Rutgers any such authority and this Court should not be so persuaded

9

that a cryptic 30+ year old regulation gave Rutgers and every college in the State, the broad and express authority to mandate whatever vaccines they see fit.

     First, N.J.S.A. 18A:61D-1 has no language authorizing Rutgers to mandate any vaccines. Second, N.J.A.C. 8:57-6.4(c) (formerly N.J.A.C. 8:57-6.2(c), and before 1995, N.J.A.C. 9:2-14.2(b)) only permits colleges and universities to establish "additional requirements for student immunizations and documentation" not additional immunizations for students. This regulation appears to have been proposed for the first time in 1989; yet the administrative history of this regulation does not support Rutgers' interpretation that more than 30 years ago the state of New Jersey gave Rutgers *carte blanche* authority to unilaterally impose any new vaccine on its student body it deemed appropriate.[13] *See* 21 N.J. Reg. 3605-3607 (1989) (original version of rule proposed for N.J.A.C. 9:2-14.2(c)); 22 N.J. Reg. 1137-1140 (1990) (original version of rule adopted and codified at N.J.A.C. 9:2-14.1(b))[14]. Plaintiffs have not found anywhere in the administrative history of this regulation going back to 1989 any discussion or suggestion that Rutgers (and every college and university) has discretion to unilaterally increase the types of vaccines

---

[13] *See* 21 N.J. Reg. 3605 (1989) (original rule proposal for N.J.A.C. 9:2-14(c)); 22 N.J. Reg. 1137-1140 (original rule codified at N.J.A.C. 9:2-14.1(b)); 27 N.J. Reg. 3631(a) (1995) (recodified at N.J.S.A. 8:57-6.2(c)); 27 N.J. Reg. 4701(a) (1995); 33 N.J. Reg. 2752(a) (2001); 34 N.J. Reg. 3023(a) (2002); 36 N.J. Reg. 3335(a) (2004); 37 N.J. Reg. 3037(b) (2005); 40 N.J. Reg. 1962(a) (2008) (proposal to recodify at N.J.S.A. 8:57-6.4(c)); 41 N.J. Reg. 1419(a) (2009) (recodified at N.J.A.C. 8:57-6.4(c)).

[14] *See* Ex. B and C to Second Gomez Decl., filed herewith.

that students must take to attend. Absent such an express delegation of police power, like in *Jacobson*, Rutgers' reliance on this regulation should not be used to condone chilling the free exercise of the Due Process rights of Ms. Pinto or the 70,000 students at Rutgers.

Moreover, when this regulation was originally proposed Rutgers commented that "standards within the rules and the underlying legislation are inadequate as approximately 10% of those individuals vaccinated prior to 1980 are not adequately protected due to vaccine failure." 22 N.J. Reg. 1138 (1990) (Second Gomez Decl, Ex. C). More recently, on March 7, 2019, Rutgers' representative appeared before the Senate Higher Education Committee testifying in favor of a statutory amendment that would permit colleges and universities to require meningococcal vaccines as recommended they become recommended by the ACIP. *See* Recording of Senate Higher Education Committee Hearing, March 7, 2019 on bills to amend meningococcal statute, N.J.S.A. 18A:62-15.1.[15]

Rutgers' comment to the 1989 rule proposal and its recent testimony in 2019 would be completely unnecessary if the regulation it relies upon, N.J.A.C. 8:57-6.4(c), has always meant that a university had the authority to require more vaccinations unilaterally on its student body. Despite the administrative history of

---

[15] Available at *https://www.njleg.state.nj.us/media/mp.asp?M=A/2019/SHI/0307-1000AM-M0-1.m4a&S=2018*. (testimony of Melodee Laskey, MD, Assistant Vice Chancellor, Department of Health and Wellness, Rutgers New Brunswick at approx. 40 minute mark).

11

this regulation belying that interpretation, that is exactly what Rutgers claims this regulation means today: that it is a unilateral authority to impose whatever new vaccine Rutgers deems appropriate upon the student body with no restrictions (except in the current version of the rule, if recommended by the Advisory Committee on Immunization Practices ("ACIP") of the Centers for Disease Control and Prevention).

This regulation clearly is not a delegation of police power to mandate vaccines, and Rutgers' reliance on this rule is mere sophistry.  Moreover, this regulation is certainly not an authorization to mandate vaccines that are not licensed and fully approved by the FDA.  Additionally, if colleges and universities could simply add new vaccines to those required by the state Department of Health to attend college, then there would be no need for the State Legislature to devote considerable time and resources to passing statutes requiring additional vaccines for college attendance since the adoption of this regulation in 1990.  *See e.g.* N.J.S.A. 18A:61D-8 (hepatitis B vaccine); N.J.S.A. 18A:62-15.1 (meningococcal vaccine).[16]

Even assuming that N.J.A.C. 8:57-6.4(c), authorizes Rutgers to mandate vaccines, Rutgers' mandate as it pertains to Ms. Pinto is not supported by any specific ACIP recommendation, as the rule requires.  ACIP has not issued any

---

[16] Plaintiffs are not aware of any instance since 1989 where colleges and universities in New Jersey unilaterally mandated vaccines on the student body.

recommendations for vaccinating students engaged in remote learning activities. ACIP has recommended COVID-19 vaccines generally, but with respect to all three vaccines, ACIP has issued "interim recommendations" which are based on the use of these vaccines "under an EUA."[17]

The EUAs were issued pursuant to 21 U.S.C. § 360bbb-3, which, as a condition of emergency use authorization, the Secretary is required to establish "appropriate conditions designed to ensure that individuals to whom the product is administered are informed" of, *inter alia*, "the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks." 21 U.S.C. § 360bbb-3(e)(1)(A). Therefore, the ACIP recommendation (upon which Rutgers relies) is tethered to compliance with 21 U.S.C. § 360bbb-3's requirement that recipients of these vaccines have a right to accept or refuse administration. Rutgers' mandate –

---

[17] *See* Second Gomez Decl. Ex. D, E, F (Morbidity and Mortality Weekly Reports for Pfizer, Moderna and Janssen EUA COVID-19 vaccines), filed herewith. "The interim recommendation and clinical considerations are based on use of the Pfizer-BioNTech COVID-19 vaccine **under and EUA** and might change as more evidence becomes available." Second Gomez Decl., Ex. D p. 1923. "The interim recommendation and clinical considerations are based on use of the Moderna COVID-19 vaccine **under and EUA** and might change as more evidence becomes available." Second Gomez Decl., Ex. E p. 1654. ""The interim recommendation and clinical considerations are based on use of the Janssen COVID-19 vaccine **under and EUA** and might change as more evidence becomes available." Second Gomez Decl., Ex. F p. 331 (emphasis added to all).

presumably adopted in conjunction with ACIP's recommendation – flies in the face of that right since the mandate chills the free exercise of that option under federal law and rights under the Due Process Clause by depriving students from continuing their academic studies at Rutgers if they refuse administration of an EAU COVID-19 vaccine.

Rutgers cannot claim it has authority to issue vaccines per ACIP recommendations and then ignore that ACIP's recommendations require a recipient to receive Fact Sheets stating they are free to receive these vaccines voluntarily. *See* Second Gomez Decl., Ex. G at 1 ("It is your choice to receive the Pfizer-BioNTech COVID 19 Vaccine"), Ex. H at 1 ("It is your choice to receive the Moderna BioNTech COVID 19 Vaccine"), Ex. I at 1("It is your choice to receive the Janssen COVID 19 Vaccine")).

Rutgers makes a passing reference to the DOJ's recent opinion on this matter for the proposition that 21 U.S.C. § 360bbb-3 does not include mandates; that DOJ opinion is not binding on this Court, but which more importantly, it completely ignores the principle that "in America" government cannot coerce acceptance of an unlicensed medical product.[18] *See e.g.*, *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 184 (2d Cir. 2009) (recognizing that "the domestic laws of at least

---

[18] Since the filing of Plaintiffs' Complaint, FDA has purported to license the Pfizer vaccine; however, the purported licensure of Pfizer's vaccine is of no moment since Rutgers is not authorized to unilaterally mandate any vaccine, licensed or unlicensed, upon the student body.

14

eighty-four States all uniformly and unmistakably prohibit medical experiments on human beings without their consent, thereby providing concrete content for the norm."), *but see Norris v. Stanley,* 2021 WL 3891615 (W.D. Mich 2021) (questioning this position in view of Pfizer vaccine approval). Expulsion from school, a job, and civil society are not mere consequences but coercion specifically intended to force a person to reverse a voluntary decision to exercise informed consent and refuse unwanted medical treatment. *Jacobson* weighed the imposition of a $5 fine, not expulsion from school, a job or civil society.

*Assuming* this Court accepts Rutgers argument that N.J.A.C. 8:57-6.4(c), authorizes Rutgers to mandate vaccines, and that its mandate is consistent with ACIP recommendations, then Rutgers' mandate must still be reasonable and necessary for public health to pass muster under *Jacobson*, 197 U.S. at 27-33. As explained at length above, in this case, it does not.

## CONCLUSION

For all these reasons, this Court should issue a temporary restraining order and/or preliminary injunction maintaining the status quo; requiring Defendants to follow Rutgers University Policy Section 10.3.14 which exempts students enrolled in fully-remote classes from COVID-19 vaccination; ordering Rutgers to lift the block on Ms. Pinto's account; and allowing her to attend her class remotely without COVID-19 vaccination for the Fall 2021 and Spring 2022 semesters.

Respectfully submitted,
September 20, 2021

                        GOMEZ LLC
                        ATTORNEY AT LAW
                        By:   *s/ Julio C. Gomez*
                              Julio C. Gomez, Esq.
                        1451 Cooper Road
                        Scotch Plains, NJ 07076
                        Tel 908.789.1080
                        Fax 908.789.1081
                        jgomez@gomezllc.com
                        *Attorney for Plaintiffs*