UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY, *et al.*,<br><br>Defendants. | Civil Action No. 21-15333 (ZNQ) (TJB)<br><br>**OPINION** |

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon a Motion for Temporary Restraining Order filed by Plaintiffs Children's Health Defense, Inc. ("CHD") and Adriana Pinto (collectively, "Plaintiffs"). (the "Motion", ECF No. 10.) Plaintiffs' counsel filed a Memorandum of Law in support of the Motion and on behalf Adriana Pinto. ("Plaintiffs' Memorandum", ECF No. 10-1.) Defendants Rutgers, the State University of New Jersey ("Rutgers"), Board of Governors, Rutgers School of Biomedical and Health Sciences, Chancellor Brian L. Strom, and President Jonathan Holloway (collectively, "Defendants") opposed the Motion, (Opposition Brief, ECF No. 20), to which Plaintiffs replied, (Reply, ECF No. 24).[1] The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated herein, the Motion will be denied.

---

[1] By letter dated September 22, 2021, Defendants sought leave to file a sur-reply in further opposition to the Motion. (ECF No. 35.) The same day, the Court denied leave and instructed the parties to file no further briefing. (ECF No. 36.)

1

**I.      BACKGROUND**

On August 16, 2021, Plaintiffs filed a complaint seeking a declaration that the portion of Rutgers' COVID-19 policy requiring students to be vaccinated prior to returning to campus (the "Policy") is unlawful. (Complaint ¶ 1, ECF No. 1.) The Complaint spans seven counts and alleges the Policy is "both illegal and unconstitutional" and coerces students to accept "an experimental COVID-19 vaccine" as a precondition for their return to campus. (*Id.* ¶¶ 1,3.). The seven counts in the Complaint alleges the following: (1) Preemption by Federal Law and Ultra Vires under State Law (First Cause of Action) (*Id.* ¶¶ 224-251); (2) Violation of the Right to Informed Consent and the Right to Refuse Medical Treatment Guaranteed by the Fourteenth Amendment and Article 1 of the Constitution of the State of New Jersey (Second Cause of Action) (*Id.* ¶¶ 252-287); (3) Violation of Equal Protection guaranteed by the Fourteenth Amendment and Article I of the Constitution of the State of New Jersey (Third Cause of Action) (*Id.* ¶¶ 288-296); (4) Violation of Civil Rights under 42 U.S.C. § 1983 (Fourth Cause of Action) (*Id.* ¶¶ 297-300); (5) Violation of the New Jersey Civil Rights Act (Fifth Cause of Action) (*Id.* ¶¶ 301-303); (6) Estoppel or Detrimental Reliance (Sixth Cause of Action) (*Id.* ¶¶ 304-310) and; (7) Breach of Contract (Seventh Cause of Action) (*Id.* ¶¶ 311-315.) The Summons was issued that same day.

On August 25, 2021, the Court entered a letter order scheduling a conference call between the parties for August 31, 2021. (ECF No. 9.) On August 30, 2021, Plaintiffs filed the Motion. (ECF No. 10.) On August 31, 2021, during a conference call between the Court and the parties, Plaintiffs alerted the Court that they would be filing a motion seeking the Judge's recusal. (ECF No. 14.) During that same call, the Court discussed the Motion with the Plaintiffs. (*Id.*) On September 1, 2021, following the conference call, the Court entered a text order setting a briefing schedule for the present motion and the motion for recusal. On September 14, 2021, the Court

denied Plaintiffs' motion for recusal. (ECF No. 21.) Plaintiffs' counsel requested an extension, until September 20, 2021, to file its reply to the Motion. (ECF No. 22.) The Court granted Plaintiffs' extension and on September 20, 2021, Plaintiffs filed its reply. (ECF No. 24.) The Court now considers the Motion.

## II.     PARTIES' ARGUMENTS

### A. Plaintiffs' Moving Brief

Plaintiffs begin by asserting that they are likely to succeed on the merits. (Plaintiffs' Memorandum at 6.) They argue that under the 14th Amendment, "Ms. Pinto has a constitutionally guaranteed right to informed consent and to refuse unwanted medical treatment." (*Id.*) Plaintiffs contend that *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) requires a mandatory vaccination to be reasonable, necessary for public health, and proportional to the need. (*Id.* (citing *Jacobson*, 197 U.S. at 27–33).) According to Plaintiffs, the Policy is inconsistent with *Jacobson*, and therefore is unconstitutional, because it mandates vaccination for "students who will never set foot on campus," which has no relationship to Rutgers' claimed interest in safeguarding the health of its community. (*Id.* at 8.) Plaintiffs also argue that Rutgers acted arbitrarily and capriciously with respect to Ms. Pinto by first instituting the Policy, which includes language exempting students from the vaccination requirement if they are taking "fully remote classes," only to later block Ms. Pinto's online account because she was not vaccinated.

With respect to irreparable harm to Ms. Pinto, Plaintiffs argue that two violations of her constitutional rights are irreparable *per se*. (*Id.* at 9.) First, Rutgers is "coercing her to reverse the decision she made in the exercise of her right to informed consent and to refuse unwanted medical treatment." (*Id.*) Second, Rutgers is "blocking her from her account and from taking her class solely because she exercised these rights and chose not to vaccinate for COVID-19." (*Id.* at 9-10.)

With respect to harms to Defendants, Plaintiffs assert that Rutgers will not be injured by an injunctive order requiring it to follow its own Policy to exempt from its vaccination requirement those students who are fully remote. (*Id*. at 10.) These students will not impact Rutgers' purported health and safety concerns because they do not need to physically come to campus for coursework. (*Id.*)

As to public interest, Plaintiffs cite the public's general interests in safeguarding constitutional rights and in requiring public institutions to adhere to their own stated policies. More narrowly, Plaintiffs contend that there is a strong public interest in ensuring that mandates concerning COVID-19 are appropriately related to the purported health and safety interests that motivate them. (*Id.* at 10–11.) Narrower still, Plaintiffs argue that the public has a vested interest in protecting students who decide to be "fully remote," from Rutgers' arbitrary and irrational attempts to force them to take the vaccine. (*Id.* at 11–12.)

### B. Defendants' Opposition

Unsurprisingly, Defendants say that Ms. Pinto cannot demonstrate her claims are likely to succeed on the merits. First, they argue her facial challenge to the Policy is precluded by *Jacobson*, whose central principle of deference to vaccine mandates has remained undisturbed by the Supreme Court despite being referenced on multiple occasions since the inception of the COVID-19 pandemic. (Opposition Brief at 12–14.) Defendants point out that similar suits challenging vaccine mandates have failed in various district courts around the country. (*Id*. at 15.) Moreover, the Policy in this case is more likely to survive a constitutional challenge because it provides for religious and medical exemptions. (*Id.* at 13 (citing *Klaasen v. Trustees of Ind. Univ.*, 7 F.4th 592 (7th Cir. 2021)). And Rutgers has the added benefit of "express statutory authority to add COVID-19 vaccines to its required immunization list." (*Id.*) Defendants fault Plaintiffs for failing to

appreciate that the right to refuse medical treatment is not absolute and must yield to the public interest in protecting the public from a deadly virus through vaccination. (*Id.* at 19.) The cases that Plaintiffs rely on involve other types of medical treatment rather than vaccines. Still, the courts in those cases recognized, either implicitly or explicitly, that there is no absolute constitutional right to refuse medical treatment. (*Id.* at 19–21.)

Second, Defendants contend that any challenge to the constitutionality of the Policy as applied to Ms. Pinto should also fail. (*Id.* at 22.) Ms. Pinto claims to have "struggled with her health" but has not elaborated and she admits that she has not applied for a medical exemption. (*Id.*) Defendants likewise reject her claims that she may be naturally immune to COVID-19 because there is currently no recognized mechanism for verifying a natural immunity. (*Id*. at 22-23.) Ms. Pinto's election of a class that is meeting remotely and her attestation that she will not physically come to campus do not qualify her an exception as a remote student. (*Id.* at 23.) That exemption is for students enrolled in a fully online degree program. (*Id.*) Those students are not issued student identifications, are not expected to appear on campus, and could not access restricted areas of the campus even if they wished to appear. (*Id.*)

From Defendants' perspective, Plaintiffs are demanding that Rutgers create, oversee, and manage a new category of students: ones who are fully matriculated, have all the privileges of in-person students, but who have promised not to visit campus and have registered for classes that happen to be meeting remotely at the time. (*Id*. at 24.) Rutgers says it has no means to police such a group of students. (*Id.*) Even if it did, it has no way to guarantee that the remote classes would remain remote because that decision is vested with the individual professors teaching such classes rather than the administration. (*Id.*) The professors may return to in-person classes or require

students to do work that can only be done on campus or require students to work on group projects. (*Id.*)

Defendants argue that Ms. Pinto cannot establish that she will suffer irreparable harm because she delayed before seeking relief. (*Id.* at 25.) Ms. Pinto knew for five months that she could not take Fall 2021 classes without complying with the vaccination requirements yet did not seek an injunction until two days before classes began on August 30, 2021. (*Id.*) Defendants also says Ms. Pinto's claim to being ready to graduate if she completes one class this Fall semester is untrue. In addition to the class this semester, her degree requires a three-credit 400 level course that she has not completed. Thus, Ms. Pinto is still required to "return to Rutgers" to complete some remaining credits before she can be conferred her degree in psychology. (*Id.* at 26-27.)

With respect to balance of the harms and the public interest, Defendants rely upon the public interest in leaving policymaking to the states and their institutions. (*Id.* at 27.) Further, they contend that the "public interest here favors protecting as many people as possible from contracting a serious case of a potentially deadly illness." (*Id.* at 28.) Defendants conclude here that Plaintiffs' refusal to be vaccinated not only harms themselves but possibly harms other students, faculty, and staff. (*Id.* at 29.)

**C. Plaintiffs' Reply**

Plaintiffs begin their reply by reiterating that Ms. Pinto faces irreparable harm because her right to informed consent and to refuse unwanted medical treatment under the Due Process Clause was chilled by the Policy. (Reply at 5.) They also deny that there was delay on their part. (*Id.*) They claim Rutgers was to blame by allowing Ms. Pinto to register for her class without uploading vaccination documentation and waiting until August 26 to block her account, long after the final

August 18 deadline for her to submit proof of vaccination. (*Id.*) By failing to act, Plaintiffs say Rutgers confirmed her belief that she could register for an online class. (*Id.*)

Next, Plaintiffs maintain they are likely to succeed on the merits. (*Id.*) They contend that Defendants misinterpret *Jacobson*. (*Id.* at 6.) *Jacobson* requires that the statute regulation be reasonable and necessary, and Defendants fail to offer any "explanation why its mandate upon a fully remote student – as opposed to all other students – is reasonable or necessary." (*Id.* at 5-6.) Here, Plaintiffs insist the Policy is neither reasonable or necessary because Ms. Pinto is not on campus and cannot transmit the virus, nor proportional because unvaccinated professors and students are permitted to teach and attend classes indoors. (*Id.* at 6.)

Plaintiffs assert that the cases Defendants cite are all distinguishable because none of the injunctions sought in those cases concern a mandate on a remote student. (*Id.* at 6–7.) Plaintiffs contend that under *Jacobson*, the Policy here does not have a real and substantial relation to Rutgers' purported goals because they argue Ms. Pinto is "a person sitting at home on a computer, miles away from campus" and "is not a threat to other students." (*Id.* at 8.) Therefore, "it is extreme to keep Ms. Pinto from completing her course work at Rutgers based upon the implausible threat of infecting other students." (*Id.*) Plaintiffs further argue that the Policy is discriminatory because it treats Ms. Pinto differently from unvaccinated professors, staff, students, and members of the public they claim are routinely allowed on campus. (*Id.*) Plaintiffs also argue at length that the Defendants lack the authority to mandate the Policy.[2] (*Id.* at 8–13.)

---

[2] Plaintiffs raise on Reply for the first time that Rutgers lacks the statutory and legal authority to mandate a COVID-19 vaccine. This is improper and the Court will ignore these arguments. *See, e.g., Judge v. United States*, 119 F.Supp.3d 270, 284 (D.N.J. 2015) (a moving party may not raise new issues in reply brief that it should have raised in its initial brief). Incredibly, Plaintiffs' omission was not an oversight, it was calculated. They say they did not address the provisions earlier because they disagree that the statutes and regulations cited by Rutgers convey the authority it claims and "this Court should not be persuaded by a cryptic 30+ year old regulation" to the contrary. (Reply at 9–10.)

7

### III.    LEGAL STANDARD

Rule 65 governs temporary restraining orders and preliminary injunctions. Fed. R. Civ. P. 65; *Vuitton v. White*, 945 F.2d 569, 573 (3d Cir. 1991). A restraining order loses its temporary status and becomes a preliminary injunction if it continues beyond a ten-day limit. *Id.* (citing *Sims v. Greene*, 160 F.2d 512, 517 (3d Cir. 1947)). Courts "will look beyond terminology to the actual content, purport, and effect of that which may otherwise described as a temporary restraining order or as a preliminary injunction." *In re Arthur Treacher's Franchise Litig.*, 689 F.2d 1150, 1155 n.7 (3d Cir. 1982).

"Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms, Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merk Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002). As the Court emphasizes, "there is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing [of] an injunction." *FM 103.1, Inc. v. Universal Broad.*, 929 F. Supp. 187, 193 (D.N.J. 1996) (citing *E.B. v. Poritz*, 914 F. Supp. 85, 90 (D.N.J. 1996)). A Court should only issue an injunction "if the plaintiff produces evidence sufficient to convince the district court that *all four factors* favor preliminary relief." *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1427 (3d Cir. 1994) (emphasis added). Further, it is within "the sound discretion of the district judge" to balance all of these factors "in making a decision." *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982).

A party seeking a preliminary injunction must satisfy the traditional four-factor test: (1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the

public interest favors such relief. *Child Evangelism Fellowship of N.J. Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 524 (3d Cir. 2004). Of the four requirements, this Circuit has placed significant weight "on the probability of irreparable harm and the likelihood of success on the merits" factors. *FM 103.1, Inc.*, 929 F. Supp. at 193. "A likelihood of success on the merits requires 'a showing significantly better than negligible but not necessarily more likely than not.'" *Durel B. v. Decker*, 455 F. Supp. 3d 99, 106 (D.N.J. 2020). The strength of a claim "depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief.'" *Id.* (quoting *Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009)).

## IV. <u>DISCUSSION</u>

After a careful review of the parties' submissions and relevant case law, this Court concludes that Plaintiffs have not met their burden to warrant the imposition of an injunction.[3]

### A. Likelihood of Success on the Merits

Given the United States Supreme Court's decision in *Jacobson*, and persuasive authorities from other circuits on this issue, the Court concludes that Plaintiffs have not met their burden that they are likely to succeed on the merits. In *Jacobson v. Massachusetts*, a state statute was challenged that required all Massachusetts residents to be vaccinated or face a fine or imprisonment. 197 U.S. 11, 26. The defendant, an unvaccinated resident criminally charged with violating the statute, argued that the law was "unreasonable, arbitrary, and oppressive" and therefore violated his constitutionally protected liberty interest. *Id.* The Court reasoned that the

---

[3] The Court notes that Plaintiffs' original motion sought an emergent temporary restraining order. Time has passed since the initial filing because Plaintiffs elected to set aside this motion in favor of pursuing a motion to recuse the undersigned. More importantly, Plaintiffs have also expanded the relief they seek. They now request that the Court order Rutgers to permit Ms. Pinto to register for classes for the Spring 2022 semester. (Reply at 15.) Accordingly, the Court views the Motion as one seeking a preliminary injunction rather than a temporary restraining order. The analysis does not differ.

9

Constitution does not convey an absolute right in every person to be "wholly freed from restraint." *Id.* It was not for the courts to decide what was "likely to be effective for the protection of the public against disease." *Id.* at 30. That was for the legislature to determine, given all the information "it had or could obtain." *Id.* The Court applied a deferential standard and asserted that it would only find a statute unconstitutional if it purported to protect public health, safety, and morals but did not, or if it did not have any "real or substantial relation" to protecting public health. *Id.* at 31. The Court then concluded that the Massachusetts statute was not unconstitutional because it did have a real and substantial relation to protecting public health and safety, given the spread of smallpox in many states. *Id.* at 31–32.

Here, although Plaintiffs have rights to informed consent and to refuse unwanted medical treatment, as *Jacobson* explained, these rights are not absolute. *Jacobson* 197 U.S. at 26. Second, like *Jacobson*, it is for the legislature not the Courts to determine what modes of protection would likely be effective against the vaccine. Third, given the severity and number of cases and deaths during the COVID-19 pandemic so far, there is a real and substantial relation between the Policy and the need to protect public health. Last, as the *Jacobson* Court noted then, other states and countries in Europe have likewise enacted similar vaccine policies giving more legitimacy to the Policy at issue. Therefore, based on *Jacobson*, Plaintiffs are not likely to succeed on the merits.

This Court also finds Plaintiffs' attempt to distinguish *Jacobson* unpersuasive. The statute in *Jacobson* was even more stringent than Rutgers' Policy, providing easier grounds for this Court to deny injunctive relief. First, unlike the statute in *Jacobson*, there is no penalty for failure to comply with the Policy. In fact, Plaintiffs concede this very point in their Motion stating, "[a]dditionally, there is no penalty or sanction provision expressed in the Policy for a student's failure to submit evidence of COVID-19 immunization." (Plaintiffs' Memorandum at 3.) Second,

the Policy provides exemptions unlike the one in *Jacobson*; another point Plaintiffs concede in their Motion. (*See* Couns. Decl. Ex. A., ECF No. 10-3) (appending the Rutgers' policy discussing exceptions and exemptions from the vaccine requirements.). Finally, like *Jacobson*, there is a public health rationale via the ongoing COVID-19 disease that provides grounds for the Policy.

As Defendants point out, other courts have addressed vaccine mandates or policies and have ruled similar challenges also fail. In *Klaassen v. Trustees of Indiana Univ.*, the Seventh Circuit rejected a similar challenge to Indiana University's vaccination policy brought by some of its students. 7 F.4th 592, 594 (7th Cir. 2021). In that case, eight students from Indiana University challenged the university's policy requiring that "all students . . . must be vaccinated against COVID-19 unless they [were] exempt for religious or medical reasons." *Id.* at 592. The court rejected the plaintiffs' challenge to the law, holding that "this case is easier than *Jacobson* for the University." *Id.* at 593. The court explained that unlike in *Jacobson*, the university's policy had both religious and medical exceptions. *Id.* Further, the court explained that "Indiana does not require every adult member of the public to be vaccinated, as Massachusetts did in *Jacobson*." *Id.* The Court also added that those who do not wish to be vaccinated "may go elsewhere" and seek other educational opportunities. *Id.* The Court concluded that "[i]f conditions of higher education may include surrendering property and following instructions about what to read and write, it is hard to see a greater problem with medical conditions that help all students remain safe when learning." *Id.* at 594.

*Harris v. Univ. of Massachusetts, Lowell* is another example where a court denied Plaintiff's motion for injunctive relief which sought to prevent University of Massachusetts from enforcing vaccine requirements prior to the Fall semester. Civ. No. 21-11244, 2021 WL 3848012, at *8 (D. Mass. Aug. 27, 2021). In that case, UMass imposed vaccine requirements for students

11

seeking to be on campus during the fall semester. *Id.* at *2. Two students, one who sought exemptions and the other who did not, brought the suit alleging that by failing to be vaccinated they faced expulsion. *Id.* The court disagreed and held that the plaintiffs were not likely to succeed on the merits because it rejected their claim that the university vaccine policy left them without an option. *Id.* at *5. The UMass policy only "prohibited [students] from in-person classes, dormitories and other activities" and still allowed them to be "enrolled and . . . still take classes." *Id.* The Court further added that the policy was "generally applicable to all students and formulated prospectively toward the fall semester." *Id.* The Court found that rational basis review applied because protecting the public health and safety vis-à-vis curbing the spread of COVID-19 was a rational government interest. *Id.* at *6. The Policy was rationally related because UMass "based the decision upon both medical and scientific evidence and research." *Id. See also Norris v. Stanley*, Civ. No. 21-756, 2021 WL 3891615 (W.D. Mich. Aug. 31, 2021) (denying an employees' petition for injunctive relief against Michigan State University's COVID-19 vaccine mandate given the United States Supreme Court's decision in *Jacobson* and other persuasive authorities, Plaintiff's failure to demonstrate that she has a constitutionally protected property interest in her employment, and Plaintiff's inability to show the vaccine policy was not rationally related to a legitimate government interest.).

Plaintiffs are understandably eager to distinguish Ms. Pinto's particular case by self-applying the label of "fully remote student" and contending that her decision not to be vaccinated therefore cannot pose a risk to students on campus. But Rutgers defines what constitutes a fully remote student, not Ms. Pinto, and she does not meet Rutgers' definition. She is not a fully remote student within the context of the Rutgers system. The class she registered for is not an officially remote one and therefore Plaintiffs cannot show a distinction. Plaintiffs appear to believe that Ms.

12

Pinto's self-proclaimed "remote" status entitles her to not comply with the Policy. However, her words alone—that she will not physically be on campus—do not persuade the Court that she will be fully remote, nor do they prevent Ms. Pinto from coming on campus. Here, Ms. Pinto's promise is insufficient and leaves Defendants with no mechanism for enforcement if she decides to appear on campus.

### B. Irreparable Harm to the Moving Party

Further, this Court is not persuaded Plaintiffs will suffer irreparable harm or injury if a preliminary injunction is not granted. Here, though Plaintiffs contend they will suffer irreparable harm if injunctive relief is not granted, any purported harm Plaintiffs may face is of their delay. On March 25, 2021, the Policy was announced requiring all students to comply with Rutgers' vaccination requirements. On April 13, 2021, the Policy was adopted. On July 23, 2021, Plaintiffs' lawyer submitted a letter with the Court arguing that the mandate had no exceptions. On August 30, 2021, two days before classes began, Plaintiffs sought injunctive relief. The Court lists these dates to highlight that Plaintiffs had ample opportunity to seek injunctive relief, given their advance notice of the Policy. Plaintiffs could have sought a preliminary injunction several months and weeks before the semester began rather than days before. However, Plaintiffs failed to do so.

Courts have expressed "a Plaintiffs delay in seeking preliminary injunctive relief" shows "evidence that speedy relief is not needed." *EMSL Analytical, Inc. v. Testamerica Analytical Testing Corp.*, No. 05-5259, 2006 WL 892718, at *12 (D.N.J. Apr. 4, 2006); *Lanin v. Borough of Tenafly*, No. 12-3399, 2013 WL 936363, at *3 (3d Cir. Mar. 12, 2013) ("Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights . . . [and] [d]elay[s] in seeking enforcement of those rights . . . tends to indicate at

least a reduced need for such drastic, speedy action.") (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir.1985)) (internal citations omitted).

Here, Plaintiffs waited five months after Rutgers announced the Policy to seek relief for injunctive relief.  The Court finds that this delay created a self-inflicted harm that Plaintiffs suffer and therefore it cannot grant injunctive relief. Further, even if this Court were to grant injunctive relief, such a remedy is moot given Ms. Pinto's initial and mistaken belief that she only required the one class at issue to graduate. Upon Defendants' assertion, Ms. Pinto now concedes that she would be required to return to Rutgers in the Spring or another semester in order to complete her degree.  Ms. Pinto will not suffer irreparable harm when such a harm is self-inflicted by her delay in seeking relief and that even if she were allowed to attend the class at issue, she would not have accrued enough credits to graduate.

### C. Harm to the Non-moving Party

Plaintiffs asserted that Defendants will not be injured by an injunctive order requiring it to follow its own Policy to exempt from its vaccination requirement those students who are fully remote.  They contended that these students' decisions will not impact Defendants' purported health and safety concerns because they do not need to physically come to campus for coursework. However, the Court finds it is reasonable that Defendants may suffer administrative harm if an injunctive relief were granted.  Defendants would be required to develop and adopt policies and make new procedures to accommodate Plaintiffs' whenever they were on campus. These policies may require the following: (1) prior notice anytime any of the Plaintiffs appear on campus, (2) physical safety accommodations for others in the Rutgers' community while also accommodating the unvaccinated students, and (3) maintenance and safety measures in every room and building

the unvaccinated students appeared. The Court certainly finds these measures may be harmful to Defendants in time, costs, and efforts.

### D. Public Interest

The Court concludes that Plaintiffs also cannot show the public interest is served if it were to grant injunctive relief. In fact, the public may likely be harmed if the Court were to do so. Specifically, it would place the health and safety of others inside and out of Rutgers' community at risk. The public interest of preventing COVID-19, a virus that has taken the lives of many New Jersey residents will not be served if this Court were to bar Rutgers from enforcing the Policy. As the Court in *Klassen* noted, "[e]nabling . . . this state university to work through these problems reasonably fosters public health and safety in areas of scientific uncertainty." *See Klaassen*, 2021 WL 3073926, at *43 (citing *Gonzales v. Carhart*, 550 U.S. 124, 163 (2007)); *Harris*, 2021 WL 3848012, at *8 (noting there was a "strong public interest" in "preventing further spread of COVID-19 on campus, a virus which has infected and take the lives of thousands of Massachusetts residents.") Further, given that many students around campuses are returning to in-person classes this semester and the considerable size of Rutgers' student population, were this Court to grant injunctive relief, thousands of students may possibly be at risk. Therefore, this Court finds that there is a strong public interest against granting injunctive relief.

### V. CONCLUSION

For the reasons set forth above, the Court finds that Plaintiffs have not shown that a preliminary injunction is warranted in this case. Plaintiffs' motion will therefore be denied. An appropriate order will follow.

s/ Zahid N Quraishi
ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE
