Julio C. Gomez, Esq.
GOMEZ LLC ATTORNEY AT LAW
1451 Cooper Road
Scotch Plains, NJ 07076
Tel 908.789.1080
Fax 908.789.1081
*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE, INC., PETER CORDI, RAELYNNE MILLER, KAYLA MATEO, ADRIANA PINTO, JAKE BOTHE, AND DOES 1-13, <br><br> *Plaintiffs*, <br><br> -against- <br><br> RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY, BOARD OF GOVERNORS, RUTGERS SCHOOL OF BIOMEDICAL AND HEALTH SCIENCES, CHANCELLOR BRIAN L. STROM, PRESIDENT JONATHAN HOLLOWAY, in their official capacities. <br><br> *Defendants* | Case No. 3:21-cv-15333 (ZNQ-TJB) |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION REQUIRING PLAINTIFFS TO COMPLY WITH FED. R. CIV. P. 10(a) AND APPEAR PUBLICLY IN THIS ACTION

TABLE OF CONTENTS

TABLE OF AUTHORITIES…...……………………………………………..ii

STATEMENT OF FACTS …………………………………...…...…………1

ARGUMENT …………………………………………………………………8

I.  PLAINTIFFS SATISFY THE REQUIREMENTS TO APPEAR BY
    PSEUDONYM IN THIS CASE...………………………………...……..8

II.  THE FACTORS DISFAVORING ANONIMITY DO NOT DISQUALIFY
     THE DOE PLAINTIFFS FROM PROCEEDING ANONYMOUSLY
     …………………………………………………………………………...15

CONCLUSION …………….…………………………………………………..17

## <u>TABLE OF AUTHORITIES</u>

Cases

*Doe v. Megless*,
654 F.3d 404, 408 (3d Cir. 2011) ……………………………………………….8, 9

*Doe v. Rider University*,
Civ. No. 16-4882, 2018 WL 3756950, (D.N.J. May 18, 2021) …………………12

*L.A. v. Hoffman*,
Civ. No. 14-6985, 2015 WL 4461852 (D.N.J. July 21, 2015) ………………12, 13

*Smith v. United States Office of Personnel Management*,
Civ. No. 2:13-cv-5235, 2014 WL 12768838 (E.D. Pa. Jan. 21, 2014) ……………9

*Freedom From Religion Foundation, Inc. v. New Kensington-Arnold School District*, Civ. No. 2:12-cv-1319, 2012 WL 6629643 (W.D. Pa. 2012) …………..15

Plaintiff Children's Health Defense, Inc. ("CHD") and Doe Plaintiffs 2, 3, 6, 7, 9, and 13,[1] through their undersigned attorney, hereby respond to Defendants' motion for an Order compelling them comply with Fed. R. Civ. P. 10(a) and to appear publicly in this action, not by way of pseudonym.  For the reasons that follow, Plaintiffs respectfully request this Court deny Defendants' motion.

## STATEMENT OF FACTS

Defendants' motion appears written in a vacuum that ignores completely the public discourse that blames, without scientific proof, the unvaccinated for current rates of COVID-19.  That discourse includes violence, intimidation and ostracism:

- MSNBC guest Frank Schaeffer stating that those who are "anti-vaccine" are "bio terrorists" who should be the target of "Drone strikes."[2]

- Mayor de Blasio, announcing his "vaccine passport" for New York City, declared that "If you want to participate in our society fully, you've got to get vaccinated."[3]

- On ABC News, commentator Margaret Hoover declared that government, by withholding all benefits from the unvaccinated, should "just make it

---

[1] To avoid any risk of disclosure of their identity Plaintiff Does 1, 4, 5, and 10 are voluntarily withdrawing from this lawsuit; their withdrawal shall be noted in Plaintiffs' First Amended Complaint; Plaintiff Does 8 and 11 have decided to appear publicly and shall be named in Plaintiffs' First Amended Complaint.

[2] *See https://www.breitbart.com/politics/2021/09/10/msnbc-guest-calls-drone-strikes-americans-opposed-vaccine-mandates/*

[3] *See https://twitter.com/nycmayor/status/1422568446001287171?lang=en ; compare with* Letter from New York State Assembly Members calling for alternatives to mandates https://www.scribd.com/document/523955400/COVID-Vaccination-Letter#from_embed

almost impossible for people to—to live their lives without being protected and protecting the rest of us."[4]

- On CNN, commentator Don Lemon stated to Chris Cuomo that "[If ou] don't get the vaccine, you can't go to the supermarket. Don't have the vaccine, can't go to the ball game. Don't have a vaccine, can't go to work. You don't have a vaccine, can't come here. No shirt, no shoes, no service."[5]

- On his late night "comedy" show Jimmy Kimmel stated that the unvaccinated who contract COVID should be allowed to die rather than being admitted to the hospital: "Rest in peace, wheezy."[6]

- In The Week, Ryan Cooper declared that "Anti-vaxxers" (i.e. people who decline the COVID vaccines) "should be exiled from society until they get their shots, and their efforts to intimidate people against controlling the pandemic should be met with massive resistance."[7]

Other outlets are engaged in a blame game against the unvaccinated:

- AMA Calls for Vaccine Mandates; 'Blame the Unvaccinated Folks'; Colo. Plague Death.[8]

- "It's OK to blame the unvaccinated – they are robbing the rest of us of our freedoms."[9]

---

[4] *See* https://www.yahoo.com/now/vaccine-mandatory-those-receiving-government-184100345.html

[5] *See* https://thefederalist.com/2021/07/27/cnns-don-lemon-says-dont-get-the-vaccine-no-supermarket-work-ball-game-or-freedom/

[6] *See* https://www.cbsnews.com/news/jimmy-kimmel-ivermectin-covid-19-pandemic-hospitals/

[7] *See* https://theweek.com/politics/1003600/anti-vaxxers-coddling

[8] *See* Shannon Firth, *AMA Calls for Vaccine Mandates; 'Blame the Unvaccinated Folks'; Colo. Plague Death*, MEDPAGE TODAY (July 26, 2021) available at https://www.medpagetoday.com/infectiousdisease/covid19/93746

- "In our view: Unvaccinated to Blame for Covid Surge"[10]

- Editorial: Bring on the crackdown.   The unvaccinated must be held accountable[11]

- The Anger Toward Unvaccinated People Is Personal for Some Who Got Breakthrough Covid.[12]

The discourse attacking the unvaccinated even includes statements by the President of the United States, in which he pivoted from a war on the coronavirus to a war on the unvaccinated with the following remarks about the unvaccinated: they are not "doing the right thing."  They are "keeping us from turning the corner."  They are "blocking public health." "The refusal [of the unvaccinated] has cost all of us,"

---

[9]  *See* Amanda Marcote, *It's OK to Blame the Unvaccinated – They are Robbing Us of Our Freedoms*, Salon (August 12, 2021), available at https://www.salon.com/2021/08/12/its-ok-to-blame-the-unvaccinated--they-are-robbing-the-rest-of-us-of-our-freedoms/

[10] *See* Editorial, *In Our View: Unvaccinated to Blame for Covid Surge*, The Columbian (August 17, 2021) available at https://www.columbian.com/news/2021/aug/17/in-our-view-unvaccinated-to-blame-for-virus-surge/

[11] *See* Editorial, Bring Down the Crackdown, The Unvaccinated Must Be Held Accountable, Los Angeles Times (July 29, 2021) available at https://www.latimes.com/opinion/story/2021-07-29/editorial-bring-on-the-crackdown-the-unvaccinated-must-be-held-accountable

[12] *See* Jackie Fortier on All Things Considered, NPR (National Public Radio) (August 13, 2021, broadcast) available at https://www.npr.org/2021/08/13/1027537422/the-anger-toward-unvaccinated-people-is-personal-for-some-who-got-breakthrough-c

Biden said.[13]  Addressing approximately 80 million Americans who have refused the vaccine, the President said, as if speaking to unruly children, "our patience is wearing thin."  He went further still, empathizing with the anger and anxiety of those who've been vaccinated and thus presumably protected. He threatened, "We cannot let the unvaccinated undo this progress," although he muddled the words in delivery.  Biden also took a potshot at dissenting doctors, suggesting they are "conspiracy theorists," not "real doctors." His comments echoed the calls of others, including the Federation of State Medical Boards, to take away the medical licenses of doctors who dare to raise questions about vaccine safety.[14]

Indeed, the catchphrase, "Pandemic of the Unvaccinated" was dominating the social discourse on the evening news this past summer when Plaintiffs filed this action.[15]  A simple Google search of the phrase unearths a litany of articles acknowledging the prevalence of this idea in the public consciousness.  When this action was filed, the majority of the student Plaintiffs appeared by pseudonym

---

[13] *See* Mary Holland, *Children's Health Defense Responds to Bidens' "Declaration of War Against the Unvaccinated",* The Defender (September 13, 2021), available at https://childrenshealthdefense.org/defender/mary-holland-chd-bidens-war-against-unvaccinated/

[14] *Id.*

[15] *See* Ricardo Alonso-Zaldivar, *Questioning a Catchphrase: 'Pandemic of the Unvaccinated,'* ABCNews (September 1, 2021) available at https://abcnews.go.com/Health/wireStory/sound-bite-reexamined-pandemic-unvaccinated-79760265

because they feared ostracism and retaliation by Rutgers, the faculty, the student body, the media and the public.   Verified Complaint ¶ 12 (Dkt. 1).   There is nothing speculative about these students' fears in light of the prevailing social discourse.   Indeed, when this matter was filed, and Rutgers' student newspaper, *The Daily Targum*, published an article reporting upon the lawsuit, its Instagram page published social media comments that included ridicule and derision of some of the Plaintiffs in this case.[16]

In Plaintiffs' First Amended Complaint (to be filed tomorrow) Doe Plaintiffs 2, 3, 6, 7, 9, and 13 shall aver as follows:

**Doe 2:**

Doe 2 brings claims anonymously because Doe 2 fears retaliation by Rutgers and dismissal from Rutgers if Doe 2's identity as a plaintiff is revealed; Doe 2 fears harassment by other students, professors or the public and from social media; Doe 2 fears physical attacks; Doe 2 fears the loss of friends and acquaintances; Doe 2 fears jeopardizing Doe 2's prospects to gain admission into graduate-degree programs; and Doe 2 fears consequences to Doe 2's career prospects.   Doe 2 possesses these fears because Doe 2 has read about such treatment of the unvaccinated around country and around the world; reactions of government, the media, unions and Rutgers have created a polarized environment pitting the vaccinated against the unvaccinated and accusing the unvaccinated of spreading disease and prolonging the pandemic; in Doe 2's view proponents of vaccines are so angry and irrational they have resorted to hostility and violence against the unvaccinated; Rutgers' own propaganda to coerce vaccination included statements that it was "our shared responsibility" to vaccinate, disregarding personal freedom, informed consent, medical

---

[16] *See* https://www.instagram.com/p/CS2BXnftqVN/?utm_medium=copy_link

freedom and freedom of thought.  Doe 2 shall withdraw from this lawsuit if not permitted to proceed anonymously.  First Amended Comlaint ¶ 19.

**Doe 3:**

Doe 3 brings claims anonymously because Doe 3 fears that if Doe 3's identity becomes public Doe 3 will be discriminated against including but not limited to being pressured personally to take the vaccine, jeopardizing Doe 3's religious exemption, jeopardizing Doe 3's ability to attend classes at Rutgers, jeopardizing equal treatment in grading and course assignments from professors, jeopardizing Doe 3's prospects of gaining admission to graduate-degree programs and future employment opportunities with Rutgers.  Aside from routine Covid testing, Doe 3 attributes the lack of any overt discrimination or bullying to having proceeded in this matter anonymously.  If Rutgers decides that vaccinated students do not have to mask, Doe 3 fears reprisals since masking will out his vaccination status on campus.  Doe 3 shall withdraw from this lawsuit if not permitted to proceed anonymously.  First Amended Complaint, ¶ 20.

**Doe 6:**

Doe 6 brings claims anonymously because Doe 6 fears reprisals and discrimination if Doe 6's identity is revealed; Doe 6 attributes the lack of any such treatment to Doe 6's refusal to discuss vaccination status with her peers; Doe 6 would like to complete her studies at Rutgers without the risk or threat of a professor or student treating Doe 6 differently because of Doe 6's religious and medical beliefs; Doe 6 has no doubt that if Doe 6's identity is revealed, Doe 6 will be treated differently; Doe 6 has overheard students and professors at Rutgers blame the unvaccinated for spikes in COVID-19 rates and prolonging the pandemic; the unvaccinated are mistreated and shamed publicly on television networks, social media and barred from places of public accommodation (e.g. restaurants, performance venues, etc.); the unvaccinated are vilified for not doing their part, for lacking intelligence or common sense; government and media actively encourage the vaccinated to pressure and coerce the unvaccinated by discriminating against them; Doe 6 also wishes to preserve the option

of applying to a graduate degree program at Rutgers and does not wish to jeopardize that prospect.  First Amended Complaint ¶ 23.

**Doe 7:**

Doe 7 brings claims anonymously because Doe 7 fears that Rutgers faculty and students will not take kindly to dissent based on Doe 7's observations of their discussions of COVID, the vaccines, and masking requirements which are critical of anyone who does not comply.  Doe 7 keeps a low profile on campus to avoid unnecessary and fruitless conflict.  Given the prominence of cancel culture Doe 7 would refuses to "come out" as having non-politically correct opinions.  Doe 7 fears the emotional stress that would ensue if it were generally known that Doe 7 is not vaccinated and suing Rutgers would interfere with Doe 7's academic studies and graduation schedule.  First Amended Complaint ¶ 24.

**Doe 9:**

Doe 9 brings claims anonymously because Doe 9 plans to apply for admission to a PhD program next year, at Rutgers and other universities and fears jeopardizing admission into such programs. First Amended Complaint ¶ 26.

**Doe 13:**

Doe 13 brings claims anonymously because Doe 13 is fearful of retaliation from other students or Rutgers staff after seeing numerous comments on social media since this lawsuit was filed; Doe 13 has seen reports of people threatening to harm the unvaccinated and is reluctant to press forward with Doe 13's claims publicly because Doe 13 is a freshman living off-campus; additionally, there is a possibility that Doe 13 may pursue a graduate-degree program at Rutgers and does not want to jeopardize her prospects for admission. Doe 13 shall withdraw from this lawsuit if not permitted to proceed anonymously. First Amended Complaint ¶ 30.

These students' fears, must be measured against the backdrop of a social discourse that vilifies and blames them for exercising their right to informed consent and religious freedom to refuse a vaccine whose safety and efficacy has not been fully tested and understood, and which has reportedly caused more than 700,000 adverse event and 16,000+ deaths reported on VAERS.[17]  Their fears must also take into account the fact that their status as vaccinated or unvaccinated is a confidential medical matter that is not subject to general public disclosure.

## ARGUMENT

## I.  PLAINTIFFS SATISFY THE REQUIREMENTS TO APPEAR BY PSEUDONYM IN THIS CASE.

To appear in this action by pseudonym, Doe Plaintiffs must show "both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable."  *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011).  In *Megless*, the Third Circuit set forth a multi-factor balancing test for courts to assess whether "a litigant's reasonable fear of severe harm outweighs the public's interest in open-judicial proceedings." That balancing test includes six factors in favor of anonymity:

1. The extent to which the identity of the litigant has been kept confidential;

---

[17] *See* Megan Redshaw, *2 More Teen Deaths Reported to VAERS, As FDA Panel Recommends Moderna and J&J Booster Shots,* The Defender (October 15, 2021) available at https://childrenshealthdefense.org/defender/vaers-cdc-covid-vaccine-injuries-deaths-fda-booster-shots/

2. The bases upon which disclosure is feared or sought to be avoided, and the substantiality of those bases;

3. The magnitude of the public interest in maintaining confidentiality of the litigant's identity;

4. Whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities;

5. The undesireability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified;

6. Whether the party seeking to sue pseudonymously has illegitimate, ulterior motives.

*Megless*, 654 F.3d at 409. "On the other side of the scale, factors disfavoring anonymity include:

1. The universal level of public interest in access to the identities of the litigants;

2. Whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and

3. Whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated."

*Id.* Additionally, *Megless* cautions that this is not a "comprehensive" list and that trial courts "will always be required to consider those [other] factors which the facts of the particular case implicates." *Id.; see also Smith v. United States Office of Personnel Management*, Civ. No. 2:13-cv-5235, 2014 WL 12768838 (E.D. Pa.

Jan. 21, 2014) (holding that plaintiff could proceed anonymously because he has "reasonable fears about the status of his current and future job prospects").

Applying these factors to the instant case, the balance tips in favor of anonymity.

1. *The extent to which the identity of the litigant has been kept confidential*

The Doe plaintiffs have been kept confidential since the inception of this litigation.  The Doe plaintiffs have not been the subject of any motion practice or participated in any press reporting on this case when it was filed.  Doe plaintiffs were not interviewed by the media or participated in any publicity concerning the case.  Moreover, the Doe Plaintiffs have never disclosed to defendants who they are.  Granted, as students, the Doe Plaintiffs submitted and received religious exemptions from Rutgers, but they neither requested nor received those exemptions as litigants in this action.  "Courts have found that a litigant has made substantial efforts to maintain anonymity where that litigant has limited his disclosure of the sensitive information to few other people."  *Doe v. Rider University*, 2018 WL 3756950, Civ. No. 16-4882 (D.N.J. May 18, 2021) at *3.  In this case, this factor weighs in favor of anonymity.

2. *The bases upon which disclosure is feared or sought to be avoided, and the substantiality of those bases*

The Doe plaintiffs' principal concern is social ostracism and retaliation. All of the Doe plaintiffs are concerned about public perception; they fear discrimination and harassment if their identities are revealed; they fear retaliation and ridicule from professors and classmates. Students posted derogatory comments on the Rutgers student newspaper *Instagram* page when this case was filed;[18] the Doe plaintiffs fear the same ridicule on social media platforms they use, or on campus. These concerns are more than reasonable and justified given the hostility expressed against the unvaccinated in the media and in public discourse. Does 6 and 7 have overheard critical commentary about the unvaccinated on campus. As a result, some of the Doe plaintiffs are particularly concerned that they may be discriminated against in future graduate admissions or in future job prospects, particularly since the commentary at large and the result of increasing mandates is to coerce the unvaccinated by essentially excluding them from every place of employment, and every sector of public accommodation. When the mayor of New York city, Governors and even the President of the United States are publicly blaming the unvaccinated and condoning coercion and discrimination against the unvaccinated, it is easy to understand how students who have barely

---

[18] *See* https://www.instagram.com/p/CS2BXnftqVN/?utm_medium=copy_link

embarked on their careers are concerned about the ramifications of participating in

legal action to challenge disparate treatment.

3. *The magnitude of the public interest in maintaining confidentiality of the litigant's identity*

The public interest in maintaining confidentiality of the Doe's identities is

considerable.  Interpreting this factor, courts have held that:

> the public may have an interest in maintaining a litigant's
> confidentiality when the litigant belongs to a particularly vulnerable
> class, when the subject matter is highly personal, or when undesirable
> consequences will flow from revealing the identity of a litigant.

*Doe v. Rider University*, Civ. No. 16-4882, 2018 WL 3756950, (D.N.J. May 18,

2021).  In this case, Plaintiffs belong to a group that is being to a particularly

vulnerable class, a group that is being excoriated and vilified by the media,

organizations and even public figures who are not only condoning but encouraging

exclusionary treatment and social ostracism.  Moreover, the subject matter of this

case is highly personal: it involves medical decision-making and religious beliefs,

two of the most personal spheres in a person's life.  And given the divisiveness of

the public discourse, undesirable consequences will flow from revealing the

identities of these litigants because such treatment is not only condoned but

encouraged.  Consequently, this factor favors anonymity because the Doe Plaintiffs

satisfy each of the criteria for this factor.

> 4. *Whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities*

Factor 4 also weighs in favor of anonymity.  Many of the issues presented in this case are of a purely legal nature (e.g. whether Defendants' policy is preempted by federal law; whether Defendants' had legal authority to impose a vaccine mandate and other emergency-use authorized measures).  Since these issues are legal, largely constitutional, it matters not who brings them and the public interest in knowing the litigants' identities decreases.  *See L.A. v. Hoffman*, Civ. No. 14-6985, 2015 WL 4461852 (D.N.J. July 21, 2015) at *2 (holding plaintiff could proceed anonymously in part because plaintiff brought "constitutional challenge to a statute as it applies to a general class of people" and therefore "individual facts and circumstances were not of central importance").  Moreover, this factor carries even greater weight at the motion to dismiss stage when factual assertions are not at issue and Defendants will be seeking to dismiss Plaintiffs' claims on purely legal grounds.  If this case continues past a motion to dismiss, the Court can revisit the propriety of keeping pseudonyms in place or a protective order to limit dissemination of Plaintiffs' in order to conduct discovery.  However, for the time being, this factor weighs in favor of anonymity for now.

5.  *The undesireability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified*

In this case, several Doe Plaintiffs have withdrawn from the case for fear of public disclosure (e.g., Does 1, 4, 5, and 10); Does 2, 3, and 13 are prepared to also withdraw from this case if the Court does not permit them to proceed anonymously.  Evidently, Plaintiffs are deterred from bringing this action as a result of the social stigma associated with belonging to the group that is being held out publicly as singularly responsible for prolonging the most pervasive pandemic in modern history.  The refusal to bring claims for fear of public identification weighs in favor of anonymity here.

6.  *Whether the party seeking to sue pseudonymously has illegitimate, ulterior motives.*

There is no evidence, information or suggestion that any of the Doe plaintiffs have illegitimate ulterior motives.  The Doe plaintiffs are college students who find themselves embroiled in the most pressing social issue of this generation. They and their families are surrounded by mandates at every turn, from the educational institutions they attend, most workplaces, and even places of public accommodation (such as restaurants and public performance venues) which are off limits to the Doe plaintiffs under certain local mandates.  The Doe Plaintiffs have taken the unique and courageous step of filing legal action on the most divisive issue of the time at its zenith in the public consciousness.  No case cited by

14

Defendants can compare to the social backlash presently visited upon the unwelcomed class to which the Doe Plaintiffs belong.  As a result, all of the factors favoring anonymity weigh in favor of the Doe Plaintiffs in this case continuing in this case under a pseudonym.

## II. THE FACTORS DISFAVORING ANONIMITY DO NOT DISQUALIFY THE DOE PLAINTIFFS FROM PROCEEDING ANONYMOUSLY.

Additionally, the factors disfavoring anonymity have less weight in this case.  Certainly, there is a universal level of public interest in access to the identities of the litigants, but as stated, since the case deals primarily with legal issues, this factor is not as weighty as it normally would be.  Second, none of the Does are public figures, they are students, some only freshman, who are pursuing legal action alongside other students who have chosen to appear publicly.  As a result, there is no particularly strong interest in the public knowing who these particular Doe Plaintiffs are, beyond the fact that they are students enrolled at Rutgers.  Finally, there is no evidence or basis that opposition to the pseudonym by counsel or Defendants is illegitimately motivated, therefor this factor is neutral in this analysis.  Combined these factors are insufficient to tip the scales in favor of public disclosure.

This is not a situation where the Doe plaintiffs may simply suffer embarrassment or economic harm – embarrassment and economic harm are a

certainty in today's political climate – but more importantly, at stake, is exclusion from every sector of civil society, and being outcast in their classes, on campus and in their future academic and professional careers before those future prospects even begin to take shape.  If elected officials have no qualms about vilifying the unvaccinated in public discourse, what treatment can Plaintiffs reasonably expect to face if they are publicly outed in this case and in their classes?

In *Freedom From Religion Foundation, Inc. v. New Kensington-Arnold School District*, Civ. No. 2:12-cv-1319, 2012 WL 6629643 (W.D. Pa. 2012) at *1, the Court permitted Plaintiffs to proceed anonymously based in part on "Facebook pages, local news stories, email messages" which were the views of some members of the local community with regard to the lawsuit, containing "angered threats and crash rhetorical flourishes."  The statements that were persuasive in that case pale by comparison with the public statements against the unvaccinated that pervades the social discourse today. The climate in which the Doe Plaintiffs bring this action is bitterly hostile, divisive and dangerous.  This Court should not expose these Doe Plaintiffs to the risks of retaliation, ridicule and ostracism when public resentment is so great.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' motion to compel Doe Plaintiffs to appear publicly at this stage in the proceedings and comply with Fed. R. Civ. P. 10(a).

Respectfully submitted.

October 18, 2021

GOMEZ LLC
ATTORNEY AT LAW
By:  *s/ Julio C. Gomez*
      Julio C. Gomez, Esq.

1451 Cooper Road
Scotch Plains, NJ 07076
Tel 908.789.1080
Fax 908.789.1081
jgomez@gomezllc.com
*Attorney for Plaintiffs*