**FAEGRE DRINKER BIDDLE & REATH LLP**
Jeffrey S. Jacobson
Andrew B. Joseph
W. Joshua Lattimore
Jennifer P. Montan
600 Campus Drive
Florham Park, New Jersey 07932
(973) 549-7000
(973) 360-9831 (fax)
Jeffrey.Jacobson@faegredrinker.com
Andrew.Joseph@faegredrinker.com
Joshua.Lattimore@faegredrinker.com
Jennifer.Montan@faegredrinker.com
*Attorneys for Rutgers, The State University of New Jersey, et al.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHILDREN'S HEALTH DEFENSE, INC PETER CORDI, RAELYNNE MILLER, KAYLA MATEO, ADRIANA PINTO, JAKE BOTHE, ANTHONY LAMANCUSA, JESSICA MOORE, RYAN SANDOR, GIANNA CORALLO, AND RYAN FARRELL, AND DOES 2, 3, 6, 7, 9 AND 13,<br><br>Plaintiffs,<br><br>v.<br><br>RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY, BOARD OF GOVERNORS, RUTGERS SCHOOL OF BIOMEDICAL AND HEALTH SCIENCES, CHANCELLOR BRIAN L. STROM, PRESIDENT JONATHAN HOLLOWAY, in their official capacities,<br><br>Defendants. | Civil Action No. 3:21-cv-15333-ZNQ-TJB<br><br>Civil Action<br><br>(Document Filed Electronically)<br><br>**Return Date:** **February 7, 2022**<br><br><br>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(B)(6)** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

FACTUAL AND LEGAL BACKGROUND .................................................... 3

LEGAL STANDARD ............................................................................................... 5

ARGUMENT ............................................................................................................... 7

    I.    Virtually All of Plaintiffs' Claims Fail For Lack of Standing or Mootness. ....................................................................................................... 7

        A.    The student Plaintiffs who are exempt from the mandate lack standing to challenge the mandate. ................................................. 7

        B.    Because Rutgers' vaccination and masking policies apply equally to all persons, vaccinated or not, the exempt Plaintiffs have no ripe challenge to Rutgers' policies. ................ 8

        C.    Plaintiff CHD lacks organizational standing to pursue claims not possessed by the student Plaintiffs. ............................ 10

    II.    The Court Should Dismiss Plaintiffs' Constitutional Claims. ................ 11

        A.    Plaintiffs fail to allege a violation of their rights to Due Process. .......................................................................................... 11

        B.    Plaintiffs have not alleged an Equal Protection violation. ........... 17

        C.    The Rutgers Policy does not burden the free exercise of religion. .......................................................................................... 19

        D.    The mandate does not violate the New Jersey Constitution. ...... 21

    III.    Plaintiffs' 42 U.S.C. § 1983 and NJCRA Claims Fail Because They Do Not State Any Violations of Constitutional Rights. .......................... 23

    IV.    Rutgers' Policies Violate No State or Federal Law. ................................. 25

        A.    Plaintiffs fail to allege a violation of federal law. ......................... 25

        B.    New Jersey law explicitly authorizes Rutgers' policies. ............... 26

    V.    Plaintiffs' Breach of Contract Claim Fails Because They Do Not Allege the Existence of a Contract or How Rutgers Breached It. ......... 28

    VI.    Plaintiffs' Equitable Estoppel Claim Fails Because Rutgers Did Not Promise a Vaccine-Free Fall 2021 Academic Semester. .................. 30

# TABLE OF CONTENTS
(continued)

                                                                              **Page**

VII.   The Court Should Disregard Plaintiffs' Inflammatory and
       Unsupported Claims That Rutgers Had a Financial Motive to
       Impose the Mandate. .................................................................. 32

CONCLUSION ............................................................................................. 34

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Chiropractic Ass'n v. Am. Specialty Health, Inc.*,
625 F. App'x 169 (3d Cir. 2015) ................................................................ 11

*Ballentine v. United States*,
486 F.3d 806 (3d Cir. 2007) .......................................................................5

*Behar v. Murphy*,
No. 20-5206, 2020 WL 6375707 (D.N.J. Oct. 30, 2020) (Wolfson, J.)............... 9, 10

*Big Tyme Invs., L.L.C. v. Edwards*,
No. 20-30526, 2021 WL 118628 (5th Cir. Jan. 13, 2021) ......................................... 15

*Board of Education of Mountain Lakes v. Maas*,
152 A.2d 394 (N.J. Super. Ct. App. Div. 1959)........................................................ 22

*Bridges v. Houston Methodist Hosp.*,
No. H-21-1774, 2021 WL 2399994 (S.D. Tex. June 12, 2021) ................................ 26

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993) .................................................................................. 19

*City of Oklahoma City v. Tuttle*,
471 U.S. 808 (1985) .................................................................................. 24

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ....................................................................................9

*Common Cause v. Pennsylvania*,
558 F.3d 249 (3d Cir. 2009) ...................................................................... 10

*In re Conroy*,
486 A.2d 1209 (N.J. 1985) ........................................................................ 22

*D'Agostino v. Maldonado*,
78 A.3d 527 (2013) ................................................................................... 30

*Delaney v. Baker,*
    511 F. Supp. 3d 55 (D. Mass. 2021) ....................................................... 18, 21

*Dykes v. Se. Pa. Transp. Auth.,*
    68 F.3d 1564 (3d Cir. 1995) .................................................................... 24

*Faistl v. Energy Plus Holdings, LLC,*
    No. 12-2879 JLL, 2012 WL 3835815 (D.N.J. Sept. 4, 2012).................................... 30

*Foley Mach. Co. v. Amland Contractors, Inc.,*
    506 A.2d 1263 (N.J. Super. Ct. App. Div. 1986) ........................................ 31

*Gould Elecs., Inc. v. United States,*
    220 F.3d 169 (3d Cir. 2000) ....................................................................5

*Groman v. Twp. of Manalapan,*
    47 F.3d 628 (3d Cir. 1995) ..................................................................... 23

*Harris v. Univ. of Mass., Lowell,*
    No. 21-CV-11244-DJC, 2021 WL 3848012 (D. Mass. Aug. 27, 2021) . 13, 15, 17, 20

*Holiday Vill. E. Home Owners Ass'n, Inc. v. QBE INS Corp.,*
    830 F. Supp. 2d 24 (D.N.J. 2011) ............................................................ 4, 6

*Hottenstein v. City of Sea Isle City,*
    977 F. Supp. 2d 353 (D.N.J. 2013) ........................................................ 23

*Ill. Republican Party v. Pritzker,*
    973 F.3d 760 (7th Cir. 2020), *cert. denied,* 141 S.Ct 1754 (2021)................................ 15

*Jacobson v. Massachusetts,*
    197 U.S. 11 (1905) ....................................................................*passim*

*Jeffrey Rapaport M.D., P.A. v. Robin S. Weingast & Assocs., Inc.,*
    859 F. Supp. 2d 706 (D.N.J. 2012) ........................................................ 6, 30

*Johnson v. Brown,*
    No. 3:21-CV-1494-SI, 2021 WL 4846060 (D. Or. Oct. 18, 2021) .......................... 15

*Kaul v. Christie,*
    372 F. Supp. 3d 206 (D.N.J. 2019) ........................................................ 17

*Kehr Packages, Inc. v. Fidelcor, Inc.,*
    926 F.2d 1406 (3d Cir. 1991) ....................................................................5

*Klaassen v. Trs. of Ind. Univ.*,
  7 F.4th 592 (7th Cir. 2021) ...................................................................*passim*

*Klaassen v. Trs. of Ind. Univ.*,
  No. 1:21-cv-238, 2021 WL 3073926 (N.D. Ind. July 18, 2021) ...................19, 20, 25

*League of Indep. Fitness Facilities and Trainers, Inc. v. Whitmer*,
  814 F. App'x 125 (6th Cir. 2020) ................................................................. 15

*McTernan v. City of York*,
  577 F.3d 521 (3d Cir. 2009) ........................................................................ 19

*Messina v. Coll. of N.J.*,
  No. CV2117576ZNQDEA, 2021 WL 4786114
  (D.N.J. Oct. 14, 2021) ........................................................................... 14, 15

*MK Strategies, LLC v. Ann Taylor Stores Corp.*,
  567 F. Supp. 2d 729 (D.N.J. 2008) ................................................................ 29

*Monell v. Department of Social Services.*,
  436 U.S. 658 (1978) .................................................................................... 24

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
  549 F.2d 884 (3d Cir. 1977) ..........................................................................5

*N.J. Turnpike Auth. v. Jersey Cent. Power & Light*,
  772 F.2d 25 (3d Cir. 1985) ............................................................................7

*Nat'l Ass'n of Theatre Owners v. Murphy*,
  No. 3:20-CV-8289 (BRM) (TJB), 2020 WL 5627145
  (D.N.J. Aug. 18, 2020) ................................................................................ 12

*Nationwide Ins. Indep. Contractors Ass'n, Inc. v. Nationwide Mut. Ins. Co.*,
  No. 11-3085, 2012 WL 1524381 (E.D. Pa. May 1, 2012) ......................................... 11

*In re Newark*,
  Nos. A-0146-21, A-0159-21, 2021 WL 4398457
  (N.J. Super. Ct. App. Div. Sept. 27, 2021) ...................................................... 23

*Norris v. Stanley*,
  2021 WL 3891615 (W.D. Mich. Aug. 31, 2021) ...................................................8

*Norwegian Cruise Lines Holdings, Ltd. v. Rivkees,*
No. 21-22492-CIV-WILLIAMS, 2021 WL 3471585
(S.D. Fla. Aug. 8, 2021) ........................................................................... 16, 18

*Pelekai v. Hawai'i,*
No. 21-CV-00343-DKW-RT, 2021 WL 4944804
(D. Haw. Oct. 22, 2021) ...................................................................................... 7

*Phillips v. City of New York,*
27 F. Supp. 3d 310 (E.D.N.Y. 2014) ................................................................ 18, 19

*Phillips v. City of New York,*
775 F.3d 538 (2d Cir.), *cert. denied* 577 U.S. 822 (2015) ........................................ 14, 17

*Phillips v. County of Allegheny,*
515 F.3d 224 (3d Cir. 2008) ................................................................................. 6

*Plyler v. Doe,*
457 U.S. 202 (1982) .......................................................................................... 17

*Polanco v. Omnicell, Inc.,*
988 F. Supp. 2d 451 (D.N.J. 2013) ......................................................................... 6

*Potter v. Newkirk,*
No. 17-08478, 2020 WL 6144756 (D.N.J. Oct. 20, 2020) ........................................ 29

*Reilly v. Ceridian Corp.,*
664 F.3d 38 (3d Cir. 2011) .................................................................................... 9

*Resurrection School v. Hertel,*
11 F.4th 437 (6th Cir. 2021), *vacated*, 2021 WL 5227152 ........................................ 20

*Roman Catholic Diocese of Brooklyn v. Cuomo,*
141 S.Ct. 63 (2020) ..................................................................................... 13, 15

*Sadlock v. Carlstadt Board of Education,*
58 A.2d 218 (N.J. 1948) ............................................................................ 21, 22, 23

*Schmidt v. Skolas,*
770 F.3d 241 (3d Cir. 2014) .................................................................................. 6

*Sharp v. Kean Univ.,*
153 F. Supp. 3d 669 (D.N.J. 2015) ....................................................................... 24

*Sourovelis v. City of Philadelphia*,
   103 F. Supp. 3d 694 (E.D. Pa. 2015) .......................................................... 5, 6

*Tandon v. Newsom*,
   141 S.Ct. 1294 (2021) ................................................................................. 20

*Tenafly Eruv Ass'n v. Borough of Tenafly*,
   309 F.3d 144 (3d Cir. 2002) ....................................................................... 20

*Torsiello v. Strobeck*,
   955 F. Supp. 2d 300 (D.N.J. 2013) ............................................................ 29

*Valdez v. Grisham*,
   No. 21-cv-783, 2021 WL 4145746 (D.N.M. Sept. 13, 2021)..................... 26

*Wade v. Univ. of Conn. Bd. of Trs.*,
   No. 3:21-CV-924 (JAM), 2021 WL 3616035
   (D. Conn. Aug. 16, 2021)..............................................................................7

*Washington v. Glucksberg*,
   521 U.S. 702 (1997) .................................................................................... 12

*We the Patriots USA, Inc. v. Hochul*,
   Nos. 21-2179, 21-2566, 2021 WL 5121983 (2d Cir. Nov. 4, 2021)......... 15

*Wise v. Inslee*,
   No. 2:21-CV-0288-TOR, 2021 WL 4951571
   (E.D. Wash. Oct. 25, 2021) ........................................................................ 24

## Statutes, Rules & Regulations

21 U.S.C. § 360bbb-3 ......................................................................................... 25

21 U.S.C. § 360bbb-3(e)(1)(A)(ii).................................................................... 25

21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III) ........................................................... 25

42 U.S.C. § 1983 ................................................................................................. 23

Fed. R. Civ. P. 12(b)(1) ............................................................................ 5, 7, 10

Fed. R. Civ. P. 12(b)(6) ................................................................................. 6, 9

N.J.A.C. § 8:57-6.4................................................................................................1

N.J.A.C. § 8:57-6.4(c) ................................................................... 17, 26

N.J.A.C. § 8:57-6.14(d) ................................................................ 3, 27

N.J.A.C. § 8:57-6.15 ......................................................................... 27

N.J.A.C. § 8:57-6.16 ......................................................................... 27

N.J.S.A. § 18A:61D-1 ........................................................... 1, 17, 26, 27

## Other Authorities

Exec. Order No. 14042, 86 Fed. Reg. 50,985 (Sept. 14, 2021) .................................... 8, 33

Exec. Order No. 14043, 86 Fed. Reg. 50,989 (Sept. 14, 2021) ...................................... 33

F.D.A., *Coronavirus (COVID-19) Update: FDA Authorizes First Point-of-Care Antibody Test for COVID-19* (Sept. 23, 2020), https://www.fda.gov/news-events/press-announcements/ coronavirus-covid-19-update-fda-authorizes-first-point-care-antibody-test-covid-19 ...................................... 28

F.D.A., *FDA in Brief: FDA Advises Against Use of SARS-CoV-2 Antibody Test Results to Evaluate Immunity or Protection from COVID-19, Including After Vaccination* (May 19, 2021), https://www.fda.gov/news-events/press-announcements/fda-brief-fda-advises-against-use-sars-cov-2-antibody-test-results-evaluate-immunity-or-protection ...................................... 28

F.D.A., *Q&A for Comirnaty (COVID-19 Vaccine mRNA)* (Oct. 20, 2021), https://www.fda.gov/vaccines-blood-biologics/qa-comirnaty-covid-19-vaccine-mrna ...................................... 8

*From McDonald's to Goldman Sachs, here are the companies mandating vaccines for all or some employees*, NBC News, https://www.nbcnews.com/business/business-news/here-are-companies-mandating-vaccines-all-or-some-employees-n1275808 (last updated Nov. 16, 2021) ...................................... 33

*Guide to Returning to Rutgers*, Rutgers Institutional Planning and Operations, at 9 (Oct. 25, 2021), https://ipo.rutgers.edu/sites/default/files/ Guide%20To%20Returning%20To%20Rutgers.pdf ...................................... 9

*Here's a List of Colleges That Require Students or Employees to Be Vaccinated Against Covid-19*, The Chronicle of Higher Education, https://www.chronicle.com/blogs/live-coronavirus-updates/heres-a-list-of-colleges-that-will-require-students-to-be-vaccinated-against-covid-19 (last updated Nov. 16, 2021) ........................................................................ 33

N.J. Dep't of Health, *Questions and Answers on Immunization Regulations Pertaining to Children Attending School/Higher Education: Frequently Asked Questions* 34 (2021), https://nj.gov/health/cd/documents/imm_requirements/vaccine_qa.pdf (last visited Nov. 18, 2021) ............................................................................................................... 28

*Our Path Forward: COVID-19 Vaccination and the Fall Term*, Office of the Rutgers President (Mar. 25, 2021), https://www.rutgers.edu/president/our-path-forward ................................................4

*The Trump Administration's 'Operation Warp Speed' Has Spent $12.4 Billion on Vaccines. How Much Is That, Really?*, Time (Dec. 14, 2020), https://time.com/5921360/operation-warp-speed-vaccine-spending/ ............................................................................................................... 33

*Universitywide COVID-19 Information*, Rutgers Univ., https://coronavirus.rutgers.edu/covid-19-vaccine/#:~:text=Therefore%2C%20to%20ensure%20compliance%20with,are%20the%20only%20permissible%20exceptions (last visited Nov. 19, 2021) ........................9

*What Colleges Require the COVID-19 Vaccine?*, Best Colleges, https://www.bestcolleges.com/blog/list-of-colleges-that-require-covid-19-vaccine/ (last updated Nov. 15, 2021) ............................................. 33

*Whether Section 564 of the Food, Drug, and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an Emergency Use Authorization*, 45 Op. O.L.C. ___ (slip op.) (2021) ........................................................ 25, 26

**INTRODUCTION**

A New Jersey law, N.J.S.A. § 18A:61D-1, has long obligated Rutgers, the State University of New Jersey ("Rutgers"), to require every Rutgers student to (1) be vaccinated against certain diseases and (2) provide proof of vaccination as a condition of matriculating and remaining enrolled.  Regulations specify certain vaccinations that Rutgers must require all students to take, and N.J.A.C. § 8:57-6.4 allows Rutgers "to establish additional requirements for student immunizations and documentation that such institution shall determine appropriate and which is recommended by" the federal Advisory Committee on Immunization Practices ("ACIP").  In March 2021, while Rutgers was in the midst of its third semester conducted remotely because of the COVID-19 pandemic, Rutgers announced plans to return to in-person learning for the Fall 2021 semester.  A linchpin of that plan was Rutgers exercising of its authority to require students to take one of the ACIP-recommended COVID-19 vaccines unless they qualified for a medical or religious exemption from the mandate.

Vaccination requirements have been a decades-long staple of primary, secondary, and higher education in New Jersey and around the country, and the United States Supreme Court and New Jersey Supreme Court repeatedly have upheld vaccination requirements against constitutional challenges.  Unfortunately, however, COVID-19 vaccine mandates have become political.  Children's Health Defense, Inc. ("CHD"), a well-funded anti-vaccination group, and several Rutgers students who paid ten dollars each to become "lifetime members" of CHD, filed a 118-page First Amended

Complaint ("FAC") challenging Rutgers' COVID-19-related vaccination, masking, and testing policies.  The FAC is legally baseless.  The Court should dismiss it for lack of standing and for failure to state a claim upon which relief can be granted.

For most of Plaintiffs' claims, the Court need not even reach the merits.  All but one of the student Plaintiffs have received religious exemptions and therefore do not need to take the vaccine.  Those students' challenge to the mandate is moot.  Their separate claims that Rutgers someday may impose different masking requirements on unvaccinated students are not ripe because Rutgers has no such differential policy.  Rutgers requires all persons to wear masks indoors, regardless of vaccination status, and does not require anyone (vaccinated or not) to wear masks outdoors.

That leaves just one of the Plaintiffs, Adriana Pinto, who remains unvaccinated and non-exempt, and who therefore has standing to challenge the vaccine mandate.  When Ms. Pinto sought an injunction to halt the mandate, however, this Court held she is unlikely to succeed on the merits of her claim.  *See* ECF No. 27 at 9.  The Court based its decision on clear precedents, including *Jacobson v. Massachusetts*, 197 U.S. 11, 31 (1905), in which the Supreme Court applied a deferential standard of review to public health measures and held that the Constitution does not preclude state vaccination mandates that bear a "real or substantial relation" to protecting public health and safety.  During the COVID-19 pandemic, the Supreme Court has refused multiple opportunities to revisit or disturb the core holding of *Jacobson*, and numerous federal courts of appeals have applied that precedent to uphold COVID-19 vaccination mandates.  *Jacobson*

forecloses any federal constitutional challenge to Rutgers' vaccine mandate, and Plaintiffs' other challenges to the mandate based on the New Jersey Constitution and federal and state laws facially lack merit.

Separate from Plaintiffs' attack on the vaccine mandate, the FAC complains that Rutgers excludes unvaccinated students from student housing. But that policy also is subject to rational basis review, and the logic of excluding unvaccinated persons from communal living situations during a pandemic, because alternatives like masking are not feasible in dormitory life, is obvious. Rutgers, moreover, has regulatory authority to exclude unvaccinated students from campus *entirely* during a disease outbreak. *See* N.J.A.C. § 8:57-6.14(d). It stands to reason that Rutgers has a rational basis to take the much less restrictive, and common-sense, step of excluding unvaccinated students only from dormitory living, not the whole campus.

Plaintiffs' FAC is their second attempt to plead claims. As noted, the Court already heard and denied Ms. Pinto's request for injunctive relief because her claims lack merit, and Ms. Pinto elected not to appeal from that ruling. Nothing would be gained, and public resources would be needlessly taxed, by allowing Plaintiffs further leave to amend their FAC. The Court should dismiss the FAC with prejudice.

## FACTUAL AND LEGAL BACKGROUND

Rutgers assumes general and judicially noticeable familiarity with the COVID-19 pandemic, the loss of life it has caused, and its disruptions to nearly every aspect of daily life in New Jersey, including the operations of this Court. On March 21, 2020,

Governor Phil Murphy issued Executive Order No. 107, an unprecedented directive for "[a]ll New Jersey residents [to] remain at home or at their place of residence" except for certain specified exigencies.  EO 107 directed the closure of all non-"essential" retail businesses and the cancellation of all "[g]atherings of individuals, such as parties, celebrations, or other social events."  The Governor closed "[a]ll public, private, and parochial" schools and directed "[a]ll institutions of higher education" to "cease in-person instruction."  Rutgers conducted the second half of its Spring 2020 semester remotely and continued remote learning during the entire 2020-2021 academic year.

On March 25, 2021, with the expectation that ACIP-recommended COVID-19 immunizations would shortly become available to all adults in the United States, Rutgers announced that its students would have to provide proof of COVID-19 vaccination in order to matriculate for the Fall 2021 semester.  *See Our Path Forward: COVID-19 Vaccination and the Fall Term*, Office of the Rutgers President (Mar. 25, 2021), https://www.rutgers.edu/president/our-path-forward.[1]

---

[1] The FAC alleges that in January 2021, Rutgers told students that vaccination was not mandatory for students to return to campus for in-person instruction."  FAC ¶ 191.  It is not true, however, that Vicente Gracias, a Rutgers Biomedical and Health Sciences official, "assured viewers [in a video] that Rutgers was not mandating COVID-19 vaccines based upon a history and tradition at the University of promoting human liberty."  *Id.*  The video is available at https://vimeo.com/502384549/ 10286f6cb1?utm_campaign=5370367&utm_source=affiliate&utm_channel=affiliate &cjevent=ea9051b9045311ec80c547850a82b838&clickid=ea9051b9045311ec80c5478 50a82b838.  At the 7:30 mark, Dr. Gracias speculated that Rutgers might not mandate the vaccine.  He made no promise that Rutgers could not or would not do so.  The Court may consider the video because Plaintiffs explicitly relied on it.  *See Holiday Vill. E. Home Owners Ass'n, Inc. v. QBE INS Corp.*, 830 F. Supp. 2d 24, 26 (D.N.J. 2011).

By announcing the vaccination mandate more than five months ahead of the Fall 2021 semester, before any student had paid for Fall 2021 classes, Rutgers gave students ample time to prepare or consider whether any opposition to COVID-19 vaccination warranted a decision to suspend their education or pursue it at another institution. The early announcement also gave students time to decide if they would seek a medical or religious exemption from the requirement. No Plaintiff asserts an inability to comply with the requirement or to seek an exemption if applicable. Plaintiffs' claims center instead around their desire not to take a COVID-19 vaccination and their belief that Rutgers lacks legal authority to condition their attendance on taking one.

## LEGAL STANDARD

Plaintiffs bear the burden of establishing the existence of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); *see also Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) ("A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1) . . . ."); *Sourovelis v. City of Philadelphia*, 103 F. Supp. 3d 694, 700 (E.D. Pa. 2015) ("A challenge for mootness is properly brought by a Rule 12(b)(1) motion . . . .").

If, on a standing or mootness challenge, a defendant relies on evidence beyond the pleadings, "no presumptive truthfulness attaches to plaintiff's allegations," and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *see Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). "A challenge

for mootness . . . constitutes a factual attack on the jurisdictional facts; thus, the court may consider evidence outside the pleadings." *Sourovelis*, 103 F. Supp. 3d at 700, *citing Gould*, 220 F.3d at 176-77.

On a Rule 12(b)(6) motion, the court must accept as true all factual allegations and draw all reasonable inferences in the light most favorable to the plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Courts, however, need not "accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions." *Holiday Vill. E. Home Owners Ass'n, Inc. v. QBE INS Corp.*, 830 F. Supp. 2d 24, 26 (D.N.J. 2011). Rule 12(b)(6) motions also allow courts to consider "exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Id.*, *quoting Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). A document forms the basis of a claim when it is "integral to or explicitly relied upon in the complaint." *Id.* (citation omitted); *see also Schmidt v. Skolas*, 770 F.3d 241, 250 (3d Cir. 2014) ("[T]he justification for the integral documents exception is that it is not unfair to hold a plaintiff accountable for the contents of documents it must have used in framing its complaint, nor should a plaintiff be able to evade accountability for such documents simply by not attaching them to his complaint."). "When allegations contained in a complaint are contradicted by the document it cites, the document controls." *Jeffrey Rapaport M.D., P.A. v. Robin S. Weingast & Assocs., Inc.*, 859 F. Supp. 2d 706, 714 (D.N.J. 2012) (citation omitted); *see also Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 457 n.6 (D.N.J. 2013) (same).

## ARGUMENT

### I.   Virtually All of Plaintiffs' Claims Fail For Lack of Standing or Mootness.

All of the student Plaintiffs except Ms. Pinto have received religious exemptions and therefore need not be vaccinated.  *See* FAC ¶¶ 13-32.  All persons on campus, vaccinated or not, are subject to the same masking requirements: universal masking indoors, no masks required outdoors.  Other than Ms. Pinto's attack on the mandate, therefore, and the claims by exempt students that Rutgers cannot exclude them from student communal housing or require them to test weekly for COVID, all of Plaintiffs' claims fail pursuant to Fed. R. Civ. P. 12(b)(1) for mootness or lack of standing.

#### A.   *The student Plaintiffs who are exempt from the mandate lack standing to challenge the mandate.*

Challenges to the vaccine mandate from Plaintiffs who have received religious exemptions—all the Plaintiffs other than Ms. Pinto—are moot.  *See Wade v. Univ. of Conn. Bd. of Trs.*, No. 3:21-CV-924 (JAM), 2021 WL 3616035, at *8 (D. Conn. Aug. 16, 2021) (dismissing two plaintiffs' challenges to UConn's vaccine mandate as moot because they were granted exemptions); *Pelekai v. Hawai'i*, No. 21-CV-00343-DKW-RT, 2021 WL 4944804, at *1 (D. Haw. Oct. 22, 2021) (dismissing plaintiffs' claims as moot because they all opted out of or were granted exemptions from vaccine requirements). These Plaintiffs' having received exemptions also moots their challenges to Rutgers' process for considering exemption requests because they have no further claim on which the court may "make a substantive determination on the merits." *N.J. Turnpike*

-7-

*Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 30 (3d Cir. 1985) ("If one or more of the issues involved in an action become moot . . . the adjudication of the moot issue or issues should be refused.").[2]

### B. Because Rutgers' vaccination and masking policies apply equally to all persons, vaccinated or not, the exempt Plaintiffs have no ripe challenge to Rutgers' policies.

The Plaintiffs who received religious exemptions raise two kinds of Equal Protection claims arising from the restrictions they face by virtue of being unvaccinated. One of these claims is moot and the other is unripe.

First, Plaintiffs claim that Rutgers has treated students differently from faculty and staff because it imposed the mandate only on students. *See* FAC ¶¶ 295, 305, 313. In light of President Joseph R. Biden, Jr.'s Executive Order 14042, however, which

---

[2] Although Plaintiffs' claims that Rutgers has mandated an "experimental" vaccine are without merit for the reasons discussed in Point IV below, those claims are also moot. Although, at the time Rutgers imposed the mandate, all three ACIP-recommended COVID-19 vaccines had received only Emergency Use Authorization ("EUA") approval from the Food and Drug Administration ("FDA"), the FDA has since granted full approval for adult use of Pfizer's vaccine, which Pfizer has branded "Comirnaty." *See Norris v. Stanley*, 2021 WL 3891615, at *2 (W.D. Mich. Aug. 31, 2021) (FDA's approval of Comirnaty moots claims about COVID vaccine requirements contradicting EUA restrictions). Plaintiffs' FAC (at ¶¶ 77, 92-94, 125) seems to ask the Court to second-guess the FDA's statements that "Comirnaty has the same formulation as the FDA-authorized Pfizer-BioNTech COVID-19 vaccine," and that although "[t]he products are legally distinct," those differences "do not impact safety or effectiveness." FDA, *Q&A for Comirnaty (COVID-19 Vaccine mRNA)* (Oct. 20, 2021), https://www.fda.gov/vaccines-blood-biologics/qa-comirnaty-covid-19-vaccine-mrna. If Plaintiffs believe that the "FDA's extension of EUA's at the same time it purports to license C[omirnaty] is not legally permissible," FAC ¶ 94, they should direct that complaint to the FDA, not to Rutgers.

requires vaccination against COVID-19 for certain employees of federal contractors, Rutgers recently announced that all employees must receive their final dose of a COVID-19 vaccine by January 4, 2022. *See Universitywide COVID-19 Information*, Rutgers Univ., https://coronavirus.rutgers.edu/covid-19-vaccine/#:~:text=Therefore%2C% 20to%20ensure%20compliance%20with,are%20the%20only%20permissible%20 exceptions (last visited Nov. 19, 2021). Plaintiffs' Equal Protection Claim would have failed anyway pursuant to Rule 12(b)(6), but it has become moot.

Second, the exempt Plaintiffs assert Equal Protection claims premised on the theory that they may later be, but are not now, subject to different masking requirements than students who are vaccinated. *See* FAC ¶¶ 316-18. There is no basis for this claim. Rutgers requires all persons on its campuses to wear masks while indoors, regardless of their vaccination status, and does not require anyone to mask on campus while outdoors. *See Guide to Returning to Rutgers*, Rutgers Institutional Planning and Operations, at 9 (Oct. 25, 2021), https://ipo.rutgers.edu/sites/default/files/ Guide%20To%20Returning%20To%20Rutgers.pdf. To the extent that Plaintiffs purport to base their challenge on the possibility that Rutgers might adopt a different policy in the future, that claim is hypothetical and not ripe for adjudication. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401-02 (2013) ("theory of *future injury* [was] too speculative" to be "certainly impending"); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (no standing where plaintiffs allege only "hypothetical, future injury"); *Behar v. Murphy*, No. 20-5206, 2020 WL 6375707, at *5 (D.N.J. Oct. 30, 2020) (Wolfson,

J.) (following rescission of the Executive Order that provided the basis for the plaintiff's suit, and because plaintiff had no basis to assert the restrictions would return, plaintiff's claims of potential future injury were too speculative to proceed).

Only Ms. Pinto, who is unvaccinated and non-exempt, has retained standing to challenge Rutgers' vaccine mandate. The arguments that Defendants state below with respect to Ms. Pinto's claims would apply with equal force to the other Plaintiffs' claims if they had standing to assert them, but the Court should dismiss the exempt Plaintiffs' challenge to the vaccine mandate for lack of standing pursuant to Rule 12(b)(1).

## C.   *Plaintiff CHD lacks organizational standing to pursue claims not possessed by the student Plaintiffs.*

The presence of CHD, purportedly suing on behalf of the same student Plaintiffs, *see* FAC ¶ 11, should not expand the scope of claims that the student Plaintiffs may pursue in this case. If CHD has other members who—unlike the student Plaintiffs—requested but did not receive religious exemptions from Rutgers, the Court would have to consider the details of those students' exemption requests. CHD cannot litigate those absent persons' claims without their active participation, and that precludes any claim by CHD to organizational standing. *See Common Cause v. Pennsylvania*, 558 F.3d 249, 261 (3d Cir. 2009) (listing factors required for organizational standing, including lack of need for direct member participation), *quoting United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996); *see also, e.g., Nationwide Ins. Indep. Contractors Ass'n, Inc. v. Nationwide Mut. Ins. Co.*, No. 11-3085, 2012

WL 1524381, at *4 (E.D. Pa. May 1, 2012) (rejecting organizational standing where the plaintiffs did not allege ability to prove claim without absent persons' participation). Where the facts of a particular member's case are at issue, organizational representation is not appropriate.  *See, e.g.*, *Am. Chiropractic Ass'n v. Am. Specialty Health, Inc.*, 625 F. App'x 169, 176 (3d Cir. 2015).  Because CHD does not appear to contend otherwise, this brief assumes that CHD's presence in the case adds nothing of substance.

## II.    The Court Should Dismiss Plaintiffs' Constitutional Claims.

### A.    *Plaintiffs fail to allege a violation of their rights to Due Process.*

Ms. Pinto, as a non-exempt, unvaccinated student (who is not currently enrolled in classes because she has not complied with the vaccine mandate), possesses standing.[3] Although she ostensibly challenges only the *COVID-19* vaccine mandate, the substance of her claim is that the Due Process Clause of the Fourteenth Amendment precludes legally requiring *anyone* to take *any* immunizations (measles, mumps, rubella, whooping cough, etc.).  Vaccination requirements, however, are well established in the law, with approval from the United States and New Jersey Supreme Courts.  After examining those precedents, this Court rightly held that Ms. Pinto's facial challenge to Rutgers' vaccination requirement is not likely to succeed.  In fact, it cannot succeed and fails to state a claim upon which the Court may grant relief.

---

[3]  To the extent Ms. Pinto premises her claim on the belief that the ACIP should not have recommended COVID-19 vaccines, that is a claim she must direct to the ACIP, not to Rutgers.  The same is true of her claims that face masks and COVID-19 tests supposedly are approved only for emergency use.  *See* FAC ¶¶ 82, 209.

Rational basis review applies to Ms. Pinto's claims.[4]   The Fourteenth Amendment "provides heightened protection against government interference [only] with certain *fundamental* rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (emphasis added) (collecting cases defining "fundamental" rights).  The Supreme Court counseled caution before "expand[ing] the concept of substantive due process because guideposts for responsible decision[-]making in this uncharted area are scarce and open-ended." *Id.*, *quoting Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).  The limited set of claims that trigger higher scrutiny have been "carefully refined by concrete examples involving fundamental rights found to be deeply rooted in our legal tradition." *Id.* at 722.  Government actions implicating rights that do not meet this high threshold merely require "a reasonable relation to a legitimate state interest to justify the action"—in other words, a rational basis.  *See id.*  Rational basis review thus applies unless a claim implicates a fundamental right or alleges discrimination against a suspect class.  *See Nat'l Ass'n of Theatre Owners v. Murphy*, No. 3:20-CV-8289 (BRM) (TJB), 2020 WL 5627145, at *12 (D.N.J. Aug. 18, 2020) ("If . . . [a] challenged regulation does not discriminate against a suspect class or interfere with a fundamental right, a court applies a rational-basis review.").  Further, even were it necessary for Rutgers to establish that controlling the spread of a deadly and contagious disease is a "compelling"

---

[4]  Plaintiffs' FAC does not make clear what standard of review Plaintiffs want the Court to apply; it recites the standards for all of strict scrutiny, intermediate scrutiny, and rational basis review.  *See, e.g.*, FAC ¶ 313.  As explained herein, however, the law is clear that rational basis review applies.

government interest, the Supreme Court already has decided that it is. *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 67 (2020).

Rutgers indisputably has legitimate interests in protecting members of its broad community from a potentially deadly disease and in trying to prevent more of the massive disruptions that COVID-19 caused for three semesters prior to Fall 2021. Accordingly, Rutgers' decision to require students to take a COVID-19 vaccine as a condition of matriculation for the Fall 2021 semester satisfies rational basis review. *See Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) (approving state university vaccine mandate, recognizing that "the rational-basis standard used in *Jacobson*" is "the law established by the Supreme Court"); *Harris v. Univ. of Mass., Lowell*, No. 21-CV-11244-DJC, 2021 WL 3848012, at *6 (D. Mass. Aug. 27, 2021) ("[c]urbing the spread of COVID-19 is 'unquestionably a compelling interest,' and listing "other legitimate goals [that] flow from that," including "returning students safely to campus"); *Roman Catholic Diocese*, 141 S.Ct. at 67 ("Stemming the spread of COVID-19 is unquestionably a compelling interest . . . ."); *see also Jacobson*, 197 U.S. at 31-32 ("[T]he principle of vaccination as a means to prevent the spread of smallpox has been enforced in many states by statutes making the vaccination of children a condition of their right to enter or remain in public schools.").

The Supreme Court concluded in *Jacobson* that it was not for courts to determine "which one of two modes was likely to be the most effective for the protection of the public against disease." 197 U.S. at 30. So long as the law bears a "real or substantial

relation" to protecting public health and is not "beyond all question, a plain, palpable invasion of rights secured by the fundamental law," the law must be upheld.  *Id.* at 31. The State has the right to impose requirements "which, according to the common belief of the people, are adapted to prevent the spread of contagious diseases."  *Id.* at 35.  The 1905 Supreme Court even presciently anticipated the all-too-political debates in 2021 over COVID-19 vaccines:  "The fact that the belief [in effectiveness] is not universal is not controlling, for there is scarcely any belief that is accepted by everyone."  *Id.*; *see also Phillips v. City of New York*, 775 F.3d 538, 542 (2d Cir.) (weighing effectiveness of vaccine requirement was "for the legislature, not the individual objectors," citing *Jacobson*), *cert. denied* 577 U.S. 822 (2015); *Messina v. Coll. of N.J.*, No. CV2117576ZNQDEA, 2021 WL 4786114, at *8 (D.N.J. Oct. 14, 2021) (rejecting arguments about efficacy of COVID-19 vaccines; "it is not this Court's function to determine the most effective method to protect the public against COVID-19.").

Plaintiffs seeking to challenge government-imposed restrictions and mandates during the COVID-19 pandemic have taken repeated swings at *Jacobson* but failed to dent its core holdings that vaccination requirements do not invade fundamental rights and that courts should leave it to the political branches to decide what measures are necessary to protect public health.[5]  *Klaassen* is only one of many cases reaffirming

---

[5]   Notably, Plaintiffs ask the Court to strictly apply *Jacobson*, FAC ¶¶ 6, 207, but simultaneously invite the Court to "modify or overrule" it, *id.* ¶ 9. The authorities cited above demonstrate that federal courts consider *Jacobson* as controlling, even "in light of modern developments."  *See id.* ¶ 7.

*Jacobson* in today's circumstances.  Others include *We the Patriots USA, Inc. v. Hochul*, Nos. 21-2179, 21-2566, 2021 WL 5121983, at *15 (2d Cir. Nov. 4, 2021) (subjecting COVID vaccine mandate to rational basis review and denying injunctive relief); *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020), *cert. denied*, 141 S.Ct 1754 (2021) ("The district court appropriately looked to *Jacobson* for guidance [in reviewing government action to stem the spread of COVID-19], and so do we."); *League of Indep. Fitness Facilities and Trainers, Inc. v. Whitmer*, 814 F. App'x 125, 127 (6th Cir. 2020) (noting "the police power retained by the states empowers state officials to address pandemics such as COVID-19 largely without interference from the courts," citing *Jacobson*); *Big Tyme Invs., L.L.C. v. Edwards*, No. 20-30526, 2021 WL 118628 (5th Cir. Jan. 13, 2021) ("[A] state's emergency response to public health crises, including pandemics such as COVID-19, is reviewed under the framework originally set forth by the Supreme Court in *Jacobson*."); *Johnson v. Brown*, No. 3:21-CV-1494-SI, 2021 WL 4846060, at *12 (D. Or. Oct. 18, 2021) (rejecting argument that strict scrutiny applies to challenge of vaccine mandate and collecting cases "considering vaccine mandates issued during the COVID-19 pandemic" that applied rational basis as required by *Jacobson*); *Messina*, 2021 WL 4786114, at *8 ("[O]ther courts—including this one—reviewed similar challenges to COVID-19 vaccine policies and have uniformly concluded that *Jacobson* controls."); *Harris*, 2021 WL 3848012, at *6 (granting university's motion to dismiss complaint challenging its vaccine mandate and applying rational basis standard established in *Jacobson*); *cf. Roman Cath. Diocese*, 141 S.Ct. at 70 (Gorsuch, J., concurring) ("Although

*Jacobson* pre-dated the modern tiers of scrutiny, this Court essentially applied rational basis review . . . ."); *Norwegian Cruise Lines Holdings, Ltd. v. Rivkees*, No. 21-22492-CIV-WILLIAMS, 2021 WL 3471585, at *14 (S.D. Fla. Aug. 8, 2021) ("courts have suggested that the unvaccinated population is not a protected class that enjoys a fundamental Constitutional right to remain unvaccinated," citing *Jacobson* and the lower court decision in *Klaassen*). No cases from any jurisdiction, by contrast, have taken a different view of *Jacobson* or of university vaccine mandates.

Moreover, as this Court has recognized, the alleged infringement of a *university* vaccine mandate *with exemptions* is less than that at issue in *Jacobson*, which the Supreme Court found *not* to be unconstitutional. *See* ECF No. 27 at 10-11. *See also Klaassen*, 7 F.4th at 593-94 ("If conditions of higher education may include surrendering [tuition] and following instructions about what to read and write, it is hard to see a greater problem with medical conditions that help all students remain safe when learning."). The Massachusetts smallpox vaccine mandate in *Jacobson* applied to all residents and imposed a penalty of $5 (over $150 in today's dollars) on anyone failing to comply. *See* 197 U.S. at 12. The statute had no religious exemption and adults could not escape the mandate for any reason; exceptions were made only "in favor of children who present a certificate, signed by a registered physician, that they are unfit subjects for vaccination." *Id.* at 12-13 (quotation omitted). Rutgers, like the university at issue in *Klaassen*, recognizes both religious and medical exemptions to its vaccination requirements, and as recognized in *Klaassen*, students can avoid the mandate by

-16-

choosing another university that does not impose one. *Id.* at 594.  Accordingly, the mandate passes rational basis review under the Due Process Clause.

### B.   Plaintiffs have not alleged an Equal Protection violation.

Ms. Pinto also asserts an Equal Protection challenge to the mandate, but it is no stronger.  One aspect of that claim is the now-moot contention that Rutgers previously applied the vaccine mandate only to students and not staff.  As the court held in *Harris*, a university's later decision to require most staff to be vaccinated undermines any Equal Protection challenge, but even if a university only requires students to be vaccinated, this has a rational basis.  *See Harris*, 2021 WL 3848012, at *6.  That is particularly true in New Jersey, which requires universities by law to impose vaccine mandates on students.  *See* N.J.S.A. § 18A:61D-1; N.J.A.C. § 8:57-6.4(c).  This law does not implicate fundamental rights.  Public higher education "is not a 'right' granted to individuals by the Constitution," *Plyler v. Doe*, 457 U.S. 202, 221 (1982), and a university's vaccination mandate does not interfere with one's ability to obtain an education because "Plaintiffs have ample educational opportunities" and "may go elsewhere" if they do not like a university's health requirements, *Klaassen*, 7 F.4th at 593.

Plaintiffs' Equal Protection challenge to the vaccine mandate also fails because they are not members of a protected class alleging that "disparate treatment was based on [their] membership in the protected class." *Kaul v. Christie*, 372 F. Supp. 3d 206, 254 (D.N.J. 2019).  Being unvaccinated does not confer protected status.  *See Phillips*, 775 F.3d at 543-44 (students with religious exemptions to vaccines are not a protected class).

In *Phillips*, as here, "Plaintiffs have not asserted any facts tending to show that Defendants favored any religion over another, or that Plaintiffs are part of any protected class." *Phillips v. City of New York*, 27 F. Supp. 3d 310, 313 (E.D.N.Y. 2014);[6] *see also Norwegian Cruise Line*, 2021 WL 3471585, at *14.

The remainder of Plaintiffs' Equal Protection arguments are directed not toward the vaccine mandate, but to Rutgers' masking policies, Rutgers' decision to exclude unvaccinated students from communal dormitory living, and Rutgers' requirement that unvaccinated students must regularly test for COVID-19. *See* FAC ¶¶ 316-18. These arguments fail, too. As discussed above, all students, faculty, staff, and visitors are treated equally with respect to masking, and neutrally applied mask policies to combat the spread of COVID-19 do not violate the Constitution. *See, e.g.*, *Delaney v. Baker*, 511 F. Supp. 3d 55, 73-74 (D. Mass. 2021). Similarly, all unvaccinated students, regardless of their reasons for being unvaccinated, are subject to the same exclusion from dormitory living and to the same regular testing requirements. No student is subject to restriction on account of membership in a religion or any other protected status.

---

[6] *Phillips* involved a challenge by people with religious objections to vaccinations to New York State and New York City vaccination requirements for children in public schools. The plaintiffs' children received religious exemptions but were excluded from school "each time any schoolmate reports a case of a 'vaccine preventable disease.'" *Phillips*, 27 F. Supp. 3d at 311. Citing *Jacobson*, the district court in *Phillips* noted that "New York's vaccine program is well within the State's police power and thus its constitutionality is too well established to require discussion." *Id.* at 313.

### C.     The Rutgers Policy does not burden the free exercise of religion.

Plaintiffs mention the free exercise of religion in their Fourteenth Amendment claim.  *See* FAC ¶ 319.  Rutgers' vaccination, masking, and testing policies, however, do not burden free exercise.  *See McTernan v. City of York*, 577 F.3d 521, 532 (3d Cir. 2009) (dismissing a Free Exercise challenge for failure to meet the *Iqbal* pleading standard where the plaintiffs made mere "conclusory allegations" that they were treated differently based on their religion).

Only those government acts "burdening religious practice that [are] not neutral or not of general application must undergo the most rigorous of scrutiny."  *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993).  Unless a rule "targets religious conduct for *distinctive* treatment or advances legitimate governmental interest *only* against conduct with a religious motivation," is it not subject to strict scrutiny.  *Id.* (emphases added).  For this reason, even if New Jersey law did not provide for religious exemptions to vaccination requirements, Plaintiffs could not argue that a vaccination requirement applicable equally to all residents violates their right to free exercise.  *See Phillips*, 27 F. Supp. 3d at 312-13 (*Jacobson* did not require a right for religious objectors to be exempt from vaccination laws) (citing cases).

When the District Court in *Klaassen* considered those plaintiffs' Free Exercise challenge, it explained that a "vaccine mandate is a neutral rule of general applicability" and does not "discriminate among religions" or between the religious and non-religious.  *See* No. 1:21-cv-238, 2021 WL 3073926, at *25 (N.D. Ind. July 18, 2021).  "Indeed, the

university has chosen to *enable* the practice of religion by providing a religious exemption to this vaccination requirement." *Id.* "In short, based on this analysis, all roads effectively lead to rational basis review." *Id.* at *26; *see also Harris*, 2021 WL 3848012, at *7 (no Free Exercise claim where plaintiff did not allege anything suggesting that the university "administered their religious exemption policy in a way that burdens some religions but not others," or "coerced her in her religious practices").

Here, Rutgers does not treat those who have religious exemptions differently from those who have medical exemptions. The Supreme Court recently explained that courts should apply strict scrutiny to COVID-related regulations only when those regulations "treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S.Ct. 1294, 1296 (2021). Whether a religious and secular activity are comparable "must be judged against the asserted governmental interest that justifies the regulation at issue" and "the risks various activities pose, not the reasons why people gather." *Id.*; *see also Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 165 (3d Cir. 2002) ("[T]he Free Exercise Clause's mandate of neutrality toward religion prohibits government from deciding that secular motivations are more important than religious motivations.") (internal quotes omitted).

Neutrally applied mask mandates do not burden religious exercise, either. *See, e.g., Resurrection School v. Hertel*, 11 F.4th 437, 460 (6th Cir. 2021), *vacated*, 2021 WL 5227152, at *1 (masking requirement for K-12 students did not violate the Free Exercise clause because the rule was "neutral and of general applicability and satisf[ied]

rational-basis review"); *Delaney*, 511 F. Supp. 3d at 74  (rejecting challenge to a "facially neutral" order requiring masks in public spaces).

All told, nothing about the vaccine mandate and related masking and testing requirements for exempt students single out any religious practice.   Accordingly, Plaintiffs have failed to state a claim for violation of their free exercise rights.

### D.   The mandate does not violate the New Jersey Constitution.

Separate from Plaintiffs' claims under the federal Constitution, they assert that Rutgers' immunization requirement also violates the New Jersey Constitution.  *See* FAC ¶ 320.   Here, too, Plaintiffs do not allege anything unique about the COVID-19 vaccines; their claim is that the state Constitution precludes *all* vaccination requirements.   Decisions of the New Jersey Supreme Court, however, already have soundly rejected this kind of claim.

Just as *Jacobson* upheld a state vaccination mandate against a federal constitutional challenge, the New Jersey Supreme Court upheld a public school vaccination mandate against both a federal and New Jersey State Constitution-based challenge.  In *Sadlock v. Carlstadt Board of Education*, 58 A.2d 218, 221-22 (N.J. 1948), the New Jersey Supreme Court turned aside challenges based on religious liberty and equal protection.  "The principle is too well established to require citation that the so-called constitutional liberties are not absolute, but are relative only.  They must be considered in the light of the general public welfare.  To hold otherwise would be to place the individual above the law." *Id.* at 222.  The New Jersey Supreme Court also observed "that the question

of the desirability or efficacy of compulsory vaccination . . . and whether it is wise or unwise is strictly a legislative and not a judicial question." *Id.* at 220.

Similarly, in *Board of Education of Mountain Lakes v. Maas*, 152 A.2d 394, 405 (N.J. Super. Ct. App. Div. 1959), the Appellate Division rejected the argument that because smallpox and diphtheria had not been seen in New Jersey for a decade, immunization should no longer be required. "The absence of an existing emergency does not warrant a denial to the regulative agency of the exercise of preventative means. [Officials] need not await an epidemic, or even a single sickness or death, before [they] decide[] upon action to protect the public. To hold otherwise would be to destroy prevention as a means of combatting the spread of disease." *Id.*

Most recently, when the New Jersey Supreme Court recognized that "a competent adult person generally has the right to decline to have any medical treatment initiated or continued," it also stated that "[w]hether based on common-law doctrines or constitutional theory, the right to decline life-sustaining medical treatment is not absolute" and "may yield to countervailing societal interests in sustaining a person's life." *In re Conroy*, 486 A.2d 1209, 1222-23 (N.J. 1985). One of the countervailing societal interests that can override a person's individual medical decisions is the need to "protect[] innocent third parties." *Id.* at 1225. Specifically, "[w]hen the patient's exercise of his free choice could adversely and directly affect the health, safety, or security of others, the patient's right of self-determination must frequently give way." *Id.* (collecting cases, including *Jacobson*).

-22-

Based on this authority, the Appellate Division recently held, in a published decision arising in the context of an administrative challenge to a public-employee vaccine mandate, that the City of Newark "has a managerial prerogative to implement its [COVID-19] vaccination mandate," imposed unilaterally by Newark's mayor. *See In re Newark*, Nos. A-0146-21, A-0159-21, 2021 WL 4398457, at *6 (N.J. Super. Ct. App. Div. Sept. 27, 2021). The Appellate Division relied upon *Jacobson* and *Sadlock* in doing so. *See id.* at *4-5. It reached its decision even though "[t]he City has not cited to any statute or regulation authorizing the City or Mayor to establish a vaccination mandate." *Id.* at *6. It sufficed for Newark to show "the clear national and state policy to combat the health threats posed by COVID-19," and that the New Jersey Supreme Court "has recognized that the COVID-19 pandemic is an extraordinary situation justifying extraordinary responses." *Id.* at *6, *citing N.J. Republican State Comm. v. Murphy*, 236 A.3d 898, 901-02 (N.J. 2020). Rutgers, by contrast, has express regulatory authority to require students to take any ACIP-recommended vaccine as a condition of matriculation.

## III. Plaintiffs' 42 U.S.C. § 1983 and NJCRA Claims Fail Because They Do Not State Any Violations of Constitutional Rights.

Plaintiffs also assert claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), but both statutes require Plaintiffs to allege sufficiently that a person, acting under the color of state law, deprived them of a right secured by the Constitution. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353, 365 (D.N.J. 2013) ("This district has

repeatedly interpreted NJCRA analogously to § 1983," and both laws require that "the Defendant must have violated a constitutional right.") (citation omitted). Similarly, *Monell v. Department of Social Services.*, 436 U.S. 658, 694 (1978), provides for liability only "when execution of a government's policy or custom" deprives an individual of a constitutional right. *See also Sharp v. Kean Univ.*, 153 F. Supp. 3d 669, 675 (D.N.J. 2015) (no Section 1982 claim unless plaintiff can demonstrate that one of [the university's] policies or customs caused the alleged constitutional deprivation.").

Because, as explained above, Plaintiffs have not sufficiently pleaded that Rutgers' vaccination, masking, or testing policies violate their rights under the federal or New Jersey Constitutions, Plaintiffs have failed to state a Section 1983 or NJCRA claim. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985) ("By its terms, . . . the statute creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere."); *Dykes v. Se. Pa. Transp. Auth.*, 68 F.3d 1564, 1570 (3d Cir. 1995) (dismissing Section 1983 claims where plaintiff failed to "allege a cognizable violation" of his constitutional rights); *Wise v. Inslee*, No. 2:21-CV-0288-TOR, 2021 WL 4951571, at *5 (E.D. Wash. Oct. 25, 2021) (denying preliminary injunction against Proclamation mandating COVID-19 vaccination for certain public employees, noting that "Plaintiffs cannot succeed on their claim for relief under 42 U.S.C. § 1983 because they have not established any constitutional violations").

IV.   **Rutgers' Policies Violate No State or Federal Law.**

A.   *Plaintiffs fail to allege a violation of federal law.*

Plaintiffs spill much ink analyzing various federal laws involving vaccines, but they fail to describe any violations that Rutgers committed.  As an example, Plaintiffs mention that the Food, Drug and Cosmetic Act "prohibits anyone from introducing or delivering for introduction into interstate commerce any 'new drug' or 'biological product' unless and until the U.S. Food and Drug Administration . . . has approved the drug or biological product as 'safe and effective for its intended use.'"  FAC ¶ 55 (citations omitted).  Of course, Rutgers has not "introduced" any new vaccine.

Rutgers does not dispute that federal law governing EUA products requires "that individuals to whom the product is administered are informed . . . of the option to accept or refuse administration of the product."  21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III). Giving students a choice between taking the vaccine and pursuing their education elsewhere is, as *Klaassen* explicitly recognized, not the same as forcing vaccination.  *See Klaassen*, 2021 WL 3073926, at *25.  In addition, nothing about the vaccine mandate conflicts with federal law governing EUA.  Section 564 of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 360bbb-3 ("Section 564"), obligates only the Secretary of Health and Human Services to establish "conditions designed to ensure that individuals to whom the product is administered are informed . . . of the option to accept or refuse administration of the product."  *Id.* § 360bbb-3(e)(1)(A)(ii); *see also Whether Section 564 of the Food, Drug, and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to*

*an Emergency Use Authorization*, 45 Op. O.L.C. __, 2 (2021) (slip op.) (determining that Section 564 does not "prohibit[] entities from imposing such vaccination requirements while the only available vaccines for COVID-19 remain subject to EUAs"); *Bridges v. Houston Methodist Hosp.*, No. H-21-1774, 2021 WL 2399994, at *2 (S.D. Tex. June 12, 2021) (stating in an employment-related action that Section 564 "confers certain powers and responsibilities to the Secretary" and "neither expands nor restricts the responsibilities of private employers").  The Secretary met the requirements of Section 564 by means of the authorized Fact Sheets distributed by healthcare providers administering the vaccine to persons receiving it.  *See* FAC ¶ 70-71.

Contrary to Plaintiffs' wholly unsupported assertion that "Section 564 incorporates the principle that unlicensed medical products cannot be mandated," *id.* ¶ 72, Rutgers has not "mandated" any particular action, but has only made adherence to its mandate a condition of enrollment.  Nothing about that mandate conflicts with (or, frankly, has anything to do with) the Secretary's responsibilities or the right to informed consent reflected in Section 564.  *See, e.g., Valdez v. Grisham*, No. 21-cv-783, 2021 WL 4145746, at *4 (D.N.M. Sept. 13, 2021) (rejecting Section 564-based challenge to mandate that hospital workers must receive COVID vaccinations).

## B.   *New Jersey law explicitly authorizes Rutgers' policies.*

N.J.S.A. § 18A:61D-1 and N.J.A.C. § 8:57-6.4(c), which require Rutgers to obtain proof from students that they have taken certain immunizations and authorize Rutgers to require other ACIP-recommended vaccinations, disprove Plaintiffs' claims that

Rutgers COVID-19 vaccination requirement is "*ultra vires* under state law." FAC, First Claim for Relief. The same is true of Plaintiffs' claims about exclusion of unvaccinated persons from dormitory living. State regulations permit Rutgers to exclude vaccine-exempt students from on-campus presence entirely during a disease outbreak. *See* N.J.A.C. § 8:57-6.14(d) ("An institution may temporarily exclude a student with medical exemptions . . . from classes and from participating in institution-sponsored activities during a vaccine-preventable disease outbreak or threatened outbreak."); *see also id.* § 8:57-6.15 (same with respect to religious exemptions). It stands to reason that if Rutgers can exclude unvaccinated students from classes entirely during a pandemic, it can take the much less extreme step of excluding them only from communal dormitory living, where constant masking is infeasible.

Plaintiffs protest that New Jersey law should allow them to avoid vaccination by providing proof that they have natural immunity from COVID-19. *See* FAC ¶ 302. New Jersey law does contemplate that, in some instances, evidence of immunity may suffice, but only pursuant to regulations promulgated by the NJDOH. *See* N.J.S.A. § 18A:61D-1. Those regulations state that a student must provide "*laboratory evidence of immunity.*" N.J.A.C. § 8:57-6.16 (emphasis added). At present, however, no laboratory test exists that would satisfy the NJDOH requirements for submission of evidence of immunity in lieu of vaccination.

The NJDOH has stated that "[t]he tests used to document immunity must be approved by the [FDA] for this purpose and performed by a laboratory that is CLIA

-27-

certified."   N.J. Dep't of Health, *Questions and Answers on Immunization Regulations Pertaining to Children Attending School/Higher Education: Frequently Asked Questions* 34 (2021), https://nj.gov/health/cd/documents/imm_requirements/vaccine_qa.pdf (last visited Nov. 18, 2021).   The FDA has issued an EUA for a serology test for COVID-19.   *See* F.D.A., *Coronavirus (COVID-19) Update: FDA Authorizes First Point-of-Care Antibody Test for COVID-19* (Sept. 23, 2020), https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-authorizes-first-point-care-antibody-test-covid-19.   But the FDA advises that such "antibody tests should not be used at this time to determine immunity or protection against COVID-19."   F.D.A., *FDA in Brief: FDA Advises Against Use of SARS-CoV-2 Antibody Test Results to Evaluate Immunity or Protection from COVID-19, Including After Vaccination* (May 19, 2021), https://www.fda.gov/news-events/press-announcements/fda-brief-fda-advises-against-use-sars-cov-2-antibody-test-results-evaluate-immunity-or-protection.   Because there is no FDA-approved serology test authorized to determine immunity to COVID-19, NJDOH regulations do not recognize any serology test sufficient for Plaintiffs or anyone else to demonstrate natural immunity as an alternative to vaccination.

## V.   Plaintiffs' Breach of Contract Claim Fails Because They Do Not Allege the Existence of a Contract or How Rutgers Breached It.

Deeper into their prolix FAC, Plaintiffs allege that Rutgers "entered into a binding contract to provide instruction in exchange for a fee under agreed upon terms and conditions that did not include a requirement to take a EUA COVID-19 vaccine,

undertake routine COVID-19 PCR testing or mask wearing." FAC ¶ 338. Plaintiffs claim that Rutgers breached the alleged contract "by adopting unilaterally a Policy mandating EUA COVID-19 vaccines, testing and masking to attend Rutgers, without any enabling statute or requirement by any health authority." *Id.* ¶ 340. This claim is frivolous because, as Plaintiffs admit elsewhere in the FAC, Rutgers announced the immunization requirement five months before the start of the academic semester to which it would first apply. *See id.* ¶ 194. The "contract" to matriculate for Fall 2021 thus included the vaccination mandate that Rutgers announced in March 2021.

A complaint adequately pleads a breach of contract claim only if it alleges (1) the existence of a valid contract, (2) a breach of that contract; (3) resulting damage to the plaintiff; and (4) that the plaintiff performed its own contractual duties. *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 735 (D.N.J. 2008). "To prove the existence of an express contract, [the plaintiff] must set forth the elements of offer, acceptance and consideration." *Id.* "Under New Jersey law, a complaint alleging breach of contract must, at a minimum, identify the contracts and provisions breached. Failure to allege the specific provisions of the contract breached is grounds for dismissal." *Potter v. Newkirk*, No. 17-08478, 2020 WL 6144756, at *13 (D.N.J. Oct. 20, 2020) (internal quotation and citation omitted).

Here, it is no surprise that Plaintiffs fail to allege formation of a contract with the terms they posit. *See Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 309 n.5 (D.N.J. 2013) (breach of contract claim insufficiently pleaded where the complaint did not allege

"when the contract was formed"); *Faistl v. Energy Plus Holdings, LLC*, No. 12-2879 JLL, 2012 WL 3835815, at *8 (D.N.J. Sept. 4, 2012) (same).

## VI.   Plaintiffs' Equitable Estoppel Claim Fails Because Rutgers Did Not Promise a Vaccine-Free Fall 2021 Academic Semester.

Plaintiffs' "Estoppel or Detrimental Reliance" claim rests entirely on the January 2021 statement of a Rutgers official, made during a videotaped panel discussion, that he did not expect Rutgers to impose a vaccination mandate. *See* FAC ¶¶ 332-35.[7] This statement does not bear the weight Plaintiffs put on it. Dr. Gracias did not, and was not in a position to, promise what Rutgers would do in the future if the pandemic did not recede. He did not say that the vaccine would never be mandatory, and he did not speak about requirements for the Fall 2021 semester, much less state that Rutgers would not mandate the vaccine as a condition of attendance for Fall 2021. His actual comments do not support Plaintiffs' characterizations of them. *See Rapaport*, 859 F. Supp. 2d at 714 ("When allegations contained in a complaint are contradicted by the document it cites, the document controls.") (citation omitted).

Dr. Gracias' statement in January 2021 does not suffice as a basis for an estoppel claim. Rutgers does not dispute that Dr. Gracias seems to have speculated aloud that Rutgers would not impose a vaccination mandate. His speculation, however, could not

---

[7]   To state a claim for estoppel, a plaintiff must allege "a knowing and intentional misrepresentation by the party sought to be estopped under circumstances in which the misrepresentation would probably induce reliance, and reliance by the party seeking estoppel to his or her detriment." *D'Agostino v. Maldonado*, 78 A.3d 527, 546 (2013) (citation omitted).

have provided a basis for estoppel even had students been in a position in January 2021 to make decisions about classes that would begin in September 2021.

Of all the Plaintiffs, the FAC claims only that Plaintiffs Doe 2 and Jessica Moore—both of whom requested and received religious exemptions from the mandate—were even aware of Dr. Gracias' statement.  *See* FAC ¶¶ 19, 28.  These two Plaintiffs claim that they relied on the statement, *see id.* ¶¶ 237, 333-36, but they do not and cannot explain what they could have done with respect to the Fall 2021 semester, or not done, prior to Rutgers' March 2021 announcement of the mandate nearly half a year before the semester began.  Any reliance on Dr. Gracias' comments *after* Rutgers announced the mandate would not be reasonable, and to have an estoppel claim, a party's "reliance must be reasonable and justifiable."  *Foley Mach. Co. v. Amland Contractors, Inc.*, 506 A.2d 1263, 1266 (N.J. Super. Ct. App. Div. 1986).  As of March 2021, when Rutgers announced its official policy for Fall 2021, Doe 2 and Ms. Moore still had ample opportunity to withdraw their acceptance and attend school elsewhere once Rutgers announced the mandate.  Indeed, that is why Rutgers announced its policy so far in advance.  Plaintiffs' FAC includes a bare allegation that they could not seek alternate education five months before the start of a new semester, FAC ¶ 3, but the Court need not accept that unsupported and conclusory statement.

Separately, and solely as to Plaintiff Pinto, the FAC raises an entirely different estoppel claim that Ms. Pinto reasonably expected she could avoid taking a COVID-19 vaccine if she selected only remote coursework.  *See, e.g.,* FAC ¶¶ 16, 335.  Rutgers'

vaccine policy stated that "[s]tudents whose entire course of study is entirely web based, a fully online degree program, and/or fully remote" are exempt from the mandate. The Court already addressed this claim by Ms. Pinto when it denied her motion for injunctive relief. "Rutgers defines what constitutes a fully remote student, not Ms. Pinto, and she does not meet Rutgers' definition." ECF No. 27 at 12. The FAC, therefore, fails to allege that Rutgers made a misrepresentation. The equitable estoppel claim as to this representation fails as well.

## VII.   The Court Should Disregard Plaintiffs' Inflammatory and Unsupported Claims That Rutgers Had a Financial Motive to Impose the Mandate.

The Court should disregard Plaintiffs' baseless accusations that Rutgers had an improper financial motive to impose the mandate. These claims are inflammatory, unsupported by any facts, and irrelevant to Plaintiffs' asserted causes of action. Many pharmaceutical companies have their headquarters or major operations in New Jersey, and Rutgers is proud to partner with those companies for many purposes. But Plaintiffs do not, and cannot, allege that Rutgers benefits financially from the sale of any COVID-19 vaccines. Doses of these vaccines, moreover, are being manufactured and administered in the *billions*. Whether or not a small percentage of Rutgers students who might not otherwise have taken the vaccine did so because of the mandate would not even amount to a rounding error in the calculation of revenues from vaccine sales.

Universities around the country have imposed similar mandates.[8]  So, of course, have the federal government[9] and numerous private employers.[10]  It is self-evident that these entities are requiring vaccinations in order to be able to return safely to a state of normalcy.  The federal government contracted with Pfizer, Johnson & Johnson, Novavax, and AstraZeneca to spend billions of dollars to fund the development of vaccines and to pre-purchase over 500 million doses of these vaccines, all well before Rutgers decided to impose a vaccine mandate.[11]  The only relevant issue in this case is whether Rutgers has the legal right to mandate a vaccine that is ACIP-recommended as a condition of enrollment.  It does.

---

[8]  *See Here's a List of Colleges That Require Students or Employees to Be Vaccinated Against Covid-19*, The Chronicle of Higher Education, https://www.chronicle.com/blogs/live-coronavirus-updates/heres-a-list-of-colleges-that-will-require-students-to-be-vaccinated-against-covid-19 (last updated Nov. 16, 2021); *What Colleges Require the COVID-19 Vaccine?*, Best Colleges, https://www.bestcolleges.com/blog/list-of-colleges-that-require-covid-19-vaccine/ (last updated Nov. 15, 2021).

[9]  President Biden has required all federal employees and employees of federal contractors to be vaccinated.  *See* Exec. Order No. 14043, 86 Fed. Reg. 50,989 (Sept. 14, 2021); Exec. Order No. 14042, 86 Fed. Reg. 50,985 (Sept. 14, 2021).

[10]  *See From McDonald's to Goldman Sachs, here are the companies mandating vaccines for all or some employees*, NBC News, https://www.nbcnews.com/business/business-news/here-are-companies-mandating-vaccines-all-or-some-employees-n1275808 (last updated Nov. 16, 2021).

[11]  *See The Trump Administration's 'Operation Warp Speed' Has Spent $12.4 Billion on Vaccines. How Much Is That, Really?*, Time (Dec. 14, 2020), https://time.com/5921360/operation-warp-speed-vaccine-spending/.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' First Amended Complaint with prejudice.

Dated: November 19, 2021   Respectfully submitted,

      */s/ Jeffrey S. Jacobson*
      Jeffrey S. Jacobson
      Andrew B. Joseph
      W. Joshua Lattimore
      Jennifer P. Montan
      **FAEGRE DRINKER BIDDLE &**
      **REATH LLP**
      600 Campus Drive
      Florham Park, New Jersey 07932
      (973) 549-7000
      (973) 360-9831 (fax)
      Jeffrey.Jacobson@faegredrinker.com
      Andrew.Joseph@faegredrinker.com
      Joshua.Lattimore@faegredrinker.com
      Jennifer.Montan@faegredrinker.com

      *Attorneys for Rutgers, The State University of New Jersey, et al.*