

# NEW JERSEY REGISTER

*THE JOURNAL OF STATE AGENCY RULEMAKING*

**VOLUME 22    NUMBER 7**
April 2, 1990    Indexed 22 N.J.R. 1011-1182
(Includes adopted rules filed through March 12, 1990)

---

**MOST RECENT UPDATE TO NEW JERSEY ADMINISTRATIVE CODE: JANUARY 16, 1990**
See the Register Index for Subsequent Rulemaking Activity.

**NEXT UPDATE: SUPPLEMENT FEBRUARY 20, 1990**

---

## RULEMAKING IN THIS ISSUE

**EXECUTIVE ORDER**

GOVERNOR'S OFFICE
Executive Order No. 6(1990): Role of the
  Attorney General ............................................................ 1013(a)

**RULE PROPOSALS**

Interested persons comment deadline ........................................ 1012

BANKING
  Pawnbrokers' sale of unredeemed pledges at
    public auction ............................................................. 1015(a)
PERSONNEL
  Misuse of State property .................................................... 1015(b)
COMMUNITY AFFAIRS
  Uniform Construction Code: annual public hearing on
    change proposals .......................................................... 1016(a)
  County offices on aging .................................................... 1016(b)
  Ombudsman for Institutionalized Elderly: practice
    and procedure ............................................................. 1016(c)
ENVIRONMENTAL PROTECTION
  Noise control: extension of comment period ....................... 1045(b)
HEALTH
  Intoxicated Driving Program .............................................. 1024(a)
HUMAN SERVICES
  Paternity determination services for non-AFDC clients ..... 1053(a)
  REACH post-AFDC sliding fee scales ............................... 1054(a)
INSURANCE
  Automobile insurers: excess profits carry forward ............. 1025(a)
  Private passenger automobile insurers: annual Financial
    Data Report ................................................................ 1026(a)
  Out-of-state vehicles: certification of mandatory liability
    coverage .................................................................... 1040(a)
LABOR
  Vocational Rehabilitation Services: procedures and
    standards .................................................................... 1045(c)

LAW AND PUBLIC SAFETY
  Board of Accountancy rules ............................................... 1042(a)
PUBLIC UTILITIES
  All utilities ...................................................................... 1112(a)
TRANSPORTATION
  Speed limit zones along Routes 54 in Atlantic County, 26
    in Middlesex County, and 83 in Cape May County ...... 1060(a)
  Junkyards adjacent to State highway systems .................... 1061(a)
  State Highway Access Management Code ......................... 1061(b)
TREASURY-GENERAL
  State pension fund investments: corporate obligations ....... 1042(b)
  State pension fund investments: mortgage-backed
    passthrough securities .................................................. 1043(a)
  State pension fund investments: U.S. Treasury futures ...... 1043(b)
  State pension fund investments: guaranteed
    income contracts .......................................................... 1044(a)
  State pension fund investments: use of covered put
    options ....................................................................... 1044(b)
TREASURY-TAXATION
  Corporation Business Tax: application of overpayment
    to estimated tax ........................................................... 1045(a)

**RULE ADOPTIONS**

AGRICULTURE
  Tuberculin testing of cattle .............................................. 1116(a)
  Registration and transportation of bees ............................. 1116(b)
  Sire Stakes qualifying times at pari-mutuel tracks ............. 1116(c)
COMMUNITY AFFAIRS
  Department organization .................................................. 1117(a)
  Continuing care retirement communities: administrative
    correction regarding disclosure statement .................... 1117(b)
MILITARY AND VETERANS' AFFAIRS
  Department organization .................................................. 1117(c)
ENVIRONMENTAL PROTECTION
  Advertising by tree experts ............................................... 1122(a)

(Continued on Next Page)

You're viewing an archived copy from the New Jersey State Library.

STATE AGENCY RULEMAKING

# INTERESTED PERSONS

**Interested persons** may submit, in writing, information or arguments concerning any of the rule proposals in this issue until **May 2, 1990**. Submissions and any inquiries about submissions should be addressed to the agency officer specified for a particular proposal or group of proposals.

On occasion, a proposing agency may extend the 30-day comment period to accommodate public hearings or to elicit greater public response to a proposed new rule or amendment. An extended comment deadline will be noted in the heading of a proposal or appear in a subsequent notice in the Register.

At the close of the period for comments, the proposing agency may thereafter adopt a proposal, without change, or with changes not in violation of the rulemaking procedures at N.J.A.C. 1:30-4.3. The adoption becomes effective upon publication in the Register of a notice of adoption, unless otherwise indicated in the adoption notice. Promulgation in the New Jersey Register establishes a new or amended rule as an official part of the New Jersey Administrative Code.

## RULEMAKING IN THIS ISSUE—Continued

NJPDES fee schedule for permittees and applicants .......... 1124(a)
Fees for water allocation permits: administrative
  correction to N.J.A.C. 7:19-3.8 ....................... 1134(a)
Volatile organic substances in consumer products:
  notice of rule invalidation ........................... 1134(b)
HEALTH
  Birth defects registry ................................. 1134(c)
  Standard Hospital Accounting and Rate Evaluation
    (SHARE) ............................................. 1135(a)
  Interchangeable drug products ........... 1136(a), 1136(b), 1137(a)
HIGHER EDUCATION
  Student immunization requirements ..................... 1137(b)
HUMAN SERVICES
  Prosthetic and Orthotic Services Manual ............... 1140(a)
  REACH program: post-AFDC child care .................. 1140(b)
CORRECTIONS
  Grants procedure ...................................... 1142(a)
  Reduced custody consideration ......................... 1143(a)
LAW AND PUBLIC SAFETY
  Board of Dentistry rules .............................. 1145(a)
  Practice of ophthalmic dispensers and technicians ..... 1148(a)
  Thoroughbred racing: elimination from place and
    show wagering ...................................... 1149(a)
  Harness racing: elimination from place and
    show wagering ...................................... 1149(b)
PUBLIC ADVOCATE
  Department organization ............................... 1149(c)
TREASURY-GENERAL
  Minority and female subcontractor participation in State
    construction contracts: administrative correction .... 1150(a)
  Classification and qualification of bidders for
    public works contracts ............................. 1150(b)
HACKENSACK MEADOWLANDS DEVELOPMENT
  COMMISSION
  District zoning ....................................... 1150(c)
CASINO CONTROL COMMISSION
  State seal on slot machines ........................... 1156(a)

### PUBLIC NOTICES
ENVIRONMENTAL PROTECTION
  1989-90 NJPDES Annual Fee Report and Fee Schedule ... 1157(a)

Atlantic County water quality management:
  Egg Harbor City ....................................... 1161(a)
Atlantic County water quality management:
  Egg Harbor Township ................................... 1161(b)
Mercer County water quality management:
  Washington Township ................................... 1161(c)
Upper Raritan water quality management:
  Clinton Township ...................................... 1161(d)
HEALTH
  Long-term care facilities: enforcement of nurse
    staffing requirements .............................. 1161(e)
LAW AND PUBLIC SAFETY
  Practice of optometry: agency response to petition
    for rulemaking concerning post-surgical
    ophthalmological care .............................. 1162(a)
HACKENSACK MEADOWLANDS DEVELOPMENT
  COMMISSION
  Petition to rezone site in Little Ferry: agency response ..... 1162(b)

EXECUTIVE ORDER NO. 66(1978)
  EXPIRATION DATES ................................... 1163

INDEX OF RULE PROPOSALS
  AND ADOPTIONS ...................................... 1169

### Filing Deadlines

May 7 issue:
  Proposals ............................................. April 6
  Adoptions ............................................. April 16
May 21 issue:
  Proposals ............................................. April 23
  Adoptions ............................................. April 30
June 4 issue:
  Proposals ............................................. May 4
  Adoptions ............................................. May 11
June 18 issue:
  Proposals ............................................. May 18
  Adoptions ............................................. May 25

---

**NEW JERSEY REGISTER**

The official publication containing notices of proposed rules and rules adopted by State agencies pursuant to the New Jersey Constitution, Art. V, Sec. IV, Para. 6 and the Administrative Procedure Act, N.J.S.A. 52:14B-1 et seq. Issued monthly since September 1969, and twice-monthly since November 1981.

Material published in the New Jersey Register is the property of the State of New Jersey. However, it may be copied, reproduced or republished by any person for any purpose whatsoever without permission, providing that no such reproduction or republication shall bear the title "New Jersey Register" or "Official Rules Publication" without the written permission of the Director, Office of Administrative Law.

The New Jersey Register (ISSN 0300-6069) is published the first and third Mondays (Tuesday, if Monday is a holiday) of each month by OAL Publications of the Office of Administrative Law, CN 301, Trenton, New Jersey 08625. Telephone: (609) 588-6606. Subscriptions, payable in advance, are one year, $90 ($180 by First Class Mail); back issues when available, $10 each. Make checks payable to OAL Publications.

POSTMASTER: Send address changes to: New Jersey Register, CN 301, Trenton, New Jersey 08625. Second Class Postage paid in South Plainfield, New Jersey.

*The NEW JERSEY ADMINISTRATIVE CODE is published on a continuing basis by OAL Publications of the Office of Administrative Law. Subscription rates for this 42-volume, regularly updated set of State administrative rules are available on request. The Code is sold either in the full set or in one to five volumes depending on the Department coverage desired.*

Case 3:21-cv-15333-ZNQ-TJB   Document 42-5   Filed 01/11/22   Page 3 of 6 PageID: 736

You're viewing an archived copy from the New Jersey State Library.

ADOPTIONS                                                                                           HIGHER EDUCATION

## (a)

**DRUG UTILIZATION REVIEW COUNCIL**
**Interchangeable Drug Products**
**Adopted Amendments: N.J.A.C. 8:71**

Proposed: July 3, 1989 at 21 N.J.R. 1790(a).
Adopted: March 1, 1990 by the Drug Utilization Review Council, Robert Kowalski, Chairman.
Filed: March 7, 1990 as R.1990 d.192, **with portions not adopted but still pending.**
Authority: N.J.S.A. 24:6E-6(b).
Effective Date: April 2, 1990.
Expiration Date: February 17, 1994.

**Summary** of Public Comments and Agency Responses:
COMMENT: Concerning propranolol ER, Wyeth-Ayerst, manufacturers of the branded product (Inderal LA) for which propranolol ER would be substituted, presented several arguments in opposition to the proposed generic: (1) exclusion of biodata on one subject, who was an outlier on the generic but not on the brand, was inappropriate; (2) dissolution of marketed lots of the generic showed some to be unacceptable; (3) analytical methods used to assay the generic did not "perform as validated," (4) no bioequivalence studies were performed on strengths below 160 mg; and (5) data were not available on the generic when given with food.

In addition, Wyeth-Ayerst provided information from a statistician who was of the opinion that the statistical analysis methods used on the data for the generic were inappropriate. Using what that expert considered a better statistical method, the generic was alleged to be inequivalent to the brand-name product.

Manufacturers of the generic rebutted that: (1) the one excluded subject met the FDA's criteria as an outlier; (2) their dissolution studies showed all batches to be in conformance with standards, and the FDA had sampled the suspect lots and had not reported any dissolution problems; (3) the assay methods were valid; (4) the FDA approved all strengths based on a biostudy of just the 160 mg product because all the other strengths contain a proportional amount of active drug; (5) the "with food" data show the generic does not release its contents prematurely; and (6) contrary to Wyeth-Ayerst's statistical expert's claim, use of the statistical methods was approved by the FDA and is considered to be the appropriate method, as corroborated by the testimony of Inwood's own statistical expert.

RESPONSE: The Council acknowledges that Inwood's statistical methods, whether acceptable to Wyeth-Ayerst or not, are those presently favored by the FDA, and that extension of the biodata to the lower strengths is also consistent with FDA policy. The existence of an "outlier" for the generic, but not the brand, is not overly surprising considering the nature of propranolol.

The Council further understands that this generic has already been extensively substituted in many other states, with no untoward reactions being particularly noticeable. The two Council physicians, one being a cardiologist, agree that any differences seen in the biodata would not present clinical problems to patients switched to the generic.

The available "with food" biodata also establish that the generic does not "dose-dump."

In summary, the Council rejected Wyeth-Ayerst's objections as either immaterial, unsubstantiated by FDA tests, or clinically unimportant, and therefore accepted the generic into the Formulary.

The following products and their manufacturers were **adopted**:

| | |
|---|---|
| Betamethasone diprop. crm, oint, lot 0.05% | Clay-Park |
| Propranolol ER caps 60, 80, 120, 160 mg | Inwood |

The following products were **not adopted but are still pending**:

| | |
|---|---|
| Albuterol tabs 2, 4 mg | Purepac |
| Albuterol tabs 2, 4 mg | Danbury |
| Amantadine caps 100 mg | Invamed |
| Amiloride/HCTZ tabs 5/50 | Danbury |
| Amiloride/HCTZ tabs 5/50 | PharmBasics |
| Amoxapine tabs 25, 50, 100, 150 mg | Chelsea |
| Amoxapine tabs 25, 50, 100, 150 mg | Watson |
| Atenolol/chlorthalidone tabs 50/25, 100/25 | Par |
| Carisoprodol/aspirin tabs 200/325 | Par |
| Clindamycin HCl caps 75, 150 mg | Danbury |
| Clonazepam tabs 0.5, 1, 2 mg | PharmBasics |
| Cyclopentolate ophth soln 1% | Paco |
| Dexamethasone/neomycin/polymyxin B ophth | Paco |
| Doxepin caps 10, 25, 50 mg | Purepac |
| Doxycycline caps 50, 100 mg | Interpharm |
| Doxycycline tabs 100 mg | Interpharm |
| Doxycycline tabs 100 mg | Pharbita |
| Erythromycin ER caps 250 mg | AmerTher |
| Fluocinonide cream 0.01, 0.025% | G&W |
| Fluocinonide oint 0.025% | G&W |
| Folic acid tabs 1 mg | Charlotte |
| Ibuprofen tabs 400 mg | Pharbita |
| Ibuprofen tabs 400, 600, 800 mg | Invamed |
| Indomethacin caps 25, 50 mg | Danbury |
| Loperamide caps 2 mg | Mylan |
| Lorazepam tabs 0.5 mg | PharmBasics |
| Methyldopa/HCTZ tabs 250/15, 250/25 | Invamed |
| Metoclopramide inj. 5 mg/ml | Lemmon |
| Metoclopramide tabs 10 mg | Invamed |
| Metoclopramide tabs 10 mg | Sidmak |
| Minocycline caps 100 mg | Danbury |
| Nifedipine caps 20 mg | Purepac |
| Oxazepam caps 10, 15, 30 mg | Danbury |
| Prazepam caps 20 mg | PharmBasics |
| Prazosin caps 1, 2, 5 mg | Chelsea |
| Prednisolone acetate ophth soln 1% | Paco |
| Procainamide ER tabs 500 mg | Invamed |
| Propranolol tabs 10, 20, 40, 60, 80, 90 mg | Invamed |
| Ritodrine inj 10 mg/ml, 15 mg/ml | TEVA |
| Sulfacetamide sodium ophth soln 10% | Paco |
| Thiothixene caps 20 mg | Cord |
| Timolol maleate tabs 5, 10, 20 mg | Danbury |
| Timolol maleate tabs 5, 10, 20 mg | Mylan |
| Timolol maleate tabs 5, 10, 20 mg | Novopharm |
| Timolol tabs 5, 10, 20 mg | Chelsea |
| Tobramycin ophth soln 0.3% | Paco |
| Trazodone tabs 150 mg | Chelsea |
| Tropicamide ophth soln 1% | Paco |
| Verapamil tabs 40 mg | Purepac |
| Vincristine inj. 1 mg/ml | TEVA |

OFFICE OF ADMINISTRATIVE LAW NOTE: See related notices of adoption at 21 N.J.R. 2997(a), 21 N.J.R. 3664(a) and 22 N.J.R. 214(b).

# HIGHER EDUCATION

## (b)

**BOARD OF HIGHER EDUCATION**
**Immunization Requirements**
**Adopted New Rules: N.J.A.C. 9:2-14**

Proposed: November 20, 1989 at 21 N.J.R. 3605(a).
Adopted: March 6, 1990 by the Board of Higher Education, T. Edward Hollander, Chancellor and Secretary.
Filed: March 6, 1990 as R.1990 d.189, **with substantive and technical changes** not requiring additional public notice and comment (see N.J.A.C. 1:30-4.3).
Authority: N.J.S.A. 18A:61D-1.
Effective Date: April 2, 1990.
Expiration Date: June 17, 1990.

**Summary** of Public Comments and Agency Responses:
The Board received comments regarding the proposal from two separate institutions of higher education, Rutgers, The State University, and Mercer County Community College, and a member of the public. The specific comments and the responses thereto are set forth below.
COMMENT: Rutgers, The State University, stated that the requirement of immediate implementation will bring about an undue hardship for students, their families and those required to carry out the rules that

Case 3:21-cv-15333-ZNQ-TJB   Document 42-5   Filed 01/11/22   Page 4 of 6 PageID: 737

You're viewing an archived copy from the New Jersey State Library.

HIGHER EDUCATION

ADOPTIONS

is far in excess of the economic and administrative impacts of the proposal. The rules should be phased in over a three year period.
RESPONSE: At one time, the Department hoped to phase in these rules over a three year period in order to give the institutions a better opportunity to implement the program in an orderly fashion with less strain upon the administration of the program. However, the Department received legal advice from the Attorney General's Office that the language of the enabling legislation, N.J.S.A. 18A:61D-1 et seq., and its effective date did not allow for such a phase-in period. Thus, the Board was left with no choice and was required to structure the rules for immediate implementation.
COMMENT: Rutgers further stated that the standards within the rules and the underlying legislation are inadequate as approximately 10 percent of those individuals vaccinated prior to 1980 are not adequately protected due to vaccine failure.
RESPONSE: The Department has consulted with the New Jersey Department of Health regarding this issue. The Department of Health does not recommend a change in the rules with regard to vaccine requirements at this time. If, in the future, the Department of Health recommends such a change, the Board will consider such a proposal at that time.
COMMENT: Rutgers further commented that students receiving financial aid will not be able to afford required vaccinations and stated that State funds should be made available for this purpose.
RESPONSE: While the Board understands this concern, there have been no State funds appropriated for this purpose. The Board would urge each institution to provide immunizations to such students as cost effectively as possible.
COMMENT: Rutgers further questioned the logic and fairness to the university and students of withdrawing registration privileges from those who do not prove that they are adequately immunized.
RESPONSE: This requirement is based upon the enabling legislation and thus is not subject to modification.
COMMENT: Mercer County Community College stated that the requirements set forth in N.J.A.C. 9:2-14.9 are overly burdensome in requiring separate hard copy records for each student as opposed to computerized records and records only for those students without exemptions.
RESPONSE: The Board agreed with this comment to the extent that the colleges should only have to keep records on those students who are not exempt from these requirements under the rules. The Board does not agree with the suggestion to allow computerized records as the Department of Health, which is responsible for monitoring these requirements, does not believe that it may do so and provide emergency assistance as the computer systems vary from institution to institution. The Board did also agree to change the requirement set forth in N.J.A.C. 9:2-14.9(c) requiring separate records as long as the confidentiality of other student records is protected.
COMMENT: Mercer County Community College further stated that the requirements constitute an administrative burden to the colleges and another barrier to disadvantaged students as they complicate the admissions process which will result in fewer disadvantaged students attending college.
RESPONSE: The requirements set forth in the rules are based upon the language set forth in the enabling legislation and thus cannot be modified. The Board recognizes these concerns, however, and has taken several steps to attempt to address this issue by making the rules as simple as possible to administer.
COMMENT: A member of the public stated that N.J.A.C. 9:2-14.8, in requiring that a student provide a written statement from an official representative of the student's religious institution, was potentially discriminatory against those individuals with religious beliefs in less organized religions.
RESPONSE: The Board agreed with this comment and accordingly modified the section.
NOTE: For organizational purposes, the language proposed as N.J.A.C. 9:2-14.2(c) was recodified as N.J.A.C. 9:2-14.1(b) without change and N.J.A.C. 9:2-14.12(b) was recodified as N.J.A.C. 9:2-14.2(c) with minor changes.

**Full text** of the adoption follows (additions to proposal indicated in boldface with asterisks *thus*; deletions from proposal indicated in brackets with asterisks *[thus]*).

SUBCHAPTER 14. IMMUNIZATION REQUIREMENTS

9:2-14.1 Applicability
*(a)* This subchapter applies to every new or continuing full-time and part-time undergraduate or graduate student enrolled in a program leading to an academic degree at any public or independent institution of higher education licensed by the New Jersey Board of Higher Education.
*(b) **Nothing in these rules should be construed as limiting the authority of a New Jersey institution of higher education to establish additional requirements for student immunizations and documentation that it determines appropriate.***

9:2-14.2 Exemptions
(a) Students shall be exempt from immunization requirements for medical or religious grounds under conditions set forth in N.J.A.C. 9:2-14.7 and 14.8.
(b) An exemption may be made, *[in]* *at* the discretion of an institution, for the following categories of students:
1. Each student born before 1957;
2. Each student who presents proof of having attended an elementary or secondary school located in New Jersey (such as the school record of immunization, transcript, or diploma)*[. An institution which grants an exemption on this basis should still request that the student furnish a record of immunization in accordance with N.J.A.C. 9:2-14.6]*;
3. *[A]***Each*** student enrolled in a program for which students do not congregate, whether for classes or to participate in institution sponsored events, such as those in programs for individualized home study or conducted solely via electronic media.
(c) *[Nothing in these rules should be construed as limiting the authority of a New Jersey institution of higher education to establish additional requirements for student immunizations and documentation that it determines appropriate.]***In the event of an outbreak or a threat of an outbreak, each institution which has exempted students pursuant to this section may require proof of immunity and administer the measles, mumps, and rubella vaccine or other immunizing agents to each student, other than a student exempt in accordance with (a) above when specifically authorized to do so by the State Department of Health.***

9:2-14.3 Required immunizations
(a) The following immunizations or proof of thereof shall be required pursuant to this subchapter:
1. Measles virus vaccine:
i. Each student shall document immunization of one dose of measles virus vaccine, live attenuated, or any vaccine combination containing measles antigen, that was administered after 1968 and on or after the student's first birthday.
ii. A student vaccinated with killed or an unknown vaccine prior to 1968 shall be revaccinated or produce laboratory proof of measles immunity.
iii. A student who presents serologic laboratory evidence of measles immunity shall not be required to receive measles vaccine.
2. Mumps virus vaccine:
i. Each student shall document immunization of one dose of mumps virus vaccine, live attenuated, or any vaccine combination containing mumps antigen that was administered on or after the student's first birthday.
ii. A student with a history of physician diagnosed mumps disease substantiated by a physician's statement shall not be required to receive a mumps vaccine.
iii. A student who presents serologic laboratory evidence of mumps immunity shall not be required to receive a mumps vaccine.
3. Rubella vaccine:
i. Each student shall document immunization of one dose of rubella virus vaccine, live attenuated, or any vaccine combination containing rubella antigen, that was administered on or after the student's first birthday.
ii. A student who presents serologic laboratory evidence of rubella immunity shall not be required to receive rubella vaccine.

You're viewing an archived copy from the New Jersey State Library.

9:2-14.4  Institutional responsibility for enforcement

(a) Each institution shall require acceptable evidence of immunization as a prerequisite to enrollment of each student who is not exempt from the requirements set forth in N.J.A.C. 9:2-14.2 in accordance with this subchapter.

(b) Each institution shall identify to the New Jersey State Department of Health an institutional official responsible for the administration and enforcement of this subchapter and for the maintenance of immunization records.

(c) Each institution shall establish policies and procedures to enforce student compliance with this subchapter *[within 60 days of enrollment]*.

9:2-14.5  Provisional admission

(a) A student may be admitted and enrolled into the institution on a provisional basis for his or her first term if required immunization documentation is not available at the time of registration.

(b) Prior to the second term, a student must present documentation or acceptable proof of immunity in accordance with the requirements of this subchapter or be reimmunized.

(c) In the event of a vaccine preventable disease outbreak, the institution may, in consultation with the State Department of Health *pursuant to N.J.A.C. 8:57-1.7-1.8*, exclude each student with provisional status from attending classes and participating in institution sponsored activities until proof of adequate immunization is furnished (N.J.A.C. 8:57-1.7 and 1.8).

9:2-14.6  Documents accepted as evidence of immunization

(a) An institution shall accept the following documents as evidence of a student's immunization history provided the specific immunization and the exact date of each immunization administered is listed:

1. An official school immunization record or copy thereof from any primary or secondary school indicating compliance with the immunization requirements of N.J.A.C. 9:2-14.3;

2. A record from any public health department indicating compliance with the immunization requirements of N.J.A.C. 9:2-14.3; or

3. A record signed by a physician licensed to practice medicine or osteopathy in any jurisdiction of the United States or foreign country or other licensed health professional approved by the New Jersey State Department of Health indicating compliance with the immunization requirements of N.J.A.C. 9:2-14.3.

9:2-14.7  Medical exemption to immunization

(a) A student shall be exempt from receiving or documenting receipt of any required immunizations which are medically contraindicated in accordance with N.J.A.C. 9:2-14.2(a). The conditions which comprise valid contraindication to vaccine administration shall be those set forth within the most recent Recommendations of the Immunization Practices Advisory Committee published periodically by the Centers for Disease Control, Atlanta, Georgia 30333. Such students shall present a written statement from a physician licensed to practice medicine or osteopathy within the United States or another foreign country stating that a specific immunization is medically contraindicated for a specific period and the reasons for the medical contraindication which exempt a student from the specific immunization requirements of N.J.A.C. 9:2-14.3.

(b) Each institution shall maintain the written physician's statement as part of the immunization record and shall review it annually to determine whether the exemption shall remain in effect for the next year. When a student's condition for the medical contraindication no longer exists, the student must be immunized.

(c) In the event of a vaccine-preventable disease outbreak, the institution may, in consultation with the State Department of Health, exclude each student with a medical exemption to the specific relevant vaccine from attending class and other institution sponsored activities.

9:2-14.8  Religious exemption from immunization

(a) A student is exempt from documenting the required immunizations set forth in N.J.A.C. 9:2-14.3 if the student submits a written statement to the institution signed by the student *[and an official representative of the student's religious institution]* explaining how immunization conflicts with his or her religious beliefs and such statement is made a part of the student's immunization record.

(b) In the event of a vaccine preventable disease outbreak, the institution may, in consultation with the State Department of Health, exclude each student with a religious exemption from attending class and other institution sponsored activities.

9:2-14.9  Institutional records required

(a) Each institution shall maintain a record of immunizations on each non-exempted student including those in provisional status, in accord with N.J.A.C. 9:2-14.6, *[and on each student described in N.J.A.C. 9:2-14.2(b)2]* in a format specified by the New Jersey Department of Health *[Education]*, in consultation with the Department of Higher Education, which shall include the date of each required immunization.

(b) Each institution shall attach or reference statements pertaining to physician written medical exemptions, religious exemptions, laboratory evidence of immunity or a physician's diagnosis of mumps to this record.

(c) An institution shall maintain a *[complete]* hard copy set of immunization record forms *[separate from each student's academic, medical or personal records]* in a manner accessible to health officials *[to ensure]* *yet ensuring* the confidentiality of each student's other records.

(d) An institution shall, upon request of a student who is transferring to another institution, send the student's record of immunization with any attached statements or a copy thereof to the other institution.

(e) An institution shall, upon request, release to a student his or her immunization record or a copy thereof if the student graduates or leaves the institution for any reason.

(f) The institution shall maintain each student's immunization record for three years following a student's graduation, termination, transfer or departure from the institution.

9:2-14.10  Reports to be provided to the State of New Jersey

(a) Each institution shall send an annual report of the immunization status of their students to the State Department of Health in a form provided by the State Department of Health.

(b) Each institution shall include in this report all students who are covered by these rules and shall submit this report by December 1 of each respective academic year. The report shall document the total number of students attending the institution, the number and groups of students specifically covered by these rules, the number of students with medical exemptions, the number of students with religious exemptions and the number of students not receiving required immunizations.

9:2-14.11  Records available for inspection

(a) Each institution shall maintain centralized records of student immunization status available for inspection by authorized representatives of the State Department of Health, the local board of health in whose jurisdiction the institution is located, or representatives of the Department of Higher Education within 24 hours of notification.

(b) Authorized representatives will only review records to monitor compliance with these rules or in the event a vaccine preventable disease outbreak is threatening.

9:2-14.12  Providing immunization

*[(a)]* Each institution may administer the vaccines required by this subchapter to those students unable to obtain either acceptable vaccine documentation or the measles, mumps, or rubella vaccines from their own health care provider.

*[(b) In the event of an outbreak or a threat of an outbreak, each institution may administer the measles, mumps, and rubella vaccine or other immunizing agents to each student, other than a student exempt in accordance with N.J.A.C. 9:2-14.2, who are not covered by these rules when specifically authorized to do so by the State Department of Health.]*

Case 3:21-cv-15333-ZNQ-TJB   Document 42-5   Filed 01/11/22   Page 6 of 6 PageID: 739

You're viewing an archived copy from the New Jersey State Library.

HIGHER EDUCATION

ADOPTIONS

9:2-14.13  Existing responsibilities of institutions and of the State in controlling communicable disease

(a) Each institution shall report the suspected presence of any reportable communicable disease to the local health officer in conformance with N.J.A.C. 8:57-1.2 and 1.5.

(b) In the event that an outbreak or threatened outbreak exists, the State Commissioner of Health, *pursuant to N.J.A.C. 8:57-1.7-1.8,* designated officers, or local health officers may issue either additional immunization requirements or modify these immunization requirements to meet the emergency. These additional requirements may include obtaining immunization documentation or requiring specific immunizations for each student not covered by these rules. Each student failing to meet these additional requirements may be excluded from attending classes and participating in institution sponsored activities until proof of adequate immunization is furnished (N.J.A.C. 8:57-1.7 and 1.8).

# HUMAN SERVICES

## (a)

### DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES
### Prosthetic and Orthotic Services Manual
### Readoption: N.J.A.C. 10:55

Proposed: January 2, 1990 at 22 N.J.R. 4(b).
Adopted: March 8, 1990 by William Waldman, Acting Commissioner, Department of Human Services.
Filed: March 8, 1990 as R.1990 d.194, **without change**.
Authority: N.J.S.A. 30:4D-6b(6), 7, 7a, b, c; 30:4D-12.
Effective Date: March 8, 1990.
Expiration Date: March 8, 1995.

**Summary** of Public Comments and Agency Responses:
  No comments received.

**Full text** of the readoption may be found in the New Jersey Administrative Code at N.J.A.C. 10:55.

## (b)

### DIVISION OF ECONOMIC ASSISTANCE
### Public Assistance Manual
### Realizing Economic Achievement (REACH) Program; Post-AFDC Child Care
### Adopted Amendment: N.J.A.C. 10:81-14.18

Proposed: January 16, 1990 at 22 N.J.R. 136(a).
Adopted: March 12, 1990 by William Waldman, Acting Commissioner of the Department of Human Services.
Filed: March 13, 1990 as R.1990 d.206, **with substantive changes not requiring additional public notice and comment (see N.J.A.C. 1:30-4.3) and with portions not adopted**.
Authority: N.J.S.A. 44:10-1 et seq.; Federal Family Support Act (FSA) of 1988, Public Law 100-485.
Effective Date: April 2, 1990.
Expiration Date: August 24, 1994.

**Summary** of Public Comments and Agency Responses:
  No comments received.

**Summary** of Agency-Initiated Changes:
  At N.J.A.C. 10:81-14.18(e)4i, several examples have been added to clarify the start date of the eligibility period for post-AFDC child care benefits. N.J.A.C. 10:81-14.18(e)7 is not being adopted. Instead, that paragraph appears as a proposal elsewhere in this issue of the New Jersey Register. This has been done in order to present the sliding fee scale itself referred to at N.J.A.C. 10:81-14.18(e)7i and to set forth specific guidelines, established by the Department of Human Services, which are mentioned at N.J.A.C. 10:81-14.18(e)7ii and set forth in proposed new rules N.J.A.C. 10:81-14.18A and 14.18B.

**Full text** of the adoption follows (additions to proposal indicated in boldface with asterisks *thus*; deletions from proposal indicated in brackets with asterisks *[thus]*).

10:81-14.18  REACH support services: child care

(a) The case manager, the participant, and the lead child care entity will mutually arrange for child care for the REACH participant's child(ren) while the individual is employed or participating in an employment-directed activity, as set forth in the REACH Agreement. Child care arrangements shall be in the best interests of the child. Additional responsibilities of the case manager and lead child care entity are set forth in (h) and (i) below.

1. (No change.)

(b) Payment for the cost of child care to support participation is available through the REACH program at rates established by the Department of Human Services.

1. When child care that is in the best interests of the child has been arranged, the case manager has the responsibility to determine eligibility and authorize payment for the child care that will obtain the maximum Federal financial participation for the particular employment-directed activity. In determining payment of the cost of child care, the following sequence will be applied:

i.-ii. (No change.)

iii. Federally-matched child care costs while an individual is participating in training for employment or in a program of vocational rehabilitation;

iv. The participant's funds for the amount of the required post-AFDC child care fee; and

v. State REACH funds.

2. Payment for child care using State REACH funds may be made when the participant's own source or Federally matched child care are not available or not sufficient to pay for the cost of child care. The priority of funding sources in (b)1ii through v above will be automatically incorporated into every REACH child care payment through fiscal procedures and reporting from the CWA to DEA, unless otherwise specified.

3. Effective date: In all counties, REACH child care payments will be available as each begins the operation of the REACH program, as defined by the Department of Human Services. Payment of the required post-AFDC child care fee will be effective for participants becoming ineligible for AFDC on or after April 1, 1990 in accordance with criteria at (e)3i below.

(c) (No change.)

(d) Duration of payment: REACH child care benefits are routinely available to participants for one year of participation in a REACH employment-directed activity; for the post-employment period after the commencement of employment that does not result in ineligibility for AFDC, that is, while a participant is employed and receiving AFDC, to supplement as necessary, child care paid by the participant as required by the Social Security Act (see (g)4 below); and, after the commencement of employment that results in ineligibility for AFDC, one year post-AFDC child care, subject to payment of a post-AFDC child care fee.

1. (No change.)

2. Post-employment child care: The post-employment period shall start with the first week in which a participant is employed and receiving AFDC and shall expire when the participant is either ineligible for AFDC for reason other than sanction or penalty or is no longer employed. State REACH funds shall be used for the cost of post-employment child care in any month in which the cost of child care exceeds $175.00 for any child age two or older and $200.00 for any child under age two (see (g)3 below).

i. If an employed participant becomes ineligible for AFDC for a reason other than a sanction or similar penalty for noncompliance with AFDC program requirements, the participant shall be eligible for payment of child care through the REACH program for the one year post-AFDC period while the participant is employed, subject to (e)3 below.