**FAEGRE DRINKER BIDDLE & REATH LLP**
Jeffrey S. Jacobson
Andrew B. Joseph
W. Joshua Lattimore
Jennifer P. Montan
600 Campus Drive
Florham Park, New Jersey 07932
(973) 549-7000
(973) 360-9831 (fax)
Jeffrey.Jacobson@faegredrinker.com
Andrew.Joseph@faegredrinker.com
Joshua.Lattimore@faegredrinker.com
Jennifer.Montan@faegredrinker.com
*Attorneys for Rutgers, The State University of New Jersey, et al.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

CHILDREN'S HEALTH DEFENSE, INC PETER CORDI, RAELYNNE MILLER, KAYLA MATEO, ADRIANA PINTO, JAKE BOTHE, ANTHONY LAMANCUSA, JESSICA MOORE, RYAN SANDOR, GIANNA CORALLO, AND RYAN FARRELL, AND DOES 2, 3, 6, 7, 9 AND 13,

Plaintiffs,

v.

RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY, BOARD OF GOVERNORS, RUTGERS SCHOOL OF BIOMEDICAL AND HEALTH SCIENCES, CHANCELLOR BRIAN L. STROM, PRESIDENT JONATHAN HOLLOWAY, in their official capacities,

Defendants.

Civil Action No. 3:21-cv-15333-ZNQ-TJB

Civil Action

(Document Filed Electronically)

**<u>Return Date:</u> February 7, 2022**

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(B)(6)**

**TABLE OF CONTENTS**

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. Plaintiffs Misstate The Rights At Issue In Their Case .......... 2

A. *Jacobson* forecloses Plaintiffs' argument that they have a right to attend Rutgers without complying with Rutgers' vaccination policy .......... 3

B. *Jacobson* held that courts should defer to public health officials on questions of vaccines' safety and efficacy. .......... 4

C. This is not an "unconstitutional conditions" case .......... 7

D. "Unvaccinated" is not a protected class .......... 8

II. New Jersey Law Empowers Rutgers To Mandate ACIP-Recommended Vaccinations, and ACIP Recommended the COVID-19 Vaccines .......... 9

III. Plaintiffs Have No Claim for Breach of Contract or Equitable Estoppel .......... 12

A. Plaintiffs have no claim for breach of contract .......... 12

B. Plaintiffs have no claim for equitable estoppel .......... 13

CONCLUSION .......... 14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 564 Fed. Appx. 672 (3d Cir. 2014) .......... 14

*Beukas v. Bd. of Trs. of Fairleigh Dickinson Univ.*, 255 N.J. Super. 420 (App. Div. 1992) .......... 12

*Burcham v. City of Los Angeles*, No. 2:21-cv-07296-RGK-JPR, 2022 WL 99863 (C.D. Cal. Jan. 7, 2022) .......... 11

*Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603 (2020) .......... 4

*Children's Health Defense, Inc. v. Rutgers State Univ. of N.J.*, No. 21-15333 (ZNQ), 2021 WL 4398743 (D.N.J. Sept. 27, 2021) .......... *passim*

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .......... 3

*Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261 (1990) .......... 7

*F.C.C. v. Beach Comms., Inc.*, 508 U.S. 307 (1993) .......... 6

*Goldfarb v. Solimine*, 245 N.J. 326 (2021) .......... 13

*Halgren v. City of Naperville*, No. 21-CV-05039, 2021 WL 5998583 (N.D. Ill. Dec. 19, 2021) .......... 3

*Jacobson v. Massachusetts*, 197 U.S. 11 (1905) .......... *passim*

*Johnson v. Brown*, No. 3:21-CV-1494-SI, 2021 WL 4846060 (D. Or. Oct. 18, 2021) .......... 12

*Klaassen v. Trs. of Ind. Univ.*, No. 1:21-CV-238 DRL, 2021 WL 3073926 (N.D. Ind. July 18, 2021) .......... *passim*

*Klaassen v. Trs. of Ind. Univ.*, No. 21-2326, 2022 WL 213329 (7th Cir. Jan. 25, 2022) .......... 3

*Klaassen v. Trustees of Indiana University*, 7 F.4th 592 (7th Cir. 2021) .......... *passim*

*Koontz v. St. John's River Water Mgmt. Dist.*, 570 U.S. 595 (2013) .......... 7

*Lorenz c. CSX Corp.*, 1 F.3d 1406, 1413 (3d Cir. 1993) .......... 14

*Marbury v. Madison*,
5 U.S. 137 (1803)....................3

*Norris v. Stanley*,
No. 1:21-cv-756, 2021 WL 3891615 (W.D. Mich. Aug. 31, 2021).................... 11

*Norwegian Cruise Line Holdings, Ltd. v. Rivkees*,
No. 21-22492-CIV, 2021 WL 3471585 (S.D. Fla. Aug. 8, 2021)....................8

*Phillips v. City of New York*,
27 F. Supp. 3d 310 (E.D.N.Y. 2014)....................8

*Potter v. Newkirk*,
No. 17-08478, 2020 WL 6144756 (D.N.J. Oct. 20, 2020).................... 12, 13

*Prudential Ins. Co. of Am v. Bank of Am., Nat'l Ass'n*,
14 F. Supp. 3d 591 (D.N.J. 2014).................... 14

*Smith v. Biden*,
No. 1:21-cv-19457, 2021 WL 5195688 (D.N.J. Nov. 8, 2021)....................6

*Washington v. Glucksberg*,
521 U.S. 702 (1997)....................7

**STATUTES, RULES & REGULATIONS**

21 U.S.C. § 360bbb-3(e)(1)(A).................... 11

N.J.A.C. § 8:57-6.4.................... 4, 9, 10

N.J.A.C. § 8:57-6.21.................... 10

N.J.A.C. § 8.57-6.16....................9

N.J.S.A. 18A:64M-1 *et seq.*....................6

N.J.S.A. § 18A:61D-1.................... 4, 9

**OTHER AUTHORITIES**

*Q&A for Comirnaty (COVID-19 Vaccine mRNA)*, Food and Drug Administration, https://www.fda.gov/vaccines-blood-biologics/qa-comirnaty-covid-19-vaccine-mrna (last updated Dec. 7, 2021).................... 12

# INTRODUCTION

The United States and New Jersey Supreme Courts both have held that state vaccine mandates do not violate individual constitutional rights. New Jersey law authorizes Rutgers to mandate any vaccine that the federal Advisory Committee on Immunization Practices ("ACIP") has recommended, and the ACIP has strongly recommended the COVID-19 vaccines. Plaintiffs' opposition ("Opp.") to Rutgers' motion to dismiss their claims asks this Court *not* to follow the Supreme Court's controlling decision, *not* to construe New Jersey law according to its plain terms, and to *reject* the ACIP's recommendation. No basis exists for this. The Court correctly found Plaintiffs' arguments unlikely to succeed when it denied their request for injunctive relief. *See Children's Health Defense, Inc. v. Rutgers State Univ. of N.J.*, No. 21-15333 (ZNQ), 2021 WL 4398743 (D.N.J. Sept. 27, 2021) ("*CHD*"). Nothing has changed.

For decades, students have had to show evidence of vaccination, or else obtain a waiver, as a condition of attendance. Until now, vaccine requirements had not been challenged at Rutgers or any other New Jersey university. *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), which upheld against constitutional challenges a state law mandating vaccination without exceptions, has stood the test of time, and in it the Supreme Court anticipated and rejected every one of Plaintiffs' present-day anti-vaccine arguments. Plaintiffs challenge the safety and efficacy of the ACIP-recommended COVID-19 vaccines, just as the *Jacobson* plaintiff questioned the mandatory smallpox vaccine. The Supreme Court held that states are justified in making mandate decisions based on the best scientific evidence available and that they need not defer these decisions until the evidence in support is uncontroverted. And although the Supreme Court has had multiple

occasions to revisit *Jacobson*, including during the COVID pandemic, it has not undermined states' longstanding vaccine mandate authority at all.

Plaintiffs may disagree with the decisions Rutgers made in the best interests of its community during the pandemic, but they have no right to attend Rutgers without following the rules. It does not matter whether Plaintiffs allege claims under the federal Constitution (they seem to have dropped their claims under the New Jersey Constitution), for "breach of contract," or for estoppel. Their claims have no merit, and the Court should dismiss the First Amended Complaint ("FAC") with prejudice.

## ARGUMENT

### I. Plaintiffs Misstate The Rights At Issue In Their Case

Plaintiffs' brief argued extensively that they "have a constitutionally guaranteed right to informed consent and to refuse unwanted medical treatment." Opp. at 5. This is not true; the Supreme Court held that the Constitution does not preclude compulsory vaccination during a public health crisis. *See Jacobson*, 197 U.S. at 24-31. Regardless, the issue in this case is not whether Plaintiffs are free to decline the vaccine, but whether they can compel Rutgers to matriculate them if they do so. They cannot. As the Seventh Circuit noted in *Klaassen v. Trustees of Indiana University*, 7 F.4th 592, 593 (7th Cir. 2021), "vaccination requirements, like other public-health measures, have been common in this nation." Rutgers has not violated Plaintiffs' rights by requiring them to be vaccinated, or to obtain a waiver, as a condition of attendance.

#### *A.* **Jacobson** *forecloses Plaintiffs' argument that they have a right to attend Rutgers without complying with Rutgers' vaccination policy*

As this Court already has held, both the setting of this case (a higher education vaccine mandate, not compulsory vaccination for the general public), and allowance for

religious and medical exemptions, makes Rutgers' vaccine mandate easier to uphold than the law in *Jacobson*. *See CHD*, 2021 WL 4398743, at *5-6. The Seventh Circuit held the same in *Klaassen*. When students choose to attend a public university, they agree to "surrender property" to do so and, once there, to submit to professors' instructions to "read things they prefer not to read and write things they prefer not to write." *Klaassen*, 7 F.4th at 593. The court thus found it "hard to see a greater problem with" a school's imposing "medical conditions that help all students remain safe when learning." *Id.* at 594. Further, as also was true in *Klaassen*, all but one of the Plaintiffs "have claimed the religious exemption,"[1] and therefore "just need to wear masks and be tested, requirements that are not constitutionally problematic." *Id.* at 593.[2]

Plaintiffs call *Jacobson* "antiquated," Opp. at 9, referring to its age, but its reasoning is no more outdated than *Marbury v. Madison*, 5 U.S. 137 (1803). Neither *Klaassen* nor any other court has questioned the core holding of *Jacobson* that states may mandate vaccines. Plaintiffs cite *Halgren v. City of Naperville*, No. 21-CV-05039, 2021 WL 5998583 (N.D. Ill. Dec. 19, 2021), but the *Halgren* court rebuffed the same arguments that Plaintiffs make here. *See id.* at *23-33 (declining to apply strict scrutiny and holding that Illinois had a

[1] Rutgers will not belabor the standing issue because it agrees that "Adriana Pinto has standing to bring all claims." Opp. at 3. The Seventh Circuit has dismissed *Klaassen* as moot because, unlike Ms. Pinto, the non-exempt plaintiff in *Klaassen* conceded that she "ha[s] no plans to return as a student to Indiana University" regardless of its vaccination policies. *Klaassen v. Trs. of Ind. Univ.*, No. 21-2326,2022 WL 213329, at *1 (7th Cir. Jan. 25, 2022). Plaintiffs here argue that students who have received religious exemptions retain standing to sue because they fear revocation of their exemptions. *See* Opp. at 5. This hypothetical does not suffice to confer standing and did not do so in *Klaassen*. *See id.*; *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 416 (2013).

[2] The lower court in *Klaassen*, like the Seventh Circuit, "decline[d]. . . to expand substantive due process rights to include the rights not to wear a mask or to be tested for a virus," which are "transient and trivial inconveniences." *Klaassen v. Trs. of Ind. Univ.*, No. 1:21-CV-238 DRL, 2021 WL 3073926, at *39 (N.D. Ind. July 18, 2021). "Indiana University has a legitimate interest in promoting the health and safety of its students. "[M]asks and testing are rationally related" to those interests. *Id.* at *40.

rational basis to require healthcare workers to take the vaccine). Plaintiffs also cite Justice Alito's dissent in *Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603, 2608 (2020), but that case did not involve a vaccine mandate. It addressed special restrictions on worship services that the Nevada government did not impose on secular activities, including casino gambling.

### *B.* **Jacobson** *held that courts should defer to public health officials on questions of vaccines' safety and efficacy.*

Plaintiffs' brief trotted out a series of easily debunked anti-vaccine talking points, but the inaccuracy of their claims aside, Plaintiffs are wrong about the legal standard applicable to their claims. They contend that *Jacobson* holds it is for judges to decide if vaccines are "safe, efficacious, [and] necessary" before states may mandate them. Opp. at 11. But that is the *opposite* of what *Jacobson* held. *Jacobson* requires judicial deference to rationally-based public health decisions, like mandating an ACIP-recommended vaccine.

Rutgers in March 2021, like the city of Cambridge in 1902, acted on the "common belief . . . that [COVID-19 vaccines] ha[ve] a decided tendency to prevent the spread of this fearful disease and to render it less dangerous to those who contract it." *Jacobson*, 197 U.S. at 34. Rutgers has every reason to believe that its mandate decision will stand the test of time, and the State of New Jersey entrusted Rutgers and other universities the authority to mandate ACIP-recommended vaccines. *See* N.J.S.A. § 18A:61D-1; N.J.A.C. § 8:57-6.4. Plaintiffs here, like the plaintiffs in *Jacobson*, seek a different policy outcome, seeing "little or no value to vaccination as a means of preventing the spread of [COVID-19]" and "think[ing] that vaccination causes other diseases of the body." *Id.* at 30. To the extent that Plaintiffs' contentions amount to a theory on their part that Rutgers should have

returned students to campus in Fall 2021 without a vaccine mandate, *Jacobson* addressed this very concept of choosing between a consensus view on one hand and a fringe view on the other: Cambridge then, like Rutgers now, "was not unaware of these opposing theories, and was compelled, of necessity, to choose between them." *Id.* at 30.[3]

*Jacobson*'s having placed responsibility for public health decisions in the hands of policy-makers and not judges means a courtroom is not a proper forum for Plaintiffs' attempts to cast doubt on the vaccines' safety and efficacy. *Jacobson* held that "[t]he possibility that the [common] belief [about safety or efficacy] may be wrong, and that science may yet show it to be wrong, is not conclusive." *Id.* at 35. "With ever evolving COVID-19 science, more will be known tomorrow, next month, and next year, but a courtroom is no place for guesswork . . . ." *Klaassen*, 2021 WL 3073926, at *31. Plaintiffs' misguided arguments that the ACIP should not have recommended the COVID-19 vaccine would be better directed to the ACIP or the Centers for Disease Control.

The *Jacobson* court made clear that "[i]t is no part of the function of a court or a jury to determine which one of two modes"—to mandate a vaccine or to choose another path to promote public health—"was likely to be the most effective for the protection of the public against disease." 197 U.S. at 30. Nor was the *Jacobson* Court "prepared to hold that a minority, residing or remaining in any city or town where [a contagion] is prevalent, and enjoying the general protection afforded by an organized local government, may thus defy

---

[3] Rutgers cannot allow to go unremarked Plaintiffs' attempt to rely on the tragic death of a seven-year-old child to contest the vaccines' safety. *See* Opp. at 14 & n.1, *citing* https://medalerts.org/vaersdb/findfield.php?IDNUMBER=1975356 (last visited January 17, 2022). As the report states, the child had influenza. The child had received a COVID-19 vaccine eleven days before her death, but nothing in the report suggests that the vaccination caused, contributed to, or had any part at all in her death.

the will of its constituted authorities, acting in good faith for all, under the legislative sanction of the State." *Id.* at 37.[4]

This does not mean, and Rutgers does not argue, that the Constitution "permit[s] the government to declare a never-ending public emergency and expand its powers arbitrarily." *Klaassen*, 2021 WL 3073926, at *22. Rutgers agrees that "law [and] policy should be written with a mindset that medicine and science, and the circumstances that they create, will evolve." *Id.* But in March 2021, Rutgers clearly had a rational basis to require students to take an ACIP-recommended COVID-19 vaccination (or to obtain a medical or religious exemption) if those students made the decision to return to campus for in-person instruction for the Fall 2021 semester. *See Smith v. Biden*, No. 1:21-cv-19457, 2021 WL 5195688 (D.N.J. Nov. 8, 2021) (applying rational basis review to executive orders that mandated vaccination for federal employees and contractors).

As this Court correctly held, Rutgers' policy bore "a real and substantial relation" to its "need to protect public health." *CHD*, 2021 WL 4398743, at *5. Plaintiffs rightly conceded that the purposes of Rutgers' policy "are legitimate, even compelling state interests." Opp. at 12. Plaintiffs' preference that Rutgers nevertheless should have foregone a vaccine mandate in favor of "temperature testing [and] self-administered . . .

[4] Plaintiffs' brief referenced their claims that Rutgers has "financial relationships with COVID-19 vaccine manufacturers"— principally, Rutgers' participation as a vaccine trial site, as well as occasional grants from pharmaceutical companies—which they say undermine the rational basis for imposing a vaccine mandate. Opp. at 12. Of course, one of Rutgers' primary academic missions, as recognized by the Legislature, is to conduct scientific research, including clinical trials. *See generally* New Jersey Medical and Health Sciences Education Act, N.J.S.A. 18A:64M-1 *et seq.* Plaintiffs do not plausibly explain how Rutgers' actions to fulfill its purpose as a public research university undermines its interest in protecting its students from a contagion by mandating a federally recommended vaccine. It is Plaintiffs' "burden to negate every conceivable basis that might support" the university's decision. *See F.C.C. v. Beach Comms., Inc.*, 508 U.S. 307, 307 (1993) (holding under "rational-basis review . . . those attacking [a rule's] rationality have the burden to negate every conceivable basis that might support it").

wellness checks," Opp. at 17, does not suffice as a basis for judicial reversal of Rutgers' decision. "This is precisely the debate of medical professionals that state policymakers, including authorized arms of the state, are best suited to resolve in setting policy for constituents, including here for the students . . . ." *Klaassen*, 2021 WL 3073926, at *29.

### *C. This is not an "unconstitutional conditions" case*

Plaintiffs argue that if they have a constitutional right to refuse a COVID-19 vaccination (which they do not), Rutgers cannot coerce them to forego that right by making it a condition of their matriculation. *See* Opp. at 18, *citing Koontz v. St. John's River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013). *Klaassen* considered and rejected this same "unconstitutional conditions" argument. The plaintiffs there, like Plaintiffs here, cited *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261, 279 (1990), and *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997), both of which addressed the extent of a person's right to refuse lifesaving medical treatment. Vaccines, by contrast, "address a collective enemy, not just an individual one." *Klaassen*, 2021 WL 3073926, at *24. "A vaccine is implemented as a matter of public health, and historically hasn't been constitutionally deterred from state mandate." *Id.*, *citing Jacobson*, 197 U.S. at 30-31.

"Given over a century's worth of rulings" rejecting challenges to vaccination mandates, not to mention that "the Constitution never provides a fundamental right to a collegiate education," the *Klaassen* plaintiffs' unconstitutional conditions argument failed. *Klaassen*, 2021 WL 3073926, at *24. When universities impose vaccination mandates on students who prefer not to be vaccinated, this may "present[] the students with a difficult choice" that students may wish to avoid, but they are not "forcing the students to undergo injections." *Id.* at 25. Requiring students who do not wish to be vaccinated to "transfer

to a different school, or forego school for the semester or altogether" to avoid vaccination "doesn't amount to coercion." *Id.*

As in *Klaassen*, whether Rutgers may mandate vaccines on all students, without regard to their religious beliefs, is not at issue. Rutgers "provides exemptions unlike the [law] in *Jacobson*." *CHD*, 2021 WL 4398743, at *5. But students who do not qualify for exemptions have no right to attend Rutgers without being vaccinated. If prospective students wish not to take a COVID-19 vaccination for reasons other than religious beliefs or a medical need, they "'may go elsewhere' and seek other educational opportunities." *Id.* at *6 (citation omitted).

### *D. "Unvaccinated" is not a protected class*

Plaintiffs' Equal Protection Clause claims fail for the simple reason that choosing not to be vaccinated does not put one in a legally protected class. *See, e.g., Norwegian Cruise Line Holdings, Ltd. v. Rivkees*, No. 21-22492-CIV, 2021 WL 3471585, at *14 (S.D. Fla. Aug. 8, 2021) ("[T]he unvaccinated population is not a protected class that enjoys a fundamental Constitutional right to remain unvaccinated."); *Phillips v. City of New York*, 27 F. Supp. 3d 310, 313 (E.D.N.Y. 2014) (same). Accordingly, the restrictions Rutgers placed on exempt and therefore unvaccinated students—*i.e.*, barring them from living communally in Rutgers dormitories—are subject only to the rational basis test. Constant masking is not possible in a dormitory setting where hundreds of students are sleeping and using common bath facilities in close quarters. "A university will have trouble operating when each student fears that everyone else may be spreading disease." *Klaassen*, 7 F.4th at 594. Plaintiffs' only response in opposing these commonsense measures is to say that the Court must assume as true "that COVID-19 is not a vaccine-preventable disease." Opp. at 30.

The Court need not accept an allegation of purported medical "fact," however, that contradicts the guidance of government at every level.

## II. New Jersey Law Empowers Rutgers To Mandate ACIP-Recommended Vaccinations, and ACIP Recommended the COVID-19 Vaccines

N.J.S.A. § 18A:61D-1 obligates Rutgers to require every student to provide proof of certain vaccinations. Beyond an enumerated list of mandatory vaccinations (measles, mumps, etc.), the implementing regulation, N.J.A.C. § 8:57-6.4, allows Rutgers "to establish additional requirements for student immunizations and documentation that [it] shall determine appropriate," so long as the immunizations are "recommended by the ACIP." Plaintiffs do not and cannot dispute the ACIP's strong recommendation, echoed by public officials at all levels of government, that every eligible person should become vaccinated against COVID-19. Nothing in the regulation, moreover, distinguishes between ACIP-recommended vaccines in Emergency Use Authorization ("EUA") status and those that have received full governmental approval.[5]

Plaintiffs ask the Court not to interpret the regulation according to its plain terms. They contend the words "establish additional requirements for student immunizations and documentation that such institution shall determine appropriate" allow Rutgers only to adopt "changes in the types of the documentation that should be accepted as proof of vaccination." Opp. at 27. That, however, is not what the plain words of the regulation say or mean. Plaintiffs, moreover, tried this same flawed argument at the preliminary

---

[5] Rutgers noted in its opening brief (at 27-28) that N.J.S.A. § 18A:61D-1 and N.J.A.C. § 8.57-6.16 permit evidence of natural immunity in lieu of vaccinations only where students can provide "laboratory evidence of immunity," but as of now there exist no approved tests to determine natural immunity or protection against COVID-19. Plaintiffs repeated their argument that Rutgers discriminates against students who contend they have natural immunity (*see* Opp. at 19), but they did not respond to the absence of approved tests that would provide legally sufficient "laboratory evidence."

injunction stage. *See* ECF No. 24 at 9-11 ("[T]his Court should not be so persuaded that a cryptic 30+ year old regulation gave Rutgers and every college in the State, the broad and express authority to mandate whatever vaccines they see fit."). The Court correctly rejected it and should do so again.

Plaintiffs' Opp. (at 25-26) cites other laws that authorize the Commissioner of Health to mandate vaccines during public health emergencies *for the general public* and not just for university students. Those statutes are not at issue in this case. Plaintiffs also cite N.J.A.C. § 8:57-6.21, which authorizes the Commissioner to impose additional vaccination requirements on higher education students during viral outbreaks and to suspend educational vaccine mandates in the event of vaccine shortages. *See* Opp. at 26. Plaintiffs appear to contend that because the Commissioner has this authority, the separate regulation on which Rutgers relies, N.J.A.C. § 8:57-6.4, cannot have authorized Rutgers to mandate vaccines if the Commissioner has not mandated them. The two regulations, however, are not in conflict. One authorizes the Commissioner not to wait for an ACIP recommendation before mandating a vaccine; the other gives narrower authority to Rutgers and other institutions of higher education, which may mandate only ACIP-recommended vaccines. Nor is there anything incongruous in the State delegating to university administrations the same kinds of authority it delegates to "local boards of health." Opp. at 31. Universities effectively form their own communities, and in Rutgers' case, that community is quite large.

Separately, Plaintiffs contend that to the extent the COVID vaccines had only EUA status from the Food and Drug Administration at the time Rutgers imposed the mandate,

a state law cannot require them to take the vaccine because a federal law, 21 U.S.C. § 360bbb-3(e)(1)(A), requires the Secretary of Health and Human Services to "establish conditions" to inform recipients in writing "of the option to accept or refuse administration of the product" and "of the consequences, if any, of refusing administration of the product." This, too, is a rehash of Plaintiffs' failed arguments at the injunction stage. *See* ECF No. 24 at 13-14. As the court stated in *Klaassen*, "the informed consent requirement under the EUA statute only applies to medical providers," students presumably received "the option to accept or refuse the vaccine [from] their medical providers," and "[t]he university isn't forcing the students to undergo injections." *Klaassen*, 2021 WL 3073926, at *25. The student plaintiffs in *Klaassen* did not dispute that "before the shot reaches their arms, they are made aware of the risks and the option to refuse." *Id.* Plaintiffs here do not contend otherwise.

Further, before Rutgers' vaccination deadline, the FDA granted full (non-EUA) approval to Pfizer's vaccine. This moots Plaintiffs' argument. *See Burcham v. City of Los Angeles*, No. 2:21-cv-07296-RGK-JPR, 2022 WL 99863, at *8 (C.D. Cal. Jan. 7, 2022) (FDA approval of Pfizer vaccine mooted EUA claims); *Norris v. Stanley*, No. 1:21-cv-756, 2021 WL 3891615, at *2 (W.D. Mich. Aug. 31, 2021) (same). Plaintiffs attempt to argue that the Pfizer vaccine to which the FDA granted full approval is "not currently available," Opp. at 13, but the FDA's own "Q&A" debunks this claim. To the question "How is Comirnaty (COVID-19 Vaccine, mRNA) related to the Pfizer-BioNTech COVID-19 Vaccine?," the FDA answered that the two formulations "can be used interchangeably without presenting any safety or effectiveness concerns" and "providers can use doses

distributed under EUA to administer the vaccination series as if the doses were the [fully approved] licensed vaccine."[6] *See also, e.g.*, *Johnson v. Brown*, No. 3:21-CV-1494-SI, 2021 WL 4846060, at *4-*5 (D. Or. Oct. 18, 2021) (discussing FDA approval of Pfizer vaccine and the interchangeability of the EUA formulation and the fully licensed formulation; the two are "chemically and biologically identical").

## III. Plaintiffs Have No Claim for Breach of Contract or Equitable Estoppel

Plaintiffs' brief gave only cursory attention to their claims that Rutgers contracted with them not to mandate the vaccine or else made an extra-contractual promise on which Plaintiff Pinto relied to her detriment. *See* Opp. at 32-35. Both claims fail.

### *A. Plaintiffs have no claim for breach of contract*

Plaintiffs do not seem to contend that a "contract" governing their matriculation for the Fall 2021 semester existed prior to March 2021, when Rutgers announced the vaccine mandate. Any plaintiff claiming breach of contract "must, at a minimum, identify the contracts and provisions breached." Opening Br. at 29, *quoting Potter v. Newkirk*, No. 17-08478, 2020 WL 6144756, at *13 (D.N.J. Oct. 20, 2020). Plaintiffs' defense of their claim posits that "university bulletins" may form part of a contract between a university and its students. Opp. at 32, *citing Beukas v. Bd. of Trs. of Fairleigh Dickinson Univ.*, 255 N.J. Super. 420 (App. Div. 1992). That assertion is wrong, but regardless, Plaintiffs nowhere identify any "university bulletin," or any other document, that is at odds with Rutgers' March 2021 statement that students would not be able to matriculate in August 2021 without being vaccinated against COVID-19. "Failure to allege the specific provisions of

---

[6] *Q&A for Comirnaty (COVID-19 Vaccine mRNA)*, U.S. Food & Drug Admin., https://www.fda.gov/vaccines-blood-biologics/qa-comirnaty-covid-19-vaccine-mrna (last updated Dec. 7, 2021).

the contract breached is grounds for dismissal." *Potter*, 2020 WL 6144756, at *13. Plaintiffs find it significant that Rutgers did not state in a pre-pandemic writing to students its ability to "alter public health measures as a condition of enrollment." Opp. at 33. As noted above, however, state regulations clearly provide for this authority, and Plaintiffs again fail to identify any contractual provision prohibiting Rutgers from taking such action.

### *B. Plaintiffs have no claim for equitable estoppel*

The only plaintiff claiming equitable estoppel is Ms. Pinto. The Court already rejected her claim that she believed she could avoid the mandate by enrolling only in a class that the professor chose to conduct remotely. As the Court wrote in denying injunctive relief, "Rutgers defines what constitutes a fully remote student, not Ms. Pinto, and she does not meet Rutgers' definition." *CHD*, 2021 WL 4398743, at *6.

Ms. Pinto separately tries to rely on statements that Dr. Vicente Gracias made in a Rutgers "Our Path Forward" video in January 2021, before any vaccines were available to the general public. Notably, the FAC does not allege that Ms. Pinto saw and relied on this video; it alleges only that Plaintiffs Doe 2 and Jessica Moore (who received religious objections) saw and relied on it. *See* FAC ¶¶ 19, 28. But, even if Ms. Pinto could allege reliance, her characterizations of words on a publicly accessible video are demonstrably wrong. Dr. Gracias stated that "the vaccine at this point is not mandatory across the United States or here in New Jersey," and "is not mandatory at Rutgers." Those were present-tense statements made in January 2021. Dr. Gracias made no "clear and definite promise" that Rutgers would not mandate the vaccine in the future, as Plaintiffs admit they must be able to prove as the first element of an estoppel claim. Opp. at 33, *citing Goldfarb v. Solimine*, 245 N.J. 326, 339-40 (2021).

Further, even if Dr. Gracias had made a clear and definite promise and did so with the expectations that students would rely on it in making their Fall 2021 plans (which he did not), and even if such reliance would have been reasonable (which it would not have been), the fourth element of an estoppel claim is "definite and substantial detriment." Opp. at 33. The Court need not accept Ms. Pinto's bare assertion that five months was not enough time for her to make other arrangements.

Just as the Constitution does not preclude Rutgers' vaccine mandate, neither does any contract or extra-contractual promise.

## CONCLUSION

Rutgers has nearly 70,000 students, and those students nearly unanimously have been vaccinated against COVID-19. This case initially purported to be a well-intentioned challenge to Rutgers' COVID-19 vaccine mandate brought by a handful of Rutgers students. Plaintiffs' opposition brief dropped the mask, however, demonstrating that this case is much more about CHD's desire to portray all vaccinations as "harm[ful] and injur[ious]." Opp. at 1. They are wrong, but this Court is not the place for that debate. For the foregoing reasons, as well as those stated in Rutgers' opening brief, the Court should put an end to this case once and for all by dismissing Plaintiffs' First Amended Complaint with prejudice.[7]

---

[7] "Dismissal . . . with prejudice is appropriate if amendment would be inequitable or futile." *Prudential Ins. Co. of Am v. Bank of Am., Nat'l Ass'n*, 14 F. Supp. 3d 591, 596 (D.N.J. 2014). Among the reasons to find further amendments futile is "failure to cure deficiencies by amendments previously allowed." *Lorenz c. CSX Corp.*, 1 F.3d 1406, 1413 (3d Cir. 1993). "Denial of leave to amend a complaint is especially appropriate where a party has already been given the opportunity to amend the complaint." *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 564 Fed. Appx. 672, 673 (3d Cir. 2014).

Dated: January 31, 2022

Respectfully submitted,

*/s/ Jeffrey S. Jacobson*

Jeffrey S. Jacobson
Andrew B. Joseph
W. Joshua Lattimore
Jennifer P. Montan
**FAEGRE DRINKER BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, New Jersey 07932
(973) 549-7000
(973) 360-9831 (fax)
Jeffrey.Jacobson@faegredrinker.com
Andrew.Joseph@faegredrinker.com
Joshua.Lattimore@faegredrinker.com
Jennifer.Montan@faegredrinker.com

*Attorneys for Rutgers, The State University of New Jersey, et al.*