

faegredrinker.com

**Jeffrey S. Jacobson**
Partner
jeffrey.jacobson@faegredrinker.com
212-248-3191 direct

Faegre Drinker Biddle & Reath LLP
1177 Avenue of the Americas, 41st Floor
New York, New York  10036
+1 212 248 3140 main
+1 212 248 3141 fax

August 2, 2022

**BY ECF**

Hon. Zahid N. Quraishi, U.S.D.J.
United States District Court
for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

> Re: Children's Health Defense, Inc. v. Rutgers, No. 3:21-cv-15333 (D.N.J.)

Dear Judge Quraishi:

On behalf of Rutgers, the State University of New Jersey ("Rutgers"), as supplemental authority in support of Rutgers' Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. No. 39), I respectfully submit the attached decision of the United States Court of Appeals for the Second Circuit in *Goe v. Children's Health Defense*, __ F.4th __, No. 21-0537-cv, 2022 WL 3007919 (2d Cir. July 29, 2022).  The Second Circuit upheld New York State's regulations that clarified and narrowed the availability of medical exemptions to the State's vaccination mandate for elementary and secondary schools.  Although the statutory and regulatory context of *Goe* is not perfectly aligned with the vaccine mandate Children's Health Defense ("CHD") protests in the instant case, the Second Circuit held that rational basis review, not strict scrutiny, applies to challenges like those made by CHD here.  *See id.* at *7-*8.  The court also held that the State of New York had a legitimate interest in protecting communities from serious illness and that the vaccine mandate was reasonably related to that interest.  *See id.* at *8-*10.

Respectfully submitted,

Jeffrey S. Jacobson

2022 WL 3007919
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Jane GOE, Sr., on behalf of herself and her minor child, Jane Doe, on behalf of herself and her minor child, Jane Boe, Sr., on behalf of herself and her minor child, John Coe, Sr., on behalf of himself and his minor children, Jane Coe, Sr., on behalf of herself and her minor children, John Foe, Sr., on behalf of himself and his minor child, Jane Loe, on behalf of herself and her medically fragile child, Jane Joe, on behalf of herself and her medically fragile child, Children's Health Defense, Plaintiffs-Appellants,
v.
Howard ZUCKER, in his official capacity as Commissioner of Health for the State of New York, Elizabeth Rausch-Phung, M.D., in her official capacity as Director of the Bureau of Immunizations at the New York State Department of Health, New York State Department of Health, Three Village Central School District, Cheryl Pedisich, acting in her official capacity as Superintendent, Three Village Central School District, Corinne Keane, acting in her official capacity as Principal, Paul J. Gelinas Jr. High School, Three Village Central School District, Lansing Central School District, Chris Pettograsso, acting in her official capacity as Superintendent, Lansing Central School District, Christine Rebera, acting in her official capacity as Principal, Lansing Middle School, Lansing Central School District, Lorri Whiteman, acting in her official capacity as Principal, Lansing Elementary School, Lansing Central School District, Penfield Central School District, Dr. Thomas Putnam, acting in his official capacity as Superintendent, Penfield Central School District, South Huntington School District, Dr. David P. Bennardo, acting in his official capacity as Superintendent, South Huntington School District, Br. David Migliorino, acting in his official capacity as Principal, St. Anthony's High School, South Huntington School District, Ithaca City School District, Dr. Luvelle Brown, acting in his official capacity as Superintendent, Ithaca City School District, Susan Eschbach, acting in her official capacity as Principal, Beverly J. Martin Elementary School, Ithaca City School District, Coxsackie-Athens School District, Randall Squier, acting in his official capacity as Superintendent, Coxsackie-Athens School District, Freya Mercer, acting in her official capacity as Principal, Coxsackie-Athens School District, Albany City School District, Kaweeda G. Adams, acting in her official capacity as Superintendent, Albany City School District, Michael Paolino, acting in his official capacity as Principal, William S. Hackett Middle School, Albany City School District; and all others similarly situated, Defendants-Appellees, Shenendehowa Central School District, Dr. L. Oliver Robinson, acting in his official capacity as Superintendent, Shenendehowa Central School District, Sean Gnat, acting in his official capacity as Principal, Koda Middle School, Shenendehowa Central School District, Andrew Hills, acting in his official capacity as Principal, Arongen Elementary School, Shenendehowa Central School District, Defendants.[*]

Docket No. 21-0537-cv
|
August Term 2021
|
Argued: November 9, 2021
|
Decided: July 29, 2022

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK (Sannes, J.)

**Attorneys and Law Firms**

Sujata S. Gibson, The Gibson Law Firm, PLLC, Ithaca, New York (Michael H. Sussman and Jonathan R. Goldman, Sussman and Associates, Goshen, New York, and Mary Holland and Robert F. Kennedy, Jr., Children's Health Defense, New York, New York, on the brief), for Plaintiffs-Appellants.

Beezly J. Kiernan, Assistant Solicitor General of Counsel (Barbara D. Underwood, Solicitor General, Jeffrey W. Lang, Deputy Solicitor General, on the brief), for Letitia James, Attorney General of the State of New York, Albany, New York, for Defendants-Appellees Zucker, Rausch-Phung, and the New York State Department of Health.

Adam I. Kleinberg, Sokoloff Stern, LLP, Carle Place, New York (Gregg T. Johnson, April J. Laws, Loraine C. Jelinek, Johnson Laws, LLC, Clifton Park, New York, on the brief), for Defendants-Appellees Three Village Central School District, Pedisich, Keane, South Huntington School District, Bennardo, Ithaca City School District, Brown, Eschbach, Albany City School District, Adams, and Paolino.

Roxanne L. Tashjian (James G. Ryan, on the brief) Cullen and Dykman LLP, Garden City, New York, for Defendants-Appellees Lansing Central School District, Pettograsso, Rebera, Whiteman, Penfield Central School District, Putnam, Coxsackie-Athens School District, Squier, and Mercer.

Meishin Riccardulli, Philip C. Semprevivo, Jr., Biedermann Hoenig Semprevivo PC, New York, New York, for Defendant-Appellee Migliorino.

Before: Leval, Cabranes, and Chin, Circuit Judges.

**Opinion**

Chin, Circuit Judge:

**\*1** Under New York State law, all children must be immunized against certain diseases to be admitted to school or to attend school for more than fourteen days. Prior to June 2019, New York law allowed exemptions from this immunization requirement for both non-medical and medical reasons. That year, following a nationwide measles outbreak, New York State (the "State") repealed the non-medical exemption and adopted new regulations that clarified the requirements for a medical exemption. Specifically, the State narrowed the availability of medical exemptions to cases consistent with guidelines issued by the Advisory Committee on Immunization Practices (the "ACIP" and the "ACIP Guidelines") of the Centers for Disease Control and Prevention (the "CDC")[1] or with other nationally recognized evidence-based standards of care.

Plaintiffs-appellants ("Plaintiffs") are a national not-for-profit children's advocacy organization and several parents, suing on behalf of themselves and their children, whose requests for medical exemptions from the school immunization requirements were largely denied. They brought this action below against defendants-appellees -- the New York State Department of Health (the "Health Department"), Health Department officials, local school districts, and local school district officials (collectively, "Defendants")[2] -- alleging that the new regulations and the enforcement thereof violated their rights under the Due Process Clause of the Fourteenth Amendment and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (the "Rehabilitation Act").

The district court granted Defendants' motions to dismiss. We conclude first, as a procedural matter, that the district court properly applied the motion to dismiss standards. We then conclude, as a substantive matter, that neither the new regulations nor the enforcement thereof violated the Due Process Clause or the Rehabilitation Act. Accordingly, the district court's judgment dismissing the action is AFFIRMED.[3]

**BACKGROUND**

**A. *Statutory Background***

**\*2** For more than a century, the State has required mandatory immunization for children to attend school. *See* Act of Apr. 16, 1860, ch. 438, 1860 N.Y. Laws 761, 761-62. Today, all children between the ages of two months and eighteen years must be immunized against a number of diseases to be admitted to school or to attend school for more than fourteen days. *See* N.Y. Pub. Health Law § 2164(7)(a).[4] These diseases include "poliomyelitis, mumps, measles, diphtheria, rubella, varicella, hepatitis B, pertussis, tetanus, and, where applicable, Haemophilus influenzae type b (Hib), meningococcal disease, and pneumococcal disease." *Id.* The fourteen-day period can be extended for students transferring from out-of-state if they show that they are seeking in good faith the required certification or other proof. *Id.*

The State has also permitted exemptions from school immunization requirements for many decades. *See, e.g.*, Act of Apr. 20, 1953, ch. 879, 1953 N.Y. Laws 2141, 2289-90 (providing deferment from school immunization for smallpox based on "medical reasons") (repealed 1968). Until the 2019 amendments, Section 2164 provided two statutory exemptions from its school immunization requirements. *See* Act of Aug. 3, 1966, ch. 994, 1966 N.Y. Laws 3331, 3333. Under the non-medical exemption, a child was not required to be immunized if that child had a parent or guardian who held "genuine and sincere religious beliefs" against immunization. N.Y. Pub. Health Law § 2164(9) (repealed 2019). That changed when the United States -- with the State as an epicenter -- experienced a nationwide measles outbreak between 2018 and 2019.[5] With outbreaks in the State largely concentrated in communities with low immunization rates, the State legislature repealed the availability of the non-medical exemption in June 2019. *See* Act of June 13, 2019, ch. 35, 2019 N.Y. Laws 153, 153-54; App'x at 108 (explaining that "[a]fter California repealed their non-medical exemptions, their vaccination rates improved

demonstrably, particularly in schools with the lowest rates of compliance"). Like some other states, the State now only allows medical exemptions from school immunization.[6]

Under the State's present requirements, a child may be exempted from school immunization if "any" state-licensed physician "certifies that such immunization may be detrimental to [the] child's health." N.Y. Pub. Health Law § 2164(8). The request must "contain[ ] sufficient information to identify a medical contraindication to a specific immunization." N.Y. Comp. Codes R. & Regs. tit. 10, § 66-1.3(c). School officials enforce these requirements, see N.Y. Pub. Health Law § 2164(7)(a), and may require additional supporting information before granting requests for exemptions, see N.Y. Comp. Codes R. & Regs. tit. 10, § 66-1.3(c). The denial of a medical exemption is appealable to the Commissioner of Education. N.Y. Pub. Health Law § 2164(7)(b).

*3 On August 16, 2019, Commissioner Zucker issued emergency regulations to implement the State's legislative repeal of the non-medical exemption (the "new regulations"). In doing so, the Commissioner explained that these new rules would ensure that the State's immunization requirements conformed to "national immunization recommendations and guidelines." App'x at 138.

The new regulations were adopted on December 31, 2019. They require the use of a medical exemption form approved by the Health Department or the New York City Department of Education, completed and signed by a physician, certifying that "immunization may be detrimental to the child's health." N.Y. Comp. Codes R. & Regs. tit. 10, § 66-1.3(c). A completed form must provide "sufficient information to identify a medical contraindication to a specific immunization and specify[ ] the length of time the immunization is medically contraindicated." *Id.* The new regulations also define the phrase "[m]ay be detrimental to a child's health," as used in section 2164(8) of the New York Public Health Law, to mean "that a physician has determined that a child has a medical contraindication or precaution to a specific immunization consistent with ACIP guidance or other nationally recognized evidence-based standard of care." *Id.* § 66-1.1(*l*).

The ACIP Guidelines define a "contraindication" as a "condition[ ] in a recipient that increases the risk for a serious adverse reaction," App'x at 489, and recommend that a vaccine not be administered when such a contraindication exists. Examples of contraindications include being severely immunocompromised, having an immunodeficiency disease, or suffering a severe allergic reaction after a previous vaccine dose. The ACIP Guidelines separately define a "precaution" as a "condition in a recipient that might increase the risk for a serious adverse reaction, might cause diagnostic confusion, or might compromise the ability of the vaccine to produce immunity." *Id.* at 490. For precautions, the ACIP Guidelines recommend deferring, in lieu of completely foregoing, vaccination. Examples of precautions include experiencing moderate or severe acute illness or a personal or family history of seizures.[7]

**B. *Factual Background***
The following facts, which are assumed to be true, are drawn from the FAC.

Plaintiffs' medically fragile children suffer from diseases and disabilities that significantly impair their immune systems. Some also have a family history of adverse reactions to vaccines or serious autoimmune diseases. These conditions or circumstances have either prevented them from being vaccinated at all, or from receiving certain vaccines.

Around the start of the 2019 school year, Plaintiffs submitted medical exemption requests, supported by their state-licensed physicians, seeking exemptions from all or some of the school immunization requirements.[8] Most of Plaintiffs' requests were denied. They were told by school officials, for example, that their requests lacked sufficient detail, did not meet ACIP Guidelines criteria, or were submitted on the wrong form. In denying these requests, many school officials relied on the opinion of their school district's physician. Director Rausch-Phung also reviewed some of these requests and recommended their denial.

*4 Some Plaintiffs submitted unsuccessful second, and third requests. Plaintiffs Joe and Doe appealed their medical exemption denials to the Commissioner of Education. While Joe's appeal was still pending when suit was filed, the denial of Doe's request was affirmed. Plaintiff Foe's son's medical exemption was granted, and he is enrolled in private school. In Plaintiff Goe's case, the school district allowed her daughter to enroll in school while her second medical exemption request was pending.[9] The failure of certain Plaintiffs to comply with the new regulations resulted in their expulsion and in the denial of vital school services and programming.

**C. Procedural Background**
On July 23, 2020, Plaintiffs commenced this putative class action against Defendants, challenging the new regulations. After Defendants moved to dismiss Plaintiffs' complaint for failure to state a claim,[10] Plaintiffs filed a letter motion for leave to amend the complaint. Plaintiffs included with their motion the FAC, which alleged (1) four constitutional claims for relief based on the Fourteenth Amendment, including for violations of their substantive due process rights, their "liberty interest in parenting," their "liberty interest in informed consent," and burdening a minor's right to pursue an education, App'x at 761-66; and (2) two claims for relief under the Rehabilitation Act for discrimination based on the disability status of Plaintiffs' children.

The district court granted Defendants' motions on February 17, 2021. Zucker, 520 F. Supp. 3d at 273-74. The district court rejected Plaintiffs' argument that strict scrutiny applied and concluded that the new regulations were reasonably related to the State's public health objectives of maintaining high vaccination rates in schools and ensuring that medical exemptions were issued based on evidence-based guidance. Id. at 253, 273. The district court also dismissed the Rehabilitation Act claims, concluding that Plaintiffs had failed to plead plausible claims of disability discrimination. Id. at 272-73. Judgment was entered accordingly.

This appeal followed.

**DISCUSSION**

"We review *de novo* the denial of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted." Drimal v. Tai, 786 F.3d 219, 223 (2d Cir. 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

First, we consider whether the district court properly applied the motion to dismiss standard to the FAC. Second, we determine whether the new regulations violate Plaintiffs' constitutional rights under the Fourteenth Amendment. Third, we address whether the regulations violate Plaintiffs' rights under the Rehabilitation Act. We conclude that the district court did not err in granting Defendants' motions to dismiss.

**A.** *The District Court's Reliance on Documents Outside the FAC*
**\*5** Plaintiffs argue that the district court misapplied the Rule 12(b)(6) standards by relying on contested facts contained in exhibits submitted by Defendants in support of their motions to dismiss, as these were documents extrinsic to the FAC. For the reasons explained below, we hold that the district court properly relied on these documents.

The district court took judicial notice of some of the exhibits submitted by Defendants in their motions to dismiss and determined that some exhibits were incorporated by reference into the FAC. Zucker, 520 F. Supp. 3d at 228-30. Relevant on appeal, it took judicial notice of: (1) recent legislative history of section 2164 of the New York Public Health Law, (2) the Emergency Regulations dated August 16, 2019, and (3) the Final Regulations adopted December 31, 2019. Id. at 229. Additionally, it determined that the Commissioner of Education's denial of Plaintiff Doe's appeal was incorporated into the FAC, or, in the alternative, it took judicial notice of that decision. Id. It also determined that the ACIP Guidelines had been incorporated by reference because they were relied upon by the FAC. Id.

Plaintiffs argue that these documents contradict facts alleged in the FAC; therefore, they contend, the district court's reliance on them was improper. For instance, the FAC alleges that unvaccinated children do not present a significant risk to community health. See App'x at 761 (alleging that "the risk to the community from" medically fragile children foregoing immunizations is "small enough that there is no compelling reason to narrow the scope of the medical exemption or place these burdens on it"). In contrast, the Emergency Regulations explain, for instance, that "because some individuals have chosen not to receive the [measles] vaccine and to not have their children vaccinated, outbreaks stemming from imported cases have occurred and new cases continue to occur in multiple counties across New York State." Id. at 427-28. The FAC also disputes the public health benefits of some vaccines on the school vaccine schedule, which the ACIP Guidelines recommend.

The district court did not err in considering the materials in question. First, as a fundamental matter, courts may take judicial notice of legislative history. *See* *Territory of Alaska v. Am. Can Co.*, 358 U.S. 224, 226-27, 79 S.Ct. 274, 3 L.Ed.2d 257 (1959). The same is true for administrative record filings such as the denial of Plaintiff Doe's appeal. *See Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003).

Second, a complaint is considered to include a document "incorporated in it by reference," or "where the complaint relies heavily upon its terms and effect." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

Third, it is true, as Plaintiffs argue, that when a court relies upon extrinsic materials "considered integral to the complaint, it must be clear on the record that no dispute exists regarding the ... accuracy of the document." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (internal quotation marks omitted). While Plaintiffs challenge the accuracy of certain factual findings made by the State in promulgating the regulations (as set forth in the extrinsic materials), they misapprehend the extent of the district court's consideration of those factual findings. To the extent that the district court relied on facts from the extrinsic materials that were in dispute, it did not rule on the factual accuracy of those materials; instead, it cited those materials to explain the decision-making of state authorities. *See, e.g.*, *Zucker*, 520 F. Supp. 3d at 254-56; *cf. Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 285 (2d Cir. 2015) ("[I]t is not the role of the courts to second-guess the wisdom or logic of the State's decision to credit one form of disputed evidence over another.").

**\*6** We therefore conclude that the district court properly applied the 12(b)(6) motion standards in dismissing the FAC.

### B. *Constitutional Challenges*

We next address Plaintiffs' constitutional claims. Plaintiffs assert both facial and as applied challenges to the new regulations.

As a facial matter, Plaintiffs contend that the new regulations are invalid because they permit school authorities to deny a request for a medical exemption from school immunization requirements even when a state-licensed physician certifies that a child is at risk of serious harm or death from a vaccine. In other words, they contend that because they have a "fundamental right to a medical exemption" from immunization requirements in these circumstances, the State must grant the exemption "without further review or interference" when their physicians certify the need for an exemption. Pls.-Appellants' Br. at 2, 4. For their as applied claims, Plaintiffs allege that the individual school district officials' conduct enforcing the new regulations violated their substantive due process rights.

#### 1. *Applicable Law*

" '[T]he touchstone of due process is protection of the individual against arbitrary action of government.' " *Leebaert v. Harrington*, 332 F.3d 134, 139 (2d Cir. 2003) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). To determine whether a government regulation infringes a substantive due process right, we first "determine whether the asserted right is fundamental." *Id.* at 140 (internal quotation marks omitted). "Rights are fundamental when they are implicit in the concept of ordered liberty, or deeply rooted in this Nation's history and tradition." *Id.* (internal quotation marks omitted). "When the right infringed is fundamental," we apply strict scrutiny, and "the governmental regulation must be narrowly tailored to serve a compelling state interest." *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 460 (2d Cir. 1996) (internal quotation marks omitted). When a "claimed right is not fundamental," we apply rational basis review, and the "governmental regulation need only be reasonably related to a legitimate state objective." *Id.* at 461.

An as applied challenge "requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the [plaintiff] to whom it was applied of a protected right." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006). We use the shocks the conscience test to assess substantive due process challenges to government conduct. *See, e.g.*, *Velez v. Levy*, 401 F.3d 75, 93-94 (2d Cir. 2005) (explaining that the plaintiff must "allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience' " (quoting *Lewis*, 523 U.S. at 847 n.8, 118 S.Ct. 1708)); *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir.), *cert.*

*denied*, ––– U.S. ––––, 142 S. Ct. 109, 211 L.Ed.2d 31 (2021). Accordingly, to determine whether government conduct infringes on a substantive due process right, we first identify the "constitutional right at stake" or the "deprivation of property" interest at issue. *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995).[11] If we identify either, we then assess whether the government's alleged conduct shocks the conscience. *See Velez*, 401 F.3d at 93; *Hurd*, 984 F.3d at 1087.

2. *Application*

a. *The Facial Challenge*

**\*7** Two questions are presented by the facial challenge: first, whether a fundamental right is implicated, such that strict scrutiny applies, and, second, once the appropriate level of judicial scrutiny is determined, whether the challenged regulations pass muster.

i. *Is a Fundamental Right Implicated?*

Plaintiffs contend that the new regulations violate their right to a medical exemption from school immunization requirements, their rights to life and liberty, and the rights of their children to an education. They argue that these rights are fundamental, and that therefore the regulations are subject to strict scrutiny. We are not persuaded, and we conclude that "fundamental rights" are not implicated.

First, Plaintiffs' assertion of rights is overstated. The State is not forcing any child to be vaccinated against her parents' will. *See Phillips v. City of New York*, 775 F.3d 538, 542 n.5 (2d Cir. 2015) (per curiam) (providing that New York's school immunization law does not implicate substantive due process because it does not compel vaccination). Rather, the new regulations continue to *permit* a medical exemption (as required by the statute), and they clarify *when* an exemption is appropriate and specify *how* parents may seek an exemption. By requiring a physician to certify that a child "has a medical contraindication or precaution to a specific immunization consistent with ACIP guidance or other nationally recognized evidence-based standard of care," N.Y. Comp. Codes R. & Regs. tit. 10, § 66-1.1(*l*), the new regulations require requests to comply with evidence-based national standards for the purpose of ensuring that physicians do not recommend medical exemptions in conclusory fashion or for non-medical reasons.[12]

Second, Plaintiffs' argument, at bottom, is that they have a "fundamental right" to obtain a medical exemption based *solely* on the recommendation -- or say-so -- of a child's treating physician. But no court has ever held that there is a right to a medical exemption from immunization based solely on the recommendation of a physician. Nor has any court held that such a right is "implicit in the concept of ordered liberty, or deeply rooted in this Nation's history and tradition." *Leebaert*, 332 F.3d at 140 (internal quotation mark omitted). Indeed, in *Jacobson v. Massachusetts*, the Supreme Court explained that medical exemptions from mandatory immunization laws may be limited to cases in which it is "apparent or can be *shown with reasonable certainty*" that the vaccine would be harmful. 197 U.S. 11, 39, 25 S.Ct. 358, 49 L.Ed. 643 (1905) (emphasis added).

Third, the issue, of course, is not whether the Plaintiffs' children have a right to a medical exemption. It is whether they are being deprived of their right to attend school because of the vaccine mandates. But, as the Supreme Court has made clear, there is no fundamental right to an education. *See Plyler v. Doe*, 457 U.S. 202, 223, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) ("Nor is education a fundamental right."); *see also Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 217 (2d Cir. 2012) (holding that "[t]he right to public education is not fundamental").[13] While the right to an education is an important right, it is not a "fundamental right" such as to require strict scrutiny review.

**\*8** Finally, as we further noted in *Phillips*, "no court appears ever to have held" that "*Jacobson* requires that strict scrutiny be applied to immunization mandates." 775 F.3d at 542 n.5. To be sure, courts have consistently rejected substantive due process challenges to vaccination requirements without applying strict scrutiny. *See, e.g., B.W.C. v. Williams*, 990 F.3d 614, 622 (8th Cir. 2021); *Workman v. Mingo Cnty. Bd. of Educ.*, 419 F. App'x 348, 355-56 (4th Cir. 2011) (summary order); *Boone v. Boozman*, 217 F. Supp. 2d 938, 956-57 (E.D. Ark. 2002); *cf. Immediato*, 73 F.3d at 461 (recognizing that parents "have a liberty interest, properly cognizable under the Fourteenth Amendment, in the upbringing of their children" but rejecting the argument that this liberty interest was a "fundamental" right and holding that "rational basis review is appropriate" when a "parental right" is "invoked against a state regulation"

(internal quotation marks omitted)).

Accordingly, we conclude that the new regulations do not implicate a fundamental right, and that therefore strict scrutiny does not apply.[14]

### ii. *Are the New Regulations Reasonably Related to a Legitimate State Objective?*

Instead, we apply rational basis review. The FAC's substantive due process challenges are based principally on two provisions: (1) the new regulations' definition of what "[m]ay be detrimental to the child's health," N.Y. Comp. Codes R. & Regs. tit. 10, § 66-1.1(*l*), and (2) the delegation to school officials of the authority to grant a medical exemption based on the new standards, N.Y. Pub. Health Law § 2164(7)(a). We conclude that both provisions are reasonably related to a legitimate state objective.

First, there clearly is a legitimate state objective for both provisions: protecting communities from serious, vaccine-preventable diseases through immunization. *See Phillips*, 775 F.3d at 542 (noting that Supreme Court recognized in *Jacobson* "the State's judgment that mandatory vaccination was in the interest of the population as a whole" (citing *Jacobson*, 197 U.S. at 38, 25 S.Ct. 358)); *see also Zucht v. King*, 260 U.S. 174, 176, 43 S.Ct. 24, 67 L.Ed. 194 (1922). Significantly, in 2018-2019, there was a measles outbreak in the State that was fueled by low vaccination rates in certain communities. *See* App'x at 139. The Health Department noted this outbreak when it proposed the new regulations:

> There currently exist outbreaks of measles in New York City and in the Counties of Rockland, Orange, and Westchester, and cases have also been identified in the County of Sullivan. Measles is a viral disease transmitted via the airborne route when a person with measles coughs or sneezes. It is one of the most contagious diseases known. ...
>
> *9 The measles vaccine is very effective and remains the best protection against the disease. ...
>
> .... However, because some individuals have chosen not to receive the vaccine and to not have their children vaccinated, outbreaks stemming from imported cases have occurred and new cases continue to occur in multiple counties across New York State.

*Id.*

Second, both provisions are reasonably related to furthering the State's interest in protecting communities against serious disease. After the legislative repeal of the non-medical exemption, the State adopted the new regulations to enforce its school immunization requirements. The new regulations thus sought to conform the State's immunization rules to "national immunization recommendations and guidelines" to curtail state-licensed physicians from issuing medical exemptions for non-medical reasons. *Id.* at 637. There was a real concern that with the elimination of the religious exemption, parents who did not want their children vaccinated would seek a medical exemption even when such an exemption was not warranted. *See id.* at 428 (noting that, "[i]n 2015, the State of California removed non-medical exemptions to school immunization requirements without taking steps to strengthen the rules governing medical exemptions," and that over "the next three years, the use of [those] exemptions to school immunization requirements more than tripled").

The statute at issue here provides that a child may be exempted from immunization if any state-licensed physician certifies that "immunization may be detrimental to [the] child's health," N.Y. Pub. Health Law § 2164(8), and the new regulations define that phrase, specifying the circumstances that warrant a medical exemption. N.Y. Comp. Codes R. & Regs. tit. 10, § 66-1.1(*l*). The definition narrows the availability of this exemption to medical contraindications and precautions consistent with either the ACIP Guidelines or "other nationally recognized evidence-based standard of care." *Id.* In other words, exemptions are now only to be granted if they are consistent with evidence-based national standards of care such as, but not limited to, the ACIP Guidelines.[15] *Cf. Rodriguez v. City of New York*, 72 F.3d 1051, 1062 (2d Cir. 1995) (interpreting New York's involuntary commitment statute as implicitly requiring that a physician's decision "be made in accordance with the standards of the medical profession"). Plainly, the regulations seek to ensure that the risk of harm to a child from vaccination is genuine.

We further conclude that there is a reasonable relationship between the delegation of authority to school districts to review and approve medical exemption requests and protecting communities from serious diseases. New York State law, as it has for decades, delegates to school officials the authority to grant a medical exemption from the State's school immunization requirements. *See* N.Y. Pub. Health Law § 2164(7)(a); N.Y. Comp. Codes R. & Regs. tit. 10, § 66-1.3(c). The Supreme Court

has held that states may grant school district officials "broad discretion" to apply and enforce health law, including mandatory immunization laws. See *Zucht*, 260 U.S. at 175-76, 43 S.Ct. 24 (rejecting argument that school immunization requirement was unconstitutional because it gave local authorities discretion "to determine when and under what circumstances the requirement shall be enforced"). The new regulations do not undermine this long-standing discretion or any right to a medical exemption. Moreover, if a medical exemption is denied by school authorities, a parent has the right to appeal the denial to the Commissioner of Education or to seek judicial review in state court through an Article 78 proceeding.

**\*10** Accordingly, we agree with the district court that the new regulations and the State's delegation of enforcement authority to school officials are reasonably related to a legitimate state objective, and that they therefore satisfy rational basis review.[16]

#### b. *The As Applied Challenge*

In its decision below, the district court carefully reviewed the claims against the School District Defendants, including the individual school district officials, based on their implementation of the new regulations. It concluded that the FAC failed to plausibly allege any substantive due process claims against them. *Zucker*, 520 F. Supp. 3d at 257-66.

We agree that the FAC fails to assert plausible claims against any of the individual school district officials, substantially for the reasons set forth by the district court in its decision below. As the district court concluded, the FAC did not plausibly allege an infringement of a constitutional right or the deprivation of a property interest in education. *Id.* at 258. The district court also correctly concluded that the FAC failed to plausibly allege that the individual school district officials engaged in conduct that was "outrageous," "arbitrary," "irrational," or "conscience shocking." *Id.* at 259, 261-64, 266 (internal quotation marks omitted).

Finally, as the district court correctly concluded that the FAC failed to plausibly allege any underlying constitutional violations, it did not err in dismissing the municipal liability claims against the School District Defendants. See *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [*v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978),] was entirely correct.").

**\*11** Accordingly, we affirm the dismissal of Plaintiffs' constitutional claims.

### C. *Rehabilitation Act Claims*

Finally, we address whether the district court properly dismissed Plaintiffs' Rehabilitation Act claims, which allege that the new regulations violate the Rehabilitation Act by excluding Plaintiffs' children from school because of their disabilities, that is, because they "cannot safely take one or more of the mandatory vaccines." Pls.-Appellants' Br. at 75.

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). As described in their main brief on appeal, Plaintiffs contend that "Defendants adopted discriminatory policies which exclude whole categories of disabled children from the protection of a medical exemption from the vaccine requirements." Pls.-Appellants' Br. at 74-75.

As a threshold matter, the district court dismissed the Rehabilitation Act claims against the individual school district officials in their individual capacity on the basis that the Rehabilitation Act does not provide for individual liability. See *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."); *see also Perros v. Cnty. of Nassau*, 238 F. Supp. 3d 395, 402 n.3 (E.D.N.Y. 2017) ("[I]t is well-established that there is no individual liability under the ADA or the Rehabilitation Act, whether the individual is sued in their official or individual capacity."). Plaintiffs have not challenged this ruling in their briefs on appeal, and thus we affirm the dismissal of the Rehabilitation Act claims against the individual school district officials.[17]

As to the merits of the Rehabilitation Act claims, "[e]xclusion or discrimination may take the form of disparate treatment, disparate impact, or failure to make a reasonable accommodation." *B.C. v. Mount Vernon Sch.*

*Dist.*, 837 F.3d 152, 158 (2d Cir. 2016). While Plaintiffs continue to press all three forms of discrimination in their briefs on appeal, they do so in a wholly conclusory manner. All three forms of claims fail in any event, for the FAC fails to plausibly allege that Plaintiffs' children were excluded from participating in any federally-funded program or activity "solely by reason of her or his disability." 29 U.S.C. § 794(a).

First, the new regulations apply to all students, and not just to students with disabilities. *See* N.Y. Comp. Codes R. & Regs. tit. 10, § 66-1.1(b) (providing that "Child," for purposes of the State's school immunization requirements, "means and includes any person between the ages of two months and 18 years"). Thus, all students must comply with the new regulations, not just disabled students. *See Bryant*, 692 F.3d at 216 (dismissing claims that New York law barring "aversive interventions" in education violates the Rehabilitation Act, noting that "[t]he regulation applies to all students, regardless of disability").

**\*12** Second, the new regulations do not bar students with disabilities from schools *because* of their disabilities. Children who cannot be safely vaccinated because of their disability will receive a medical exemption and may attend school, so long as they can demonstrate a medical need, based on a national evidence-based standard, for an exemption. Under the new regulations, a state-licensed physician can still certify the need for a medical exemption based on her clinical judgment, and an exemption will be granted if that judgment is based on evidence (and not merely her say-so) and is consistent with a nationally recognized evidence-based standard of care. Again, to the extent there is a disagreement on whether the requirements are met in any particular case, parents can appeal to the Commissioner of Education and seek judicial review in the state court system through an Article 78 proceeding.

Plaintiffs' children here were denied medical exemptions not because of their disabilities, but because they admittedly failed to comply with the new procedures, which, as we have concluded above, are reasonably related to furthering a legitimate state objective.[18]

Notably, in *D.A.B. v. New York City Department of Education*, the district court rejected claims under, *inter alia*, the Rehabilitation Act. The parents of a child with autism brought suit after they were denied a medical exemption for their child from mandatory vaccination based on a letter from a pediatrician attesting to a " 'history of adverse reactions' " to vaccinations." *D.A.B. v. N.Y.C. Dep't of Educ.*, 45 F. Supp. 3d 400, 403, 407 (S.D.N.Y. 2014). The New York City Department of Education denied the request because it found "no medical basis for the exemption." *Id.* at 403. The district court concluded that the Rehabilitation Act claim lacked merit because the plaintiffs could not show that the child "was excluded from school 'solely by reason' of his disability." *Id.* at 407 (quoting 29 U.S.C. § 794(a)). It reasoned that school immunization requirements that constitute a "more limited, generally applicable law intended to limit the spread of contagious disease," that allow "the possibility of exemptions," do not discriminate in violation of the Rehabilitation Act. *Id.* We affirmed in a non-precedential summary order, concluding: "for the reasons well stated by the district court, no reasonable juror could conclude that [the Department] discriminated against [the child] because of his disability." *D.A.B. v. N.Y.C. Dep't of Educ.*, 630 F. App'x 73, 79 (2d Cir. 2015) (summary order).[19]

We therefore conclude that Plaintiffs fail to plausibly allege that they were excluded from school "solely by reason of" their disabilities, and we hold that the district court did not err in dismissing the Rehabilitation Act claims.

## CONCLUSION

**\*13** For the reasons set forth above, the district court's judgment is AFFIRMED.

**All Citations**

--- F.4th ----, 2022 WL 3007919

---

**Footnotes**

\*   The Clerk of the Court is respectfully directed to amend the official caption to conform to the above.

1   Members of the ACIP include "health-care providers and public health officials," including "professionals from academic medicine (pediatrics, family practice, and pharmacy); international (Canada), federal, and state public health professionals; and a member from the nongovernmental Immunization Action Coalition." App'x at 445. The ACIP Guidelines were intended to help "clinicians and other health care providers who vaccinate patients in varied settings," *id.* at 442, (1) "assess vaccine benefits and risks," (2) "use recommended administration practices," (3) "understand the most effective strategies for ensuring" high vaccination coverage in the population, and (4) "communicate the importance of vaccination to reduce the effects of vaccine-preventable disease," *id.* at 443.

2   Defendants fall into two groups: first, Howard Zucker (Health Department Commissioner), Elizabeth Rausch-Phung (Director of the Bureau of Immunizations at the Health Department), and the Health Department (collectively, the "State Defendants"), and, second, the school districts, including their individually named school district officials and David Migliorino, a principal at a private school within one of the named school districts (collectively, the "School District Defendants").

3   In addition to granting Defendants' motions to dismiss, the district court denied Plaintiffs' motion for leave to amend their complaint as futile. *Doe v. Zucker*, 520 F. Supp. 3d 217, 273 (N.D.N.Y. 2021). Although Plaintiffs' notice of appeal states that they are appealing from, *inter alia*, the denial of their motion for leave to amend their complaint, their briefs on appeal do not address that aspect of the district court's ruling. Moreover, the district court considered the merits based on Plaintiffs' proposed First Amended Complaint (the "FAC"). Hence, the operative complaint is the FAC, and we need not address the district court's denial of the motion for leave to amend.

4   Section 2164(7)(a) provides that "[n]o principal, teacher, owner or person in charge of a school shall permit any child to be admitted to such school, or to attend such school, in excess of fourteen days, without the certificate [showing the requisite immunization] or some other acceptable evidence of the child's immunization against [the specified diseases]."

5   *See* Sharon Otterman, *New York Confronts Its Worst Measles Outbreak in Decades*, N.Y. Times (Jan. 17, 2019), https://www.nytimes.com/2019/01/17/nyregion/measlesoutbreak-jews-nyc.html ("In 2018, New York and New Jersey accounted for more than half the measles cases in the country."); Pam Belluck & Adeel Hassan, *Measles Outbreak Questions and Answers: Everything You Want to Know*, N.Y. Times (Feb. 20, 2019), https://www.nytimes.com/2019/02/20/us/measles-outbreak.html (reporting, in 2019, that "[t]he United States [ ] experience[d] the worst measles outbreak in decades ... [with] New York ha[ving] been particularly hard hit, with outbreaks centered in suburban Rockland County and in Brooklyn").

6   *See* Nat'l Conf. State Legislatures, States With Religious and Philosophical Exemptions From School Immunization Requirements (May 25, 2022), https://www.ncsl.org/research/health/school-immunization-exemption-state-laws.aspx (last visited July 27, 2022).

7   In addition, the ACIP Guidelines provide a list of conditions or circumstances that are neither a recognized contraindication nor a precaution, including, for example, mild acute illness, a history of penicillin allergy, or contact

|   |   |
|---|---|
| | with persons who have a chronic illness or altered immunocompetence. |
| 8 | Some of the conditions that Plaintiffs allege form the basis of these requests include "multiple chronic and serious conditions," an "acute illness" "concerning [the] meningococcal vaccine," a "current state[ ] of vulnerable health and [ ] genetic analysis and family history of significant adverse vaccine reactions," being "at substantial risk of having" "severe reactions" to immunization, "a flare up of [ ] acute autoimmune conditions," an "anaphylactic reaction to [a] hepatitis B vaccine given at birth," and "P.A.N.S./P.A.N.D[.]A.S.," a form of "autoimmune encephalopathy." App'x at 704, 712, 715, 719, 722-23, 726, 732. |
| 9 | Goe's daughter was "set to graduate on July 30, 2020." *Id.* at 725. |
| 10 | The day after the State Defendants filed their motion to dismiss, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction to enjoin application of the new regulations and to bar schools from prohibiting enrollment based on the regulations. The district court denied Plaintiffs' motion. On November 13, 2020, Plaintiffs appealed the district court's denial to this Court, filing a motion for emergency injunction pending appeal. This Court denied Plaintiffs' motion on January 6, 2021. Plaintiffs then filed an emergency application for writ of injunction with the Supreme Court on January 25, 2021. The application was denied. |
| 11 | Other circuits require the substantive due process violation of a fundamental right. *See, e.g., Van Orden v. Stringer, 937 F.3d 1162, 1167 (8th Cir. 2019)* ("To prevail on an as-applied substantive due process claim, the [plaintiffs] must show both that the state officials' conduct is conscience-shocking and that it violated a *fundamental right* of the [plaintiffs]." (emphasis added)). |
| 12 | We need not decide here whether schoolchildren may have medical conditions that place them at risk of serious harm from a vaccine but that are not covered by the national standards. To the extent that the regulations allow the State to exclude a child from education notwithstanding a condition that places the child at serious risk if vaccinated, if the condition is not recognized by nationally accepted standards, as we conclude below, states are free in the interest of protecting public health to impose such standards on a rational basis. |
| 13 | The Supreme Court has explained that<br><br>[e]ducation, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected. As we have said, the undisputed importance of education will not alone cause this Court to depart from the usual standard for reviewing a State's social and economic legislation.<br><br>*San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). |
| 14 | Plaintiffs rely on *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 |

L.Ed.2d 674 (1992), *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), and their progeny to argue that the new regulations infringe on their fundamental rights to health and life and to rely on the medical judgment of their treating physicians. The Supreme Court, however, recently overruled *Casey*, along with *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). *Dobbs v. Jackson Women's Health Org.,* 597 U.S. ——, 142 S. Ct. 2228, —— L.Ed.2d —— (2022). Moreover, to the extent the cases still provide support for the propositions that a state cannot prevent abortions that are necessary to protect the health or life of a woman or hinder the independent medical judgment of a treating physician to recommend an abortion, the cases are distinguishable. Here, the State is not compelling Plaintiffs to vaccinate their children, but merely requiring them to be vaccinated or to obtain a medical exemption from the immunization mandate -- *if* they wish to attend a school in the State. The choice to vaccinate a child remains with the parent and her treating physician. For these same reasons, we also reject Plaintiffs' liberty interest in parenting and liberty interest in informed consent claims.

15   Contrary to the FAC's allegations, this definition is not, on its face, arbitrarily narrow. For instance, as the district court noted, one of the permissible medical exemption forms under the new regulations references guidance "described in the vaccine manufacturers' package insert." *Zucker,* 520 F. Supp. 3d at 255 (internal quotation marks omitted); *see also* S. App'x at 96.

16   We also reject Plaintiffs' argument that the new regulations violate the unconstitutional conditions doctrine by conditioning receipt of a benefit -- access to education -- on the waiver of a constitutional right. The unconstitutional conditions doctrine provides that the government may not deny a person a benefit "on a basis that infringes his constitutionally protected interests." *All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.,* 651 F.3d 218, 231 (2d Cir. 2011), *aff'd sub nom. Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.,* 570 U.S. 205, 133 S.Ct. 2321, 186 L.Ed.2d 398 (2013) (quoting *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), *overruled on other grounds by Rust v. Sullivan,* 500 U.S. 173, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991)). That doctrine, in other words, prevents the state from granting and withholding benefits as a stick to coerce recipients of those benefits to engage in certain behavior where, if the state regulated that behavior directly, that regulation would be a constitutional violation. Here, Plaintiffs have failed to plausibly allege that in enacting the challenged regulations, the State has "infringe[d]" upon any "constitutionally protected right[ ]." *All. for Open Soc'y Int'l, Inc.,* 651 F.3d at 231. The State's decision to narrow the availability of medical exemptions to cases where a "child has a medical contraindication or precaution to a specific immunization consistent with ACIP guidance or other nationally recognized evidence-based standard of care," N.Y. Comp. Codes R. & Regs. tit. 10, § 66-1.1(*l*), does not unconstitutionally infringe upon Plaintiffs' substantive due process rights. *See Phillips,* 775 F.3d at 542. The conditional receipt of an education on compliance with the regulation cannot, therefore, be an unconstitutional condition.

17   We note also that the FAC dropped the claims against most, but not all, of the individual Defendants in their official capacity.

18   As the district court concluded, while "Plaintiffs felt that their serious medical issues compelled them not to comply" with the State's school immunization requirements, Plaintiffs' "exclusion from school ultimately resulted from their decisions not to comply with a condition for school enrollment permissibly set by the state." *Zucker,* 520 F. Supp. 3d at 258-59.

| | |
|---|---|
| 19 | Plaintiffs argue that the new regulations unlawfully "narrow medical exemption criteria" and that "children with disabilities that fall outside of the non-exhaustive ACIP contraindications are discriminated against and denied benefits to which they are otherwise entitled." Pls.-Appellants' Reply Br. at 28. We are not persuaded. As discussed above, the definition of what "[m]ay be detrimental to the child's health" is not so narrow as to preclude the use of non-ACIP Guideline recognized contraindications and preconditions. N.Y. Comp. Codes R. & Regs. tit. 10, § 66-1.1(*l*). The definition, on its face, recognizes medical contraindications or precautions consistent with other nationally recognized evidence-based standards of care. *Id.* Thus, a physician may still certify a medical exemption for a contraindication or precaution that is consistent with any nationally recognized evidence-based standard of care. |

**End of Document**  © 2022 Thomson Reuters. No claim to original U.S. Government Works.