

Julio C. Gomez, Esq.

908.789.1080 Tel
908.789.1081 Fax
jgomez@gomezllc.com

August 16, 2022

<u>Via CM-ECF</u>
Hon. Zahid N. Quraishi, U.S.D.J.
United States District Court, District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

Re: <u>*Children's Health Defense, Inc. et al. v. Rutgers, The State University of New Jersey, et al.*
Civ. Case No. 21-15333 (United States District Court, District of New Jersey</u>

Dear Judge Quraishi:

On behalf of Plaintiffs, as supplemental authority in support of Plaintiff's opposition to Rutgers' Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. No. 39), I respectfully submit the following: (1) The Center for Disease Control and Prevention (CDC)'s August 11, 2022 announcement of revised COVID-19 guidance; and (2) Governor Murphy's August 15, 2022, Executive Order No. 302.

CDC's recommendations now include, *inter alia,* that unvaccinated people have the same guidance as vaccinated people: regardless of vaccination status those exposed to the virus are no longer required to quarantine (e.g. unvaccinated students can stay in class after being exposed to the virus), and it is no longer recommended to screen persons without symptoms.[1] Governor Murphy's Executive Order (which cites the CDC's updated guidance) ends the COVID test mandate for unvaccinated teachers, childcare workers and state workers.

CDC's updated guidance and Executive Order 302 suggest strongly that Rutgers has no basis to maintain many of the policies challenged in this case for the upcoming Fall Semester; these developments also put into question whether Rutgers had sufficient scientific or legal grounds to adopt its policies in the first place. Although Plaintiffs contend that a higher legal standard applies to Defendants' policies and practices, the CDC's revised regulations and the Governor's Executive Order demonstrate that Rutgers does not have a rational basis to continue to discriminate against unvaccinated students.

Plaintiffs respectfully request an opportunity to brief the significance of these developments vis-à-vis the parties' respective legal positions in the pending motion, and the opportunity to address these or any other matters in oral argument before the Court rules on that motion.

---

[1] *See also* https://www.cdc.gov/coronavirus/2019-ncov/your-health/isolation.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fyour-health%2Fquarantine-isolation.html and https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-childcare-guidance.html.

Hon. Zahid N. Quraishi, U.S.D.J.<br>
August 16, 2022<br>
Page 2 of 2

Thank you.

Respectfully submitted,
*/s/ Julio C. Gomez*

cc:   Counsel of Record (via CM/ECF w/ encl.)

Centers for Disease Control and Prevention

# CDC streamlines COVID-19 guidance to help the public better protect themselves and understand their risk

**Press Release**

Embargoed Until: Thursday, August 11, 2022, 3:00 PM ET
**Contact:** Media Relations
(404) 639-3286

Today, CDC is streamlining its COVID-19 guidance to help people better understand their risk, how to protect themselves and others, what actions to take if exposed to COVID-19, and what actions to take if they are sick or test positive for the virus. COVID-19 continues to circulate globally, however, with so many tools available to us for reducing COVID-19 severity, there is significantly less risk of severe illness, hospitalization and death compared to earlier in the pandemic.

"We're in a stronger place today as a nation, with more tools—like vaccination, boosters, and treatments—to protect ourselves, and our communities, from severe illness from COVID-19," said Greta Massetti, PhD, MPH, MMWR author. "We also have a better understanding of how to protect people from being exposed to the virus, like wearing high-quality masks, testing, and improved ventilation.  This guidance acknowledges that the pandemic is not over, but also helps us move to a point where COVID-19 no longer severely disrupts our daily lives."

In support of this update CDC is:

- Continuing to promote the importance of being up to date with vaccination to protect people against serious illness, hospitalization, and death. Protection provided by the current vaccine against symptomatic infection and transmission is less than that against severe disease and diminishes over time, especially against the currently circulating variants. For this reason, it is important to stay up to date, especially as new vaccines become available.
- Updating its guidance for people who are not up to date on COVID-19 vaccines on what to do if exposed to someone with COVID-19.  This is consistent with the existing guidance for people who are up to date on COVID-19 vaccines.
- Recommending that instead of quarantining if you were exposed to COVID-19, you wear a high-quality mask for 10 days and get tested on day 5.
- Reiterating that regardless of vaccination status, you should isolate from others when you have COVID-19.
    - You should also isolate if you are sick and suspect that you have COVID-19 but do not yet have test results.
        - If your results are positive, follow CDC's full isolation recommendations.
        - If your results are negative, you can end your isolation.
- Recommending that if you test positive for COVID-19, you stay home for at least 5 days and isolate from others in your home.  You are likely most infectious during these first 5 days. Wear a high-quality mask when you must be

around others at home and in public.

- If after 5 days you are fever-free for 24 hours without the use of medication, and your symptoms are improving, or you never had symptoms, you may end isolation after day 5.
- Regardless of when you end isolation, avoid being around people who are more likely to get very sick from COVID-19 until at least day 11.
- You should wear a high-quality mask through day 10.

- Recommending that if you had moderate illness ↗ (if you experienced shortness of breath or had difficulty breathing) or severe illness ↗ (you were hospitalized) due to COVID-19 or you have a weakened immune system, you need to isolate through day 10.
- Recommending that if you had  severe illness ↗ or have a weakened immune system, consult your doctor before ending isolation. Ending isolation without a viral test may not be an option for you. If you are unsure if your symptoms are moderate or severe or if you have a weakened immune system, talk to a healthcare provider for further guidance.
- Clarifying that after you have ended isolation, if your COVID-19 symptoms worsen, restart your isolation at day 0. Talk to a healthcare provider if you have questions about your symptoms or when to end isolation.
- Recommending screening testing of asymptomatic people without known exposures will no longer be recommended in most community settings.
- Emphasizing that physical distance is just one component of how to protect yourself and others.  It is important to consider the risk in a particular setting, including local COVID-19 Community Levels and the important role of ventilation, when assessing the need to maintain physical distance.

Actions to take will continue to be informed by the COVID-19 Community Levels, launched in February. CDC will continue to focus efforts on preventing severe illness and post-COVID conditions, while ensuring everyone have the information and tools, they need to lower their risk.

This updated guidance is intended to apply to community settings. In the coming weeks CDC will work to align stand-alone guidance documents, such as those for healthcare settings, congregate settings at higher risk of transmission, and travel, with today's update.

###

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES ↗

CDC works 24/7 protecting America's health, safety and security. Whether disease start at home or abroad, are curable or preventable, chronic or acute, or from human activity or deliberate attack, CDC responds to America's most pressing health threats. CDC is headquartered in Atlanta and has experts located throughout the United States and the world.

Page last reviewed: August 11, 2022

**EXECUTIVE ORDER NO. 302**

WHEREAS, on March 9, 2020, I issued Executive Order No. 103, declaring the existence of a Public Health Emergency, pursuant to the Emergency Health Powers Act ("EHPA"), N.J.S.A. 26:13-1 et seq., and a State of Emergency, pursuant to the New Jersey Civilian Defense and Disaster Control Act ("Disaster Control Act"), N.J.S.A. App A:9-33 et seq., in the State of New Jersey for Coronavirus disease 2019 ("COVID-19"), the facts and circumstances of which are adopted by reference herein; and

WHEREAS, through Executive Order Nos. 119, 138, 151, 162, 171, 180, 186, 191, 200, 210, 215, 222, 231, 235, and 240, which were issued each month between April 7, 2020 and May 14, 2021, the facts and circumstances of which are adopted by reference herein, I declared that the COVID-19 Public Health Emergency in effect at the time continued to exist; and

WHEREAS, New Jersey made significant progress in responding to COVID-19 and mitigating its devastating effects, in particular in light of the advent of several effective vaccines that, among other things, had significantly reduced the likelihood of both contracting and transmitting the variants of COVID-19 that were present in the United States at the time; and

WHEREAS, on June 4, 2021, in light of these developments, I signed Assembly Bill No. 5820 into law as P.L.2021, c.103, and issued Executive Order No. 244, which terminated the Public Health Emergency declared in Executive Order No. 103 (2020); and

WHEREAS, P.L.2021, c.103 sought to enable the State to bring an end to its initial Public Health Emergency while still allowing for an orderly continuation of the Administration's ability to order certain public health measures relating to COVID-19, including but not limited to vaccine distribution, administration, and management, COVID-19 testing, health resource and personnel

2

allocation, data collection, and implementation of recommendations of the Centers for Disease Control and Prevention ("CDC") to prevent or limit the transmission of COVID-19, including in specific settings; and

WHEREAS, P.L.2021, c.103 explicitly maintained the State of Emergency declared in Executive Order No. 103 (2020), and stated it would in no way diminish, limit, or impair the powers of the Governor to respond to any of the threats presented by COVID-19 pursuant to the Disaster Control Act; and

WHEREAS, in addition to leaving the prior State of Emergency in effect, nothing in P.L.2021, c.103 prevented the Governor from declaring any new public health emergency under the EHPA, N.J.S.A. 26:13-1 et seq., should the evolving circumstances on the ground require such a declaration; and

WHEREAS, Executive Order No. 252, issued August 6, 2021, required all covered health care and high-risk congregate settings ("covered settings") to maintain a policy that required all covered workers to either provide adequate proof to the covered settings that they have been fully vaccinated or submit to COVID-19 testing at minimum one to two times weekly beginning September 7, 2021; and

WHEREAS, Executive Order No. 253, issued August 23, 2021, requires all public, private, and parochial preschool programs and elementary and secondary schools, including charter and renaissance schools (collectively "school districts") to maintain a policy that requires all covered workers to either provide adequate proof to the school district that they have been fully vaccinated or submit to COVID-19 testing at minimum one to two times weekly beginning October 18, 2021; and

3

WHEREAS, Executive Order No. 264, issued September 20, 2021, requires all child care centers and other child care facilities (collectively "child care settings") to maintain a policy that requires all covered workers to either provide adequate proof to the child care settings that they have been fully vaccinated or submit to COVID-19 testing at minimum one to two times weekly beginning November 1, 2021; and

WHEREAS, Executive Order No. 271, issued October 20, 2021, requires that each executive department and agency, including an independent authority, ensure that certain new contracts, new solicitations for contracts, extensions or renewals of existing contracts, and exercising options on existing contracts, include a clause that the contractor or any subcontractors, at any tier, that is party to the contract ("covered contractor(s)"), must maintain a policy that requires all covered workers to either provide adequate proof to the covered contractor that they have been fully vaccinated or submit to COVID-19 testing at minimum one to two times weekly; and

WHEREAS, as the CDC has recognized, viruses can change through mutation and mutations can result in variants of the virus, and some variants can spread more easily and quickly than other variants of the same virus, which may lead to more cases of COVID-19, increased strain on healthcare resources, more hospitalizations, and more deaths; and

WHEREAS, since Executive Order No. 244 (2021) took effect, the CDC has reported that new variants of concern of COVID-19 have been identified in the United States, particularly the B.1.617.2 (Delta) variant and most recently the B1.1.529, BA.1, BA.1.1, BA.2, BA.3, BA.4, and BA.5 lineages of the Omicron variant ("Omicron"); and

4

WHEREAS, although New Jersey was able to end the initial Public Health Emergency on account of the effectiveness of vaccines in reducing transmissibility of COVID-19, the Omicron spread more easily than other variants and required additional action to protect the public; and

WHEREAS, on January 11, 2022, I issued Executive Order No. 280, declaring the existence of a new Public Health Emergency, pursuant to the EHPA, N.J.S.A. 26:13-1 et seq., and continuing the State of Emergency declared in Executive Order No. 103 (2020) pursuant to the Disaster Control Act, N.J.S.A. App. A:9-33 et seq., in the State of New Jersey due to the surge of cases and hospitalizations tied to the new variants of COVID-19; and

WHEREAS, on January 11, 2022, I issued Executive Order No. 281, extending various orders to ensure the State continues to have the necessary resources in place to respond to the new variants of COVID-19; and

WHEREAS, on January 19, 2022, I issued Executive Order No. 283, requiring certain health care and high-risk congregate settings to maintain a policy that requires all covered workers to provide adequate proof to the covered settings that they are up to date with their COVID-19 vaccinations, including a booster dose when eligible; and

WHEREAS, on February 10, 2022, I issued Executive Order No. 288, which declared that the Public Health Emergency declared in Executive Order No. 280 (2022) continued to exist; and

WHEREAS, on March 2, 2022, I issued Executive Order No. 290, clarifying and extending the timeframes within which covered settings must require their covered workers to comply with the vaccination and booster requirements set forth in Executive Order No. 283 (2022); and

5

WHEREAS, as a result of significant emergency measures taken, the State made considerable progress in combating COVID-19 variants and decreasing key statistics, such as the number of hospitalized patients in the State, the number of daily positive COVID-19 cases, spot positivity, and the rate of transmission; and

WHEREAS, in light of these developments, on March 4, 2022, I issued Executive Order No. 292 terminating the Public Health Emergency declared in Executive Order No. 280 (2022) effective March 7, 2022, while continuing the State of Emergency declared in Executive Order No. 103; and

WHEREAS, Executive Order No. 292 (2022) stated that Executive Order Nos. 111, 112, and 207 (2020), Nos. 252, 253, 264, and 271 (2021) and Nos. 283 and 290 (2022) remain in full force and effect pursuant to the Disaster Control Act, N.J.S.A. App. A:9-33 et seq., except that paragraphs 11 and 13 of Executive Order No. 264 (2021) were rescinded; and

WHEREAS, Executive Order No. 292 (2022) lifted certain mitigation protocols, including the requirement that face masks be worn in school districts and child care settings, while continuing to require workers in school districts and child care settings to receive a COVID-19 vaccine or undergo regular testing in order to help prevent outbreaks and reduce transmission to children; and

WHEREAS, on April 13, 2022, I issued Executive Order No. 294, clarifying the vaccination and booster requirements applicable to workers in certain covered settings as set forth in Executive Order No. 283 (2022) and Executive Order No. 290 (2022); and

WHEREAS, the Department of Health's ("DOH") Executive Directive No. 21-011 (Revised), dated April 6, 2022, provides protocols for COVID-19 testing and vaccination reporting for covered settings pursuant to Executive Order Nos. 252, 253, and 264 (2021) and Nos. 283 and 290 (2022), including the requirement

6

that school districts report information to DOH using the Surveillance for Influenza and COVID-19 ("SIC") Module in the Communicable Disease Reporting and Surveillance System; and

WHEREAS, throughout the course of the COVID-19 pandemic, the U.S. Food and Drug Administration ("FDA") has continually evaluated data on the safety and effectiveness of the COVID-19 vaccine, including as administered to children of various age groups; and

WHEREAS, on October 29, 2021 and May 17, 2022, the FDA issued amendments to its Emergency Use Authorizations ("EUAs") of the COVID-19 vaccines which, collectively, expanded eligibility of certain COVID-19 vaccines and booster doses to children and adolescents between 5 and 17 years of age; and

WHEREAS, on June 17, 2022, the FDA issued further amendments to its EUAs of the COVID-19 vaccines which expanded eligibility of the primary COVID-19 vaccination series of certain COVID-19 vaccines to children between 6 months to 5 years of age; and

WHEREAS, New Jersey has administered over 18.4 million doses of the COVID-19 vaccine in the State to date, with over 8 million or 93% of New Jerseyans having received at least one dose of the vaccine; and

WHEREAS, of the total doses of the COVID-19 vaccine administered in New Jersey, over 1.9 million doses have been administered to children between 6 months to 17 years of age; and

WHEREAS, according to the CDC, various treatments and FDA-authorized therapeutics for COVID-19, such as antiviral medications and monoclonal antibodies, that can reduce the likelihood of severe illness and death have become widely available; and

7

WHEREAS, over the last five months, the State has experienced stable rates on key benchmark statistics, such as the number of hospitalized patients, patients in intensive care, and ventilators in use, and the spot positivity of COVID-19 tests; and

WHEREAS, on August 11, 2022, the CDC issued updated "Guidance for Minimizing the Impact of COVID-19 on Individual Persons, Communities, and Health Care Systems" in which the CDC recognizes that high levels of vaccine and infection-induced immunity and the availability of effective treatments and prevention tools have substantially reduced the risk for medically significant COVID-19 illness, and associated hospitalization and death; and

WHEREAS, the CDC's updated guidance notes that as a result of improved circumstances and the availability of multicomponent prevention measures, public health efforts to minimize the impacts of COVID-19 can now be tailored to individual and societal health factors, with a focus on reducing medically significant illness and minimizing the strain on the health care system, while removing barriers to social, educational, and economic activity; and

WHEREAS, the CDC's updated guidance recognizes that continuing to increase COVID-19 vaccination coverage, including booster doses, expanding access to therapeutics, and undertaking testing and other prevention measures remain essential to prevent severe outcomes and death from COVID-19, particularly for persons who are at an increased personal risk for severe adverse reactions and persons in certain health care and high-risk congregate settings; and

WHERAS, the CDC's updated guidance further recognizes that in general community settings, including school districts and child care settings, local public health officials and jurisdictions are equipped with a host of COVID-19 prevention strategies and localized data to decide which mitigation protocols to use and

when, based on COVID-19 Community Levels and setting-specific factors; and

WHEREAS, on August 11, 2022, the CDC also issued updated "Operational Guidance for K-12 Schools and Early Care and Education Programs to Support Safe In-Person Learning" in which the CDC recommends that school districts and child care settings utilize COVID-19 mitigation protocols on a flexible basis; and

WHEREAS, as reported in the updated guidance for school districts and child care settings, the CDC is no longer recommending routine screening testing in school districts and child care settings, except as may be deemed necessary for certain high-risk, close contact activities, or when the CDC Community Levels in the local region of the school district or child care setting reach high levels; and

WHEREAS, in light of the CDC's updated guidance, and given the progress the State has made, the State can begin to responsibly lift certain mitigation protocols in place, including the requirement that school districts and child care settings maintain a policy requiring their unvaccinated covered workers to submit to weekly or twice weekly COVID-19 testing, as well as the requirement that covered contractors maintain a policy requiring their unvaccinated covered workers submit to weekly or twice weekly COVID-19 testing, as the State continues the next phase of the COVID-19 response; and

WHEREAS, continued surveillance of school-associated COVID-19 cases, clusters, and outbreaks is necessary for DOH to understand and track COVID-19 in the school setting, including monitoring the impact of vaccination, in order to inform public health decisions and actions, therefore it is critical that school districts continue to be required to report into the SIC module; and

WHEREAS, despite the extensive progress made in combatting COVID-19, and the ability to lift certain mitigation protocols, there remains an ongoing threat necessitating that certain actions taken by the State in response to COVID-19 and new variants, can remain in place as the State continues the next phase of our COVID-19 response; and

WHEREAS, the CDC continues to emphasize the importance of heightened mitigation protocols in certain covered settings, especially high-risk congregate care settings, because of the significant risk of spread and vulnerability of the populations served; and

WHEREAS, continuing to require workers in those covered settings to be up to date with their COVID-19 vaccinations, including the first booster dose for which they are eligible, can help prevent outbreaks and reduce transmission to vulnerable individuals who may be at higher risk of severe disease; and

WHEREAS, the Constitution and statutes of the State of New Jersey, N.J.S.A. App. A: 9-33 et seq., N.J.S.A. 38A:3-6.1, and N.J.S.A. 38A:24 and all amendments and supplements thereto, confer upon the Governor of the State of New Jersey certain emergency powers, which I have invoked;

NOW, THEREFORE, I, PHILIP D. MURPHY, Governor of the State of New Jersey, by virtue of the authority vested in me by the Constitution and by the Statutes of this State, do hereby ORDER and DIRECT:

1. Executive Order Nos. 253 and 264 (2021) are hereby rescinded.

2. Nothing in this Order shall prevent a school district or child care setting from maintaining a vaccination or testing policy implemented pursuant to Executive Order Nos. 253 and 264 (2021).

10

3. School districts shall continue to report information to DOH using the COVID-19 SIC Module, as set forth in Executive Directive 21-011, until Executive Directive 21-011 is revoked or modified by DOH or until the State of Emergency is no longer in effect, whichever is sooner.

4. Executive Order No. 271 (2021) is hereby rescinded.

5. The Commissioner of DOH is hereby authorized to issue a directive supplementing the requirements outlined in this Order, which may include, but not be limited to, any requirements for reporting vaccination and testing data to DOH.

6. For purposes of this Order, "Executive Branch departments and agencies" shall mean any of the principal departments in the Executive Branch of State government and any agency, authority, board, bureau, commission, division, institution, office, or other instrumentality within or created by any such department, and any independent State authority, commission, instrumentality, or agency over which the Governor exercises executive authority, as determined by the Attorney General.

7. It shall be the duty of every person or entity in this State or doing business in this State and of the members of the governing body and every official, employee, or agent of every political subdivision in this State and of each member of all other governmental bodies, agencies, and authorities in this State of any nature whatsoever, to cooperate fully in all matters concerning this Order, and to cooperate fully with any Administrative Orders issued pursuant to this Order.

8. No municipality, county, or any other agency or political subdivision of this State shall enact or enforce any order, rule, regulation, ordinance, or resolution which will or might in any way conflict with any of the provisions of this Order,

11

or which will or might in any way interfere with or impede its achievement.

9. Penalties for violations of this Order may be imposed under, among other statutes, <u>N.J.S.A.</u> App. A:9-49 and -50.

10. This Order shall take effect immediately, except that paragraph 4 of this Order shall take effect September 1, 2022.

11. This Order shall remain in effect until revoked or modified by the Governor.

                                          GIVEN, under my hand and seal this 15th day of August, Two Thousand and Twenty-two, and of the Independence of the United States, the Two Hundred and Forty-Seventh.

[seal]

                                          /s/ Philip D. Murphy

                                          Governor

Attest:

/s/ Parimal Garg

Chief Counsel to the Governor