**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **CHILDREN'S HEALTH DEFENSE, INC.,** *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY,** *et al.*,<br><br>Defendants. | Civil Action No. 21-15333 (ZNQ) (TJB)<br><br>**OPINION** |

**QURAISHI, District Judge**

 **THIS MATTER** comes before the Court upon Defendants Rutgers, the State University of New Jersey ("Rutgers"), Board of Governors, Rutgers School of Biomedical and Health Sciences, Chancellor Brian L. Storm, and President Jonathan Holloway's (collectively, "Defendants") Motion to Dismiss ("Motion," ECF No. 39) Plaintiffs' First Amended Complaint ("FAC," ECF No. 35). In support of their Motion, Defendants filed a supporting brief ("Moving Br.," ECF No. 39-1). Plaintiffs Children's Health Defense, Inc. ("CHD"), Peter Cordi, Raelynne Miller, Kayla Mateo, Adriana Pinto ("Pinto"), and Jake Bothe (collectively, "Plaintiffs") filed an opposition, ("Opp'n Br.," ECF No. 42), to which Defendants replied ("Reply," ECF No. 43). The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT Defendants' Motion.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

The Court incorporates by reference the factual background articulated in its opinion from October 14, 2021, denying Plaintiffs' Motion for Temporary Restraining Order.  (ECF No. 27.) The Court, however, provides a brief factual and procedural background for context.

At the outset of this action, the Court denied Plaintiffs' Motion for Temporary Restraining Order.  (ECF No. 27.)  In pertinent part, the Court held that Plaintiffs had failed to establish their likelihood of success on the merits given Supreme Court precedent and persuasive authorities from other circuits on the issue of COVID-19 vaccination requirements and related restrictions.  (*Id.*)

Plaintiff CHD is a non-profit organization based in Peachtree City, Georgia, whose members include the individually named student plaintiffs.  (FAC ¶ 11.)  The individually named plaintiffs are Rutgers enrollees all of whom refused to receive the COVID-19 vaccination.  (*Id.* ¶¶ 12–32.)  On August 16, 2021, Plaintiffs initiated this action seeking a declaration that the portion of Rutgers' COVID-19 policy requiring students to be vaccinated prior to returning to campus (the "Policy") was unlawful.  (Complaint ¶ 1, ECF No. 1.)  The Complaint spanned seven counts and alleged the Policy was "both illegal and unconstitutional" and coerced students to accept "an experimental COVID-19 vaccine" as a precondition for their return to campus.  (*Id.* ¶¶ 1,3.)

Plaintiffs subsequently filed their First Amended Complaint on October 19, 2021, which again challenges the Rutgers Policy—requiring its students to either be vaccinated or obtain an exemption—as illegal and unconstitutional.  (FAC ¶ 1.)  The named plaintiffs—all but one[1] of whom obtained a religious exemption—allege that they were discriminated against because they were denied on-campus housing and further fear retaliation from Rutgers in the form of being

---

[1] The only named plaintiff that has neither received the COVID-19 vaccine nor obtained an exemption from the vaccination is Adriana Pinto.  (FAC ¶ 16.)

2

barred from continuing their academic studies. (*Id.* ¶¶ 11–32.) The Amended Complaint spans the same seven counts alleged in their first Complaint. (*Id.* ¶¶ 245–341.) The Seven Counts allege the following: (1) Preemption of Federal Law and Ultra Vires under State Law (First Cause of Action) (*Id.* ¶¶ 245–272); (2) Violation of the Right to Informed Consent and the Right to Refuse Medical Treatment Guaranteed by the Fourteenth Amendment and Article 1 of the Constitution of the State of New Jersey (Second Cause of Action) (*Id.* ¶¶ 273–309); (3) Violation of Equal Protection guaranteed by the Fourteenth Amendment and Article I of the Constitution of the State of New Jersey (Third Cause of Action) (*Id.* ¶¶ 310–320); (4) Violation of Civil Rights under 42 U.S.C. § 1983 (Fourth Cause of Action) (*Id.* ¶¶ 321–325); (5) Violation of the New Jersey Civil Rights Act (Fifth Cause of Action) (*Id.* ¶¶ 326–328); (6) Estoppel or Detrimental Reliance (Sixth Cause of Action) (*Id.* ¶¶ 329–336) and; (7) Breach of Contract (Seventh Cause of Action) (*Id.* ¶¶ 337–341.)

At this juncture, Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants argue that: (1) virtually all of Plaintiffs' claims fail for lack of standing or mootness; (2) Plaintiff does not allege any actual constitutional violations; (3) Rutgers' policies do not violate any federal or state laws; (4) a breach of contract claim cannot exist without a contract; and (5) Plaintiffs equitable estoppel claims fail because Rutgers did not promise a vaccine-free semester. (*See generally* Moving Br., ECF No. 39-1.)

## II.    PARTIES' ARGUMENTS

### A. Defendants' Motion to Dismiss

Unsurprisingly, Defendants contend that the First Amended Complaint is legally baseless and should be dismissed for lack of standing and failure to state a claim upon which relief can be granted. (Moving Br. at 2.) Defendants first contend that all Plaintiffs except for one—Pinto—

have received a medical exemption from the vaccine and thus have no standing to challenge the Policy pursuant to Fed. R. Civ. P. 12(b)(1). (*Id.* at 7.) Next, Defendants argue that Plaintiffs' Equal Protection claims are moot and unripe. (*Id.* at 8.) First, because Rutgers' Policy applies equally to all students and faculty regardless of their vaccination status and second, because Plaintiffs' challenge on the possibility that Rutgers might adopt a different policy in the future is a hypothetical, future injury. (*Id.* at 8–9.) Defendants also contend that, in light of the named Plaintiffs' religious exemptions and subsequent mootness in their challenges, Plaintiff CHD lacks organizational standing to pursue claims not possessed by the student Plaintiffs. (*Id.* at 10.)

With respect to Plaintiffs' constitutional claims, Defendants argue that they should be dismissed because they fail to allege claims upon which relief may be granted (*Id.* at 11) and even more so because Rutgers' Policy is protected under the rational basis review. (*Id.* at 11–12.) Defendants next argue that Pinto's Equal Protection claim is moot in light of Rutgers' Policy applying uniformly to both students and faculty. (*Id.* at 17.) Defendants further argue that Plaintiffs' free exercise of religion claim fails because the Policy does not target "religious conduct for *distinctive* treatment or advance legitimate governmental interest *only* against conduct with a religious motivation." (*Id.* at 19) (emphasis in original). Lastly, Defendants contend that the mandate does not violate the New Jersey Constitution because the courts have already upheld public school vaccination mandates against both federal and New Jersey State Constitution-based challenges. (*Id.* at 21.)

Defendants close out their brief by arguing that Plaintiffs' 42 U.S.C. § 1983 and New Jersey Civil Rights Act ("NJCRA") claims fail because the Policy does not violate any constitutional right. (*Id.* at 23.) According to the defendants, Plaintiffs failed to allege a violation of federal law (*Id.* at 25) as New Jersey law explicitly authorizes Rutgers' policies (*Id.* at 26.) Plaintiffs also

4

failed to allege a breach of contract claim because they do not allege the existence of a contract (*Id.* at 28) and further failed to allege an equitable estoppel claim because Rutgers never promised a vaccine-free fall 2021 academic semester. (*Id.* at 30.) Lastly, Defendants urge the Court to disregard Plaintiffs' claims that Rutgers had a financial motive to impose the Policy. (*Id.* at 32.)

### B. Plaintiffs' Opposition

On January 11, 2022, Plaintiffs filed a memorandum in opposition to Defendants' Motion to Dismiss. (Opp'n Br., ECF No. 42.) Plaintiffs of course begin by asserting that all of their claims are well-pled and should not be dismissed. (*Id.* at 5.) Thus, Plaintiffs contend that they all have standing because the Rutgers Policy continues to impose unconstitutional conditions upon them. (*Id.* at 4.) Plaintiffs specifically note that CHD's standing mirrors Pinto's after Defendants conceded to Pinto's standing. (*Id.* at 3.) In support of that position, Plaintiffs claim that their right to informed consent and to refuse unwanted medical treatment under the Due Process Clause of the Fourteenth Amendment was violated. Plaintiffs further contend that they plausibly pled violations of equal protection because "Rutgers' decision to mandate that only exempt students test weekly, wear masks and be banned from university housing because they are unvaccinated" is an explicit example of different treatment amongst others that are similarly situated. (*Id.* at 19.) Moreover, Plaintiffs allege that the Policy preempts and subsequently violates federal law because federal laws require individuals to exercise informed consent to a COVID-19 vaccine whereas the Policy coerces students into receiving the vaccine. (*Id.* at 22.) The Policy also violates state authority under the *ultra vires* doctrine because no New Jersey statute or regulation grants Rutgers police powers to mandate a vaccine. (*Id.* at 24.) Penultimately, Plaintiffs argue that they have successfully pled a breach of contract claim because a contract exists in the enrollment terms and conditions between a university and its students. (*Id.* at 32.) Specifically, "Plaintiffs' breach of

contract claim rests on the terms and conditions of enrollment at Rutgers . . . and the alleged absence of any condition or reservation that Rutgers could command or alter public health measures as a condition of enrollment." (*Id.* at 33.) Lastly, Plaintiffs claim that they have properly pled estoppel because the named plaintiffs relied on Rutgers' representation that it would not require COVID-19 vaccinations to return to campus "to accept offers of admission to its colleges, avoid seeking transfers to other colleges and universities, or entertain other alternatives to in-person attendance." (*Id.* at 34.)

**C. Defendants' Reply**

On January 31, Defendants submitted their reply memorandum in support of their Motion to Dismiss Plaintiffs' first amended complaint. ("Reply," ECF No. 43.) Defendants begin with asserting that Plaintiffs misstated the rights at issue in their case because the "issue in this case is not whether Plaintiffs are free to decline the vaccine, but whether they can compel Rutgers to matriculate them if they do so [and] [t]hey cannot." (*Id.* at 2.) Defendants note that the court in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) further supports their position. (*Id.* at 2–3.) Defendants rebutted Plaintiffs' interpretation of *Jacobson* and instead contend that *Jacobson* "requires judicial deference to rationally-based public health decisions." (*Id.* at 4.) Defendants next pointed out that this is not an "unconstitutional conditions" case. (*Id.* at 7.) Defendants claim that Plaintiffs seem to argue that "if they have a constitutional right to refuse a COVID-19 vaccination, Rutgers cannot coerce them to forego that right by making it a condition of their matriculation" but rely on irrelevant case law to support their position. (*Id.* at 7.) With respect to Plaintiffs' equal protection claim, Defendants argue that "unvaccinated" is not a protected class and thus the restrictions Rutgers placed on exempt and therefore unvaccinated students are subject only to the rational basis test. (*Id.* at 8.) Plaintiffs next contend that New Jersey law empowers

Rutgers to mandate ACIP-recommended vaccinations. (*Id.* at 9.) Namely, "N.J.S.A. § 18A:61D-1 obligates Rutgers to require every student to provide proof of certain vaccinations . . . N.J.A.C. § 8:57-6.4, allows Rutgers 'to establish additional requirements for student immunizations and documentation that [it] shall determine appropriate,' so long as the immunizations are 'recommended by the ACIP.'" (*Id.*) Defendants conclude by reiterating that Plaintiffs have no claim for breach of contract or equitable estoppel. (*Id.* at 12.) Namely, Plaintiffs neither identified a contract nor any breached provisions aside from the claim that "'university bulletins' may form part of a contract between a university and its students," which Defendants assert, is wrong. (*Id.*) Lastly, Pinto's claim of equitable estoppel is baseless as she relied on a publicly accessible video published in January 2021 that stated that "the vaccine at this point is not mandatory across the United States or here in New Jersey," and "is not mandatory at Rutgers." (*Id.* at 13.) "Those were present-tense statements made in January 2021 that made no 'clear and definite promise' that Rutgers would not mandate the vaccine in the future." (*Id.*)

## III.   **LEGAL STANDARD**

Rule 12(b)(1) mandates the dismissal of a case for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Plaintiffs bear the burden of establishing the existence of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). If a claim does not present a live case or controversy, the claim is moot, and a federal court lacks jurisdiction to hear it. *United States v. Virgin Islands*, 363 F.3d 276, 285 (3d Cir. 2004). A challenge for mootness is properly brought by a Rule 12(b)(1) motion and constitutes a factual attack on the jurisdictional facts; thus, the court may consider evidence outside the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176-77 (3d Cir. 2000). "[T]he standard for surviving a Rule 12(b)(1) motion is lower than that for a Rule 12(b)(6) motion,"

however, and a "claim may be dismissed under Rule 12(b)(1) only if it 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" *Id.* at 178 (quoting *Kehr Packages, Inc.*, 926 F.2d at 1409).

On a Rule 12(b)(6) motion, the court must accept as true all factual allegations and draw all reasonable inferences in the light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. *See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

8

## IV.   **DISCUSSION**

### A.   **STANDING AND MOOTNESS**

Standing and mootness are two distinct justiciability doctrines that limit a court's jurisdiction to cases and controversies in which a plaintiff has a concrete stake. *Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476–77 (3d Cir. 2016). Standing ensures that each plaintiff has "[t]he requisite personal interest . . . at the commencement of the litigation," while mootness ensures that this interest "continue[s] throughout" the duration of the case." *Id.* at 477 (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)).

To establish constitutional standing, a plaintiff must show (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.*   In assessing standing, the primary project is to separate those with a true stake in the controversy from those asserting "the generalized interest of all citizens in constitutional governance." *Id.* (citing *Valley Forge Christian Coll. v. Ams. United For Separation of Church & State, Inc.*, 454 U.S. 464, 483 (1982)).

Mootness "ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit." *Id.*   The party asserting that a claim is moot must show that it is absolutely clear that the allegedly wrongful behavior is not reasonably expected to recur. *Id.*   "A court will not dismiss a case as moot even if the nature of the injury changes during the lawsuit, if secondary or collateral injuries survive after resolution of the primary injury." *Id.*

9

A case becomes moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. *A.S. v. Harrison Twp. Bd. of Educ.*, 66 F. Supp. 3d 539, 545 (D.N.J. 2014) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).   The mootness doctrine requires that "an actual controversy [is] extant at all stages of review, not merely at the time the complaint is filed." *Steffel v. Thompson,* 415 U.S. 452, 459 n.10 (1974).   "'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'"   *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Assn.,* 393 U.S. 199, 203 (1968)).   Mootness may not become an issue until the case has been brought and litigated. *Id.* at 191.

A federal court must address the question of mootness, even though it was not raised by the parties, because it implicates Article III jurisdiction, and thus, a court may raise *sua sponte* the issue of whether a suit presents a live case or controversy. *New Jersey Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 30 (3d Cir. 1985); *Luppino v. Mercedes Benz USA*, 718 F. App'x 143, 147 (3d Cir. 2017) (explaining that federal courts have a duty to determine mootness or abstract propositions, or to declare legal principles which cannot affect the ultimate issue in the case) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)); *Just In Time Chem. Sales & Mktg., Inc. v. Ironshore Specialty Ins. Co.*, Civ. No. 13-7127, 2014 WL 3784264, at *1 (D.N.J. July 31, 2014) ("A court may *sua sponte* dismiss a case on grounds of mootness.")

Pursuant to Defendants' concession that Pinto does have standing, the Court finds that Plaintiff CHD—a non-profit organization whose mission is to end childhood health epidemics by working aggressively to eliminate harmful exposures, hold those responsible accountable, and to establish safeguards—has demonstrated interests germane enough to the organization's purpose

to establish standing that mirrors Pinto's. *See Friends of the Earth Inc. v. Laidlaw Env't Serv., Inc.*, 528 U.S. 167, 181 (2000) ("an association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit").

On the other hand, the named Plaintiffs who received religious exemptions—all of the plaintiffs except Pinto—and challenge the Policy, lack standing as a result of their exemptions. The exceptions also render their claims moot. Plaintiffs have not suffered any actual or imminent injury and instead base their claims on their fear of future potential harm. Specifically, the plaintiffs that received religious exemptions from the Policy base their claims on fears such as whether or not they "will be allowed to continue [their] academic studies at Rutgers if COVID-19 rates increase" (FAC ¶ 13–17) and Equal Protection claims premised on the theory that they may later be, but are not now, subject to different masking requirements than students who are vaccinated. (FAC ¶¶ 316–18.) Because these harms are conjectural and hypothetical, the claims and the challenges to the Policy from Plaintiffs who have received religious exemptions are moot. *See Wade v. Univ. of Conn. Bd. of Trs.*, Civ. No. 21-924, 2021 WL 3616035, at *8 (D. Conn. Aug. 16, 2021) (dismissing two plaintiffs' challenges to University of Connecticut's vaccine mandate as moot because they were granted exemptions); *Pelekai v. Hawai'i*, Civ. No. 21-343, 2021 WL 4944804, at *1 (D. Haw. Oct. 22, 2021) (dismissing plaintiffs' claims as moot because they all opted out of or were granted exemptions from vaccine requirements). These Plaintiffs' receipt of exemptions also moots their challenges to Rutgers' process for considering exemption requests because they have no further claim on which the Court may "make a substantive determination on the merits." *N.J. Turnpike Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 30 (3d Cir. 1985)

11

("If one or more of the issues involved in an action become moot . . . the adjudication of the moot issue or issues should be refused").

The exempted Plaintiffs' Equal Protection claims are also moot. Plaintiffs claim that Rutgers has treated students differently from faculty and staff because it imposed the mandate only on students. (FAC ¶¶ 295, 305, 313.) However, in light of President Joseph Biden's Executive Order 14042 which requires vaccination against COVID-19 for certain employees of federal contractors, Rutgers recently announced that all employees must receive their final dose of a COVID-19 vaccine by January 4, 2022. Plaintiffs' Equal Protection claims have thus become moot because Plaintiffs are now treated similarly to Defendants with respect to the vaccination requirements and the Court can no longer give meaningful relief. *See Joseph v. Johns*, Civ. No. 04-139, 2005 WL 3447932, at *2 (W.D. Pa. Oct. 24, 2005) ("A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." (quoting *Florida Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1217 (11th Cir.2000))).

## B.   APPLICABILITY OF *JACOBSON*

In *Jacobson*, the United States Supreme Court upheld the constitutionality of a state law requiring members of the community to get smallpox vaccines when the "board of health" of the community recommended vaccination. 197 U.S. at 12, 39. Pursuant to the state law, the city of Cambridge adopted regulations requiring the "vaccination or revaccination of all inhabitants of Cambridge." *Id.* at 12. Jacobson, a resident of Cambridge, refused the vaccine and the state criminally charged him. *Id.* at 13. After a jury found him guilty under the statute and the court ordered him to pay $5 pursuant to the statute, Jacobson appealed to the Massachusetts Supreme Court and ultimately the United States Supreme Court. *Id.* at 14, 22. He argued that the state

statute requiring the smallpox vaccination violated his Fourteenth Amendment rights to "life, liberty, or property," and "equal protection under the laws." *Id.* at 14.

The Supreme Court rejected Jacobson's argument and upheld the vaccine requirement. *Id.* at 39; *see also Sczesny v. New Jersey*, Civ. No. 22-2314, 2022 WL 2047135, at *15 (D.N.J. June 7, 2022). The Court emphasized that the "liberty secured by the Constitution of the United States . . . does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint." *Jacobson*, 197 U.S. at 26. Rather, the Court recognized that "[t]here are manifold restraints to which every person is necessarily subject for the common good," *id.*, including the "safety of the general public," *id.* at 29, and a community's "right to protect itself against an epidemic of a disease which threatens the safety of its members," *id.* at 27.

Applying these principles to the Massachusetts law, the Supreme Court used a deferential standard to review state legislative action that aimed to "protect the public health, public morals, or the public safety" during the smallpox epidemic. *Id.* at 30–32. In doing so, the Court stated that it would strike down such a regulation only if it had no "real or substantial relation to those objects" or if it amounted to "a plain, palpable invasion of rights secured by fundamental law." *Id.* at 31. Courts interpret the review applied in *Jacobson* as "rational basis review." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. ___, ___, (2020) (Gorsuch, J. concurring) (noting that the *Jacobson* court "essentially applied rational basis review" to the Massachusetts state law); *Smith v. Biden*, Civ. No. 21-19457, 2021 WL 5195688, at *67 (D.N.J. Nov. 8, 2021) (interpreting *Jacobson* to apply "rational basis" review to the smallpox vaccine mandate). Despite Plaintiffs' entreaties to apply a higher level of scrutiny in this case, the Court will again apply a rational basis review, given the continued vitality of *Jacobson*.

## C.   PLAINTIFFS' CONSTITUTIONAL CLAIMS

### 1.  Due Process Claims (Count II)

Plaintiffs challenge the Policy on Due Process grounds claiming that Rutgers "coerces students to accept experimental vaccines. (FAC ¶ 285.) Baked into this claim is the allegation that Rutgers also had a financial motive behind implementing the Policy because of Rutgers' "financial ties to all three COVID-19 vaccine manufacturers." (Opp'n Br. at 12–13.) These Due Process claims fail. Vaccination requirements are well established in the law, with approval from the United States and New Jersey Supreme Courts. Plaintiffs' claims do not involve a suspect class or fundamental right, and thus, the rational basis standard of review applies. *Sczesny*, 2022 WL 2047135, at \*15 ("courts have routinely rejected the argument that vaccine mandates will trigger heightened scrutiny [for substantive due process claims] and have instead applied rational basis review." (quoting *Williams v. Brown*, Civ. No. 21-1332, 2021 WL 4894264, at \*9 (D. Or. Oct. 19, 2021))); *see also Jacobson*, 197 U.S. at 30–32. "Under rational basis review, the action of the government need only be rationally related to a legitimate government interest." *Id.* at \*9. "Governmental action is rationally related to a legitimate goal unless the action is clearly arbitrary and unreasonable, having no substantial relation to public health, safety, morals, or general welfare." *Id.*

Rutgers undoubtedly has a legitimate interest in protecting the members of its broad community from a potentially deadly disease and in trying to prevent more of the massive disruptions that COVID-19 caused for three semesters prior to Fall 2021. *Messina v. Coll. of New Jersey*, 566 F. Supp. 3d 236, 249 (D.N.J. 2021) (upholding vaccination policies as a requirement for university attendance in the interest of protecting its students). The outbreak of the COVID-19 virus launched the entire world into an unprecedented, unexpected pandemic. The government

turned its attention to prioritizing public welfare, and in doing so, determined that a vaccine—a similar answer to past pandemics—was the best way to do so.  It is not this Court's function to determine the most effective method to protect the public against COVID-19. *Jacobson*, 197 U.S. at 30.  Instead, it is for the legislature to determine what method of protection would likely be effective. *Id.*  It is for these similar reasons that Rutgers' financial interests could not have played a role in the implementation of the Policy.  Accordingly, Rutgers' decision to require students to take a COVID-19 vaccine as a condition of matriculation for the Fall 2021 semester satisfies rational basis review.  *See Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) (approving state university vaccine mandate, recognizing that "the rational-basis standard used in *Jacobson*" is "the law established by the Supreme Court"); *Harris v. Univ. of Mass., Lowell*, Civ. No. 21-11244, 2021 WL 3848012, at *6 (D. Mass. Aug. 27, 2021) ("[c]urbing the spread of COVID-19 is 'unquestionably a compelling interest,' and listing "other legitimate goals [that] flow from that," including "returning students safely to campus"); *Roman Cath. Diocese of Brooklyn*, 592 U.S. at ___ ("Stemming the spread of COVID-19 is unquestionably a compelling interest . . . ."); *see also Jacobson*, 197 U.S. at 31-32 ("[T]he principle of vaccination as a means to prevent the spread of smallpox has been enforced in many states by statutes making the vaccination of children a condition of their right to enter or remain in public schools").

### 2.  Equal Protection Claims (Count III)

Plaintiffs next challenge the Policy on equal protection grounds, alleging that the Policy is discriminatorily applied "against students by mandating EUA COVID-19 vaccines for them but not for the administration, faculty, staff, employees or contractors of Rutgers." (FAC ¶ 313.)  As addressed earlier in this opinion, this claim is moot as faculty were subsequently required to vaccinate themselves, holding them to the same standards as the students' vaccination

requirements.  Plaintiffs further argue that Rutgers' Policy is "not narrowly tailored to serve any compelling state interest, not substantially related to any important governmental objective, or rationally related to any legitimate government purpose." (*Id.* at 313–19.)  Plaintiffs' use of the strict and intermediate scrutiny standards is incorrect in this context.  "As with substantive due process, courts have routinely rejected the argument that vaccine mandates will trigger heightened scrutiny under the Equal Protection Clause and have instead applied rational basis review." *Sczesny*, 2022 WL 2047135, at *15 (quoting *Williams v. Brown*, 2021 WL 4894264, at *9).  Most importantly, Plaintiffs' Equal Protection challenge to the Policy fails because Plaintiffs are not members of a protected class alleging that "disparate treatment was based on [their] membership in the protected class." *Kaul v. Christie*, 372 F. Supp. 3d 206, 254 (D.N.J. 2019).  Being unvaccinated does not confer protected status. *See Phillips*, 775 F.3d at 543-44 (students with religious exemptions to vaccines are not a protected class).  Once again, Rutgers has a legitimate interest in protecting its students and staff from a pandemic-inducing virus that is COVID-19, thus satisfying the standards of rational basis review

Plaintiffs separately challenge the Policy on Equal Protection grounds on the basis that "Rutgers' decision to mandate that only exempt students test weekly, wear masks and be banned from university housing because they are unvaccinated is another example of the university treating them differently from others similarly situated." (FAC ¶¶ 316–18; Opp'n Br. at 19.) Unfortunately for Plaintiffs, this argument fails as well.  In the interest of Equal Protection, the Policy requires that all students and employees wear face coverings while indoors regardless of their vaccination status. *See Universitywide COVID-19 Information*, Rutgers Univ., https://coronavirus.rutgers.edu/covid-19-vaccine/#:~:text=Therefore%2C% (last visited Nov. 19, 2022).  Neutrally applied mask policies to combat the spread of COVID-19 do not violate the

Constitution. *See, e.g., Delaney v. Baker*, 511 F. Supp. 3d 55, 73-74 (D. Mass. 2021).  Next, the Policy applies equally to all unvaccinated students and employees insofar as it requires that unvaccinated individuals be tested for COVID-19 to best protect its students and staff from spreading the virus. *Id.* Lastly, courts have consistently held that higher education policies barring unvaccinated students from on-campus housing are not unconstitutional. *Jacobson*, 197 U.S. at 25 ("[C]olleges and universities have long required numerous vaccinations as a prerequisite for attendance and communal living" on campus); *Messina,* 566 F. Supp. 3d at 239 (rejecting the plaintiffs' request for injunctive relief despite the College's policy requiring "exempt students to practice social distancing, bann[ing] them from living on campus, participating in non-varsity athletic clubs, engaging in high contact activities, and traveling overnight with varsity teams"); *Harris,* 2021 WL 3848012, at *5 (upholding university policy that prohibited unvaccinated students from in-person classes, dormitories, and other activities).  It is thus evident to the Court that the Policy is not violative of Plaintiffs' Equal Protection rights.  The Court will therefore dismiss this claim.

### 3.  Free Exercise of Religion Claims (Count III)

Plaintiffs further alleged that "Rutgers' Policy of imposing restrictions and requirements on students who have received religious exemptions denies such students . . . the free exercise of religion guaranteed by the First Amendment." (FAC ¶ 319.) The Policy, however, does not burden the free exercise of religion.  Plaintiffs make the self-serving statement that the restrictions imposed on religiously exempt students burdens their exercise of free religion and failed to provide any further evidence to that extent.  *See McTernan v. City of York*, 577 F.3d 521, 532 (3d Cir. 2009) (dismissing a Free Exercise challenge for failure to meet the Iqbal pleading standard where the plaintiffs made mere "conclusory allegations" that they were treated differently based on their

religion).  Only those government acts "burdening religious practice that [are] not neutral or not of general application must undergo the most rigorous of scrutiny." *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993).  "A law that targets religious conduct for distinctive treatment or advances legitimate governmental interests only against conduct with a religious motivation" is subject to strict scrutiny. *Id.*

Rutgers' Policy clearly does not target religious conduct for distinctive treatment nor does it advance legitimate governmental interests only against conduct with a religious motivation. However, even if the Policy did not provide for religious exemptions to vaccination requirements, Plaintiffs could not argue that a vaccination requirement applicable equally to all students and faculty violates their right to free exercise. *See Phillips*, 27 F. Supp. 3d at 312-13 (*Jacobson* did not require a right for religious objectors to be exempt from vaccination laws).  Courts in this district have already held that mandatory masking indoors does not infringe the right to exercise of religion. *See Stepien v. Murphy*, 574 F. Supp. 3d 229, 248 (D.N.J. 2021).  Meanwhile, other circuit courts have held that university policies that require mask-wearing and weekly testing do not pose constitutional problems. *Klaassen*, 7 F.4th at 593.  Rutgers' Policy is not only a neutral rule of general applicability, but it supports the right of free exercise of religion because the university has chosen to *enable* the practice of religion by providing a religious exemption to the vaccination requirement.  Moreover, Plaintiffs failed to acknowledge that the imposed restrictions apply equally and evenly to *all* exempted[2] and unvaccinated individuals regardless of their religion.  This neutral applicability is consistent with the Constitution and cannot be viewed as an infringement on the right to free exercise of religion. *See Nikolao v. Lyon*, 875 F.3d 310, 316 (6th

---

[2] The Policy provides for medical and religious exemptions to the COVID-19 vaccine, and the restrictions imposed on these exempted students and faculty are the same. *See Universitywide COVID-19 Information*, Rutgers Univ., https://coronavirus.rutgers.edu/covid-19-vaccine/#:~:text=Therefore%2C% (last visited Nov. 19, 2022).

Cir. 2017) (religious plaintiff had no constitutional right to an exemption from mandatory vaccination law for public school students, though state provided one); *Phillips*, 775 F.3d at 543 (state "could constitutionally require that all children be vaccinated in order to attend public school . . . [but the State went] beyond what the Constitution requires by allowing an exemption for parents with genuine and sincere religious beliefs"). To the extent the Amended Complaint attempts to claim a Free Exercise claim, that claim will also be DISMISSED.

### 4. Violation of New Jersey Constitution Claims (Count III)

Plaintiffs also allege that Defendants' Policy violates Article I of the Constitution of the State of New Jersey (FAC ¶ 320), but failed to specify exactly what section of Article I they allege the Policy violates. Defendants rely on New Jersey Supreme Court case law to reject Plaintiffs' claims. (Moving Br. at 21.) Notably, Plaintiffs do not address Defendants' challenges on this issue in their opposition brief.

Defendants have accurately noted, that the New Jersey Supreme Court has soundly rejected these types of claims. In *Sadlock v. Carlstadt Board of Education*, the New Jersey Supreme Court held that the question of compulsory vaccination was strictly a legislative question, and that the resolution making vaccination of school children in the public schools of the Borough of Carlstadt compulsory was a proper exercise of the police power to protect the general public welfare. 58 A.2d 218, 221–22 (N.J. 1948). In finding that the resolution was not violative of the guarantees of the federal and New Jersey Constitutions pertaining to personal and religious liberties, it noted that "the principle is too well established to require citation that the so-called constitutional liberties are not absolute but are relative only. They must be considered in the light of the general public welfare. To hold otherwise would be to place the individual above the law." *Id.* at 222.

The New Jersey Supreme Court also recognized that "a competent adult person generally has the right to decline to have any medical treatment initiated or continued," but "[w]hether based on common-law doctrines or constitutional theory, the right to decline life-sustaining medical treatment is not absolute" and "may yield to countervailing societal interests in sustaining a person's life." *In re Conroy*, 486 A.2d 1209, 1222–23 (N.J. 1985). One of the countervailing societal interests that can override a person's individual medical decisions is the need to "protect innocent third parties." *Id.* at 1225. Specifically, "[w]hen the patient's exercise of his free choice could adversely and directly affect the health, safety, or security of others, the patient's right of self-determination must frequently give way." *Id.*

Similar to the resolution that was upheld in *Sadlock*, Rutgers' Policy is not violative of the guaranties of the New Jersey Constitution pertaining to personal and religious liberties. Simply put, the Policy recognizes the societal interest to protect the welfare of the general public and thus is well within the metes and bounds of Article I of the New Jersey Constitution. Accordingly, the Court will dismiss this claim.

### D.    42 U.S.C. § 1983 AND NJCRA CLAIMS (COUNTS IV AND IV)

Plaintiffs also assert claims under 42 U.S.C. § 1983 and the NJCRA. (FAC ¶¶ 321–25.) Defendants rightly point out that both statutes require Plaintiffs to allege sufficiently that a person, acting under the color of state law, deprived them of a right secured by the Constitution. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353, 365 (D.N.J. 2013) ("This district has repeatedly interpreted NJCRA analogously to § 1983," and both laws require that "the Defendant must have violated a constitutional right"). Similarly, *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), provides that only "when execution of a government's policy or custom . . . inflicts [constitutional] injury that the

government as an entity is responsible under 42 U.S.C. § 1983." *See also Sharp v. Kean Univ.*, 153 F. Supp. 3d 669, 675 (D.N.J. 2015) (no Section 1982 claim unless plaintiff can demonstrate that one of [the university's] policies or customs caused the alleged constitutional deprivation"). As discussed previously in this opinion, Plaintiffs have not sufficiently pled a plausible claim that the Policy has violated any constitutional right, effectively voiding their § 1983 and the NJCRA claims.

### E.     VIOLATIONS OF STATE AND FEDERAL LAW (COUNT I)

Plaintiffs claim that Rutgers' Policy is "preempted by federal law and *ultra vires* under state law." (FAC ¶¶ 245–72.) Defendants disagree and argue that Plaintiffs failed to state a claim upon which relief can be granted. (Moving Br. at 25.)

#### 1.  Federal Law Violations

Plaintiffs base their claims on "the principle that it is illegal to coerce an individual to accept an experimental medical product." (Opp'n Br. at 21.) While Plaintiffs are correct in the proposition that the government cannot coerce an individual to accept a medical product, they are wrong in alleging that Rutgers' Policy does the same. Rutgers' Policy simply requires students to either accept the COVID-19 vaccine or satisfy one of the Policy's exemptions. Students can thus get vaccinated, prove that they are exempted, or apply elsewhere. *Klaassen*, 7 F.4th at 593 (giving students a choice between taking the vaccine and pursuing their education elsewhere is not the same as forcing vaccination).

In theory, Plaintiffs are correct in pointing out that "where state and federal law directly conflict, state law must give way." (FAC ¶ 247.) However, nothing about New Jersey's vaccine mandate or Rutgers' Policy conflicts with federal law. Section 564 of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 360bbb-3 ("Section 564"), obligates the Secretary of Health and Human

Services to establish "conditions designed to ensure that individuals to whom the product is administered are informed . . . of the option to accept or refuse administration of the product." *Id.* § 360bbb-3(e)(1)(A)(ii).  The Secretary met the requirements of Section 564 by means of the authorized Fact Sheets distributed by healthcare providers administering the vaccine to persons receiving it.  Moreover, contrary to Plaintiffs' allegations, Rutgers has not mandated any medical products.  (FAC ¶ 72.)  Instead, it has simply made adherence to the mandate a condition to its enrollment at the university.  In sum, it is clear to the Court that Rutgers's Policy has not violated any federal laws and it will therefore dismiss this claim.

### 2.  State Law Violations

Plaintiffs incorrectly point out that "no state statute authorizes Rutgers, or any other public . . . institution of higher learning, to require students to demonstrate COVID-19 vaccination as a condition of attendance."  (FAC ¶ 266.)  In fact, as Defendants note, N.J.S.A. § 18A:61D-1 and N.J.A.C. § 8:57-6.4(c) *require* Rutgers to obtain proof from students that they have taken certain immunizations and authorize Rutgers to require other ACIP-recommended vaccinations.  It has further been held that the State can make vaccination status a condition of school admittance to a university, with the student accorded an exemption from such requirement if vaccination interferes with the free exercise of his religious principles. *Kolbeck v. Kramer*, 84 N.J. Super. 569, 572 (N.J. Super. Law Div. 1964); *see also Jacobson*, 197 U.S. at 25 ("[C]olleges and universities have long required numerous vaccinations as a prerequisite for attendance and communal living" on campus).  Thus, by requiring COVID-19 vaccination as a condition to enrollment—less exemptions—Rutgers is not only looking at the best interests of its student population but is also required to do so by state law.  The same is true of Plaintiffs' claims about exclusion of unvaccinated persons from dormitory living.  N.J.A.C. § 8:57-6.14(d) permits "an institution [to]

temporarily exclude a student with medical exemptions . . . from classes and from participating in institution-sponsored activities during a vaccine-preventable disease outbreak or threatened outbreak." *See also id.* § 8:57-6.15(c) (same with respect to religious exemptions). In light of the aforementioned statutes, it is evident that Rutgers' Policy and subsequent dormitory restrictions are consistent with state law. The Court will therefore dismiss this claim.

### F.    BREACH OF CONTRACT CLAIM (COUNT VII)

Plaintiffs further allege that Defendants breached their contract "by adopting unilaterally a Policy mandating EUA COVID-19 vaccines, testing and masking to attend Rutgers, without any enabling statute or requirement by any health authority." (FAC ¶ 340.) Defendants, of course, disagree with this position.

A complaint adequately pleads a breach of contract claim if it alleges (1) a contract, (2) a breach of that contract; (3) resulting damage to the plaintiff; and (4) that the plaintiff performed its own contractual duties. *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 735 (D.N.J. 2008). "To prove the existence of an express contract, [the plaintiff] must set forth the elements of offer, acceptance and consideration." *Id.* "Under New Jersey law, a complaint alleging breach of contract must, at a minimum, identify the contracts and provisions breached. Failure to allege the specific provisions of the contract breached is grounds for dismissal." *Potter v. Newkirk*, Civ. No. 17-08478, 2020 WL 6144756, at *13 (D.N.J. Oct. 20, 2020) (internal quotation and citation omitted).

Plaintiffs fail to state a claim for breach of contract on two grounds. First, they fail to identify a contract much less any provision(s) breached. *Id.; See also Smith v. Univ. of Pa.*, 534 F. Supp. 3d 463, 475 (E.D. Pa. 2021) (dismissing the students' breach of contract claim because the students had not specifically alleged that the school violated an express, written contractual

provision to provide in-person instruction and an on-campus experience in exchange for tuition). Second, by Plaintiffs' own admission, Rutgers announced the immunization requirement five months before the start of the academic semester to which it would first apply.  (FAC ¶ 194.)  If a contract had been formed, it would have been at this point that Rutgers extended its "offer" to create a contract.  Plaintiffs, by enrolling in Fall semester courses, "accepted" the contract for valid consideration presumably in the form of tuition in exchange for course credits.[3]  The Plaintiffs also had an ample amount of time to reject this "offer" and either unenroll in Rutgers' classes, transfer to a different program, or not apply for admission to Rutgers in the first place.

Even if the Court were to find that Plaintiffs had entered into a contract with Rutgers, the Court could not find that Rutgers breached such a hypothetical contract.  Plaintiffs concede that Rutgers implemented the Policy terms five months before the Fall semester when the Policy was to go into effect.  (*Id.*)  Thus, the "contract" to enroll in classes for the Fall 2021 included the Policy's terms.  By requiring students to either be vaccinated or qualify for an exemption from the vaccine, Rutgers strictly abided by the terms of the contract.  In short, the Court finds that Plaintiffs do not state a plausible claim for breach of contract and it will dismiss this Count.

## G.     PROMISSORY ESTOPPEL CLAIM (COUNT VI)

The sixth count of their Amended Complaint alleges an estoppel claim.  (FAC ¶ 330.)  At this juncture, it is important to note that the parties' pleadings seem to confuse equitable estoppel and promissory estoppel.  Plaintiffs' Amended Complaint describes estoppel as an "equitable doctrine" which likely lead Defendants to assume their claims are grounded in equitable estoppel.

---

[3] To be enforceable, a contract must be supported by valuable consideration.  *Borbely v. Nationwide Mut. Ins. Co.*, 547 F. Supp. 959, 980 (D.N.J. 1981).  Consideration involves a detriment incurred by the promisee or a benefit received by the promisor, at the promisor's request.  *Id.*  Legal sufficiency does not depend, however, upon the comparative value of the consideration and of what is promised in return.  *Id.*  Rather, the consideration must merely be valuable in the sense that it is something that is bargained for in fact.  *Id.*

(See Moving Br. at 30.)  However, Plaintiffs make clear in their Opposition Brief that they allege detrimental reliance based on promissory estoppel.  (Opp'n Br. at 33.)  Plaintiffs claim that they relied on "Rutgers' announce[ment] in January 2021 that it would not mandate EUA COVID-19 vaccines for students to return to campus in the Fall for in-person instruction.  (FAC ¶ 332.)  In light of the promissory estoppel standard enumerated by the courts in this district, the Court dismisses Plaintiffs' claim.

To state a claim for estoppel, courts require that Plaintiffs plead "a knowing and intentional misrepresentation by the party sought to be estopped under circumstances in which the misrepresentation will probably induce reliance, and reliance by the party seeking estoppel to his or her detriment." *Cotter v. Newark Hous. Auth.*, 422 F. App'x 95, 99 (3d Cir. 2011) (quoting *O'Malley v. Dep't of Energy*, 109 N.J. 309, 317 (N.J. 1987)).  However, a "truthful statement as to the present intention of a party with regard to future acts is not the foundation upon which an estoppel may be built.  The intention is subject to change." *Alexander v. Cigna Group,* 991 F. Supp. 427, 439 (D.N.J. 1998) (quoting *In re Phillips Petroleum Sec. Litig.*, 881 F.2d 1236, 1250 (3d Cir. 1989)).  Dr. Gracias' statements in January 2021 about Rutgers' then-present intention on requiring vaccination for students with regard to the Fall semester is not a foundation upon which an estoppel may be built because that intention was subject to change, especially in light of a worldwide pandemic.  *Id.*  Moreover, all of the plaintiffs' reliance—with the exception of Pinto's—on Dr. Gracias' statements did not lead to any detriment as required by the standard set forth in *Cotter.*  In fact, even after Rutgers changed its Policy and required students to be vaccinated to return to campus, it provided for medical and religious exemptions.  All of the plaintiffs except Pinto received a religious exemption and thus avoided the vaccination Policy *and*

were allowed to return to campus for the fall semester, destroying any "detriment" that Plaintiffs could validly allege. *Id.*

As for Pinto's claims, the Amended Complaint raises an entirely different estoppel claim that Pinto reasonably expected she could avoid taking the COVID-19 vaccine if she selected only remote coursework. (FAC ¶¶ 16, 335.)  Rutgers' Policy does in fact permit "[s]tudents whose entire course of study is entirely web based, a fully online degree program, and/or fully remote" to be exempt from the Policy.  *See Universitywide COVID-19 Information*, Rutgers Univ., https://coronavirus.rutgers.edu/covid-19-vaccine/#:~:text=Therefore%2C% (last visited Nov. 19, 2022).  Pinto may simply "enroll in [Rutgers'] degree-granting online program." *Id.*  Once she does so, Pinto will be exempted from the Policy, enrolled in Rutgers courses, and effectively avoid any detriment from Dr. Gracias' statements and the Policy.

Even if Plaintiffs had otherwise adequately pled a promissory estoppel claim, it would fail for another reason.  Critically important to a promissory estoppel claim is a *detriment* suffered by the plaintiff.  *Cotter*, 422 F. App'x at 99.  None of the plaintiffs in this matter have suffered an injury.  All of the named plaintiffs were permitted to continue their enrollment at Rutgers without receiving a vaccination despite the Policy requiring Rutgers' students to be vaccinated.  Even Pinto could not claim a detriment as Rutgers allows for unexempted, unvaccinated students to continue their enrollment at Rutgers via an online program.

Thus, the Court finds that Plaintiffs do not state a plausible claim for relief with respect to promissory estoppel and it will dismiss this claim as well.

## V.   CONCLUSION

For the reasons stated above, the Court will GRANT Defendants' Motion to Dismiss. Given the nature of Plaintiffs' claims and the bases for the Court's dismissal of those claims, the

Court further finds that any attempt to amend the Complaint would be futile. Accordingly, the dismissal will be with prejudice.  An appropriate Order will follow.


Date: **September 22, 2022**

**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**